# CV 13        5737

## UNITED STATES DISTRICT COURT

### *FOR THE*

### EASTERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| SIMCHE STEINBERGER, as Executor of the last Will and Testament and Estate of TIBOR STEINBERGER, | **Civil Action File No.** |
| Plaintiff, | _____ |
| - against - | **COMPLAINT AND JURY DEMAND (18 U.S.C §§ 1961-1968 RICO)** |
| JACK LEFKOWITZ, BLUMA LEFKOWITZ, MASKIL EL-DAL, INC., CARE TO CARE MANAGEMENT, LLC, MAIMONIDES MEDICAL SERVICES, LLC, MEDSCAN MOBILE, and "JOHN DOES" 1 through 10, names being fictitious and intended to be the person, persons or entities serving as the nominees or alter egos of the defendants and in possession of plaintiff's property that is the subject of this action. | JOHNSON |
| Defendants. | POHORELSKY, M.J. |

---

The Plaintiff, SIMCHE STEINBERGER, as Executor of the last Will and Testament and Estate of TIBOR STEINBERGER, by and through his attorneys, LAW OFFICES OF SOLOMON E. ANTAR, and as and for his

causes of action, respectfully shows to this Court and alleges as follows:

## I.
## NATURE OF THE CASE

1.     This   is   an   action   brought   by   plaintiff   SIMCHE
STEINBERGER, in his capacity as Executor of the Estate of TIBOR
STEINBERGER, who died on October 3, 2012, late of the United Kingdom,
City of London, pursuant to  an appointment by order of The High Court Of
Justice, District Probate Registry Division at Ipswich, London, England,
dated October 9, 2013, a copy of which is annexed hereto (**Exhibit "A"**).
The  plaintiff  herein  seeks  to  recover  monies  stolen  from  TIBOR
STEINBERGER (hereinafter "STEINBERGER" or the "Decedent") during
his lifetime.

2.     The monies sought to be recovered in this action stemmed from
the proceeds of the sale of a parcel of real estate by STEINBERGER, that
had originally been retained after the closing in the IOLA trust account of
BERNARD  SHAFRAN,  ESQ.,  of  FRENKEL,  HIRSHKOWITZ  &
SHAFRAN, LLP, 16 East 34th Street, New York, NY 10016, attorneys for

the seller. Those funds were subsequently embezzled by JACK LEFKOWITZ and the Defendants who illegally diverted them from the attorney's escrow account to their own personal bank accounts through pretense, fraud and deceit, and by using a fraudulent and bogus investment scheme as a vehicle to accomplish their ends.

3.     The Decedent, TIBOR STEINBERGER, and the Defendant, JACK LEFKOWITZ, were close friends; they knew and socialized with each other and came from an extraordinarily insular and exceptionally close-knit religious community of which they were both members.  Over the years, there developed a relationship of mutual friendship and unreserved, unconditional trust between them whereby STEINBERGER, a foreign citizen who was unable to maintain a hands-on management of his affairs in the United States, relied upon the advice, guidance, and assistance of his friend JACK LEFKOWITZ in making and managing various investments in real estate and mortgages in this country.

4.     Plaintiff's Decedent, TIBOR STEINBERGER, a citizen of the United Kingdom, residing in the City of London, had continually been undergoing dialysis for renal failure; he was extremely ill; too sick to travel, and he was unable to attend to personal his affairs.  To that end, he turned to his friend JACK LEFKOWITZ to assist with his financial affairs.

5.     That, on or about November 11, 2007, STEINBERGER, in reliance upon the trust reposed in the Defendant JACK LEFKOWITZ, was fraudulently induced to give his written consent to part with his monies derived from the sale of his real estate for what was to be a proposed investment in reliance upon the intentionally false statements and purposeful misrepresentations of the said Defendant who, together with his wife BLUMA LEFKOWITZ, wrongfully took possession of, embezzled, purloined, and converted those funds to their own individual and personal use; and, thereafter, by concealing their actions in depositing the funds abroad in their secret, numbered bank accounts.

6.     The Plaintiff, SIMCHE STEINBERGER, as Executor, has

timely asserted all causes herein and has commenced this action to recover a total sum of not less than $12,000,000.00 from the Defendants JACK LEFKOWITZ, BLUMA LEFKOWITZ, MASKIL EL-DAL, INC., CARE TO CARE MANAGEMENT, LLC, MAIMONIDES MEDICAL SERVICES, LLC, MEDSCAN MOBILE, and "JOHN DOES" 1 through 10, (all sometimes hereinafter jointly referred to as the "Defendants") based upon causes of action for fraud, aiding and abetting fraud, for the imposition of a constructive trust, for an accounting and return of stolen property, for conversion, for unjust enrichment, to pierce the corporate veil, for breach of fiduciary duty, for aiding and abetting breach of fiduciary duty, for civil RICO violations, for the imposition of punitive and treble damages, and for interest, costs and attorneys' fees.

## II.
## THE LEGAL STANDING OF THE PLAINTIFF
## TO BRING AND MAINTAIN THIS ACTION

### A.
### The Plaintiff's Underlying Appointment
### As Executor

7. TIBOR STEINBERGER died on October 3, 2012. The Plaintiff

SIMCHE STEINBERGER'S authority to prosecute this action is derived from an order of the District Probate Court, London, England, dated October 9, 2013, the said appointment being in full force and effect as of the date hereof.

**B.**
**The Parties, Diversity of Citizenship,**
**And Jurisdictional Amount**
**(28 U.S.C. § 1332)**

8.      Plaintiff, SIMCHE STEINBERGER, the son of the Decedent, is a citizen and permanent resident of the United Kingdom. Plaintiff's Decedent, TIBOR STEINBERGER, was also a citizen and resident of the United Kingdom, and previously resided at 10 Portland Avenue, London, England.

9.      Upon information and belief, the individual Defendants, JACK LEFKOWITZ and BLUMA LEFKOWITZ, are citizens of the State of New York, residing within the Eastern District of New York.

10.     Upon information and belief, the corporate Defendants, MASKIL EL-DAL, INC., CARE TO CARE MANAGEMENT, LLC, MAIMONIDES MEDICAL SERVICES, LLC, and MEDSCAN MOBILE, maintain their principal place of business in the Eastern District of New York.

11.     This is an action between citizens of a State (*the Defendants*) and citizens or subjects of a foreign state (*the Plaintiff*) as defined by 28 U.S.C. § 1332(a)(2).

12.     The causes of action over which the Court has original jurisdiction pursuant to 28 U.S.C. § 1332, and the amount in controversy exceeds $75,000 exclusive of interest and costs, and that is between citizens of different states or of a foreign state, and pendent and/or ancillary state law claims arising out of a common nucleus of operative facts.

### C.
### Jurisdiction.

13.     Personal jurisdiction over the Defendants comport with the

United States Constitution and is founded upon the Defendants' presence and doing business in the forum state in which this action is brought.

**D.**
**Venue.**

14.    Venue is laid in the Eastern District of New York, the judicial district in which the Defendants' acts or omissions have been committed, as well as it being the location of their residences, principal offices and places of business.

**E.**
**Allegations Common As To**
**All Causes Of Action**

**Introduction**

15.    The Plaintiff, SIMCHE STEINBERGER, as Executor of the last Will and Testament and Estate of TIBOR STEINBERGER, brings this action in such capacity to recover the damages as claimed of herein.

16.    This action stems from the violation and breach of trust by the Defendants; from their illegal, tortious and predatory acts in jointly conspiring with one another for the specific purpose of defrauding TIBOR

STEINBERGER and embezzling the said Decedent's property; and, by unlawfully depriving STEINBERGER of the same, to wit, the outright theft by Defendants of the sum of $3,590,000.00 that belonged to the Decedent; by surreptitiously transferring and diverting the stolen funds out of the jurisdiction of this Court, and by concealing the proceeds of their theft in various offshore numbered bank accounts, one of which is being maintained in the name of the Defendant BLUMA LEFKOWITZ.

**F.**
**The Object of This Action And The**
**Relief Sought By The Plaintiff**

17.    The Plaintiff herein seeks a judgment from this court against the Defendants, jointly and severally, in a sum of not less than $3,590,000.00; for an order imposing a constructive trust and for the return of the stolen property; for an accounting of all such funds that came into the hands of the Defendants; for an order compelling the Defendants to return the Decedent's monies transferred to their various entities and bank accounts and/or entities or accounts controlled by them; for an amount to be assessed by the trier of the facts as damages against the Defendants as based upon causes of action stemming in fraud, for breach of fiduciary duty, for aiding

and abetting fraud, for aiding and abetting the breach of fiduciary duty, for conversion, for unjust enrichment, to pierce the corporate veil, for civil RICO violations; and, for an additional sum for treble damages against the Defendants in an amount of not less than $9,000,000.00, plus interest, costs and attorneys' fees stemming from Defendants' civil RICO violations as hereinafter more fully described.

### III.
### The Parties

#### *The Plaintiff*

18.     Plaintiff SIMCHE STEINBERGER is a citizen of the United Kingdom.

#### *The Defendants*

19.     Upon information and belief, JACK LEFKOWITZ is a citizen of the United States and a resident of the Borough of Brooklyn, County of Kings, City and State of New York; he is also a shareholder and a principal of the codefendant MASKIL EL-DAL, INC.

20.    Upon information and belief, BLUMA LEFKOWITZ is a citizen of the United States and a resident of the Borough of Brooklyn, County of Kings, City and State of New York. She is the wife of the codefendant JACK LEFKOWITZ, and also a shareholder and a principal of the codefendant MASKIL EL-DAL, INC.

21.    Upon information and belief, MASKIL EL-DAL, INC., is a New York Religious Corporation formed by the Defendants, JACK LEFKOWITZ and BLUMA LEFKOWITZ for the specific and ongoing purpose of committing various fraudulent acts; for hiding monies from their creditors; and, in this case, it was used by the Defendants to defraud the Plaintiff and obtain his monies through the scheme as is hereinafter described.

22.    As will hereafter be seen, MASKIL EL-DAL, INC., as well as the other entities owned or controlled by Defendant JACK LEFKOWITZ, has continually been used as vehicles to perpetrate numerous acts of fraud against various third parties, including, but not limited to, the fraud

committed against the Decedent herein. The Defendants have, thus, exhibited an ongoing threat of illegal activity to sufficiently satisfy RICO's close-ended continuity requirement for establishing a "pattern of racketeering activity" under 18 U.S.C.A. §§ 1341, 1343, 1962, that also forms a basis for Plaintiff's causes of action as brought under the Tenth Cause of Action herein.

23.    Upon information and belief, CARE TO CARE MANAGEMENT, LLC, is a New York limited liability company also formed, owned and controlled by the Defendant, JACK LEFKOWITZ, as well with the other codefendant, JOHN DOE 1, whose identity has not yet been ascertained, and that the aforesaid entity was used for the specific purpose of deceiving and defrauding the Plaintiff in order to obtain his monies through the scheme as is hereinafter described.

24.    Upon information and belief, MAIMONIDES MEDICAL SERVICES, LLC, is a Delaware limited liability company also formed, owned and controlled by the Defendant, JACK LEFKOWITZ, as well with

the other codefendant, JOHN DOE 2, whose identity has not yet been ascertained, and that this entity was also used for the specific purpose of deceiving and defrauding the Plaintiff in order to obtain his monies through the scheme as is hereinafter described.

25.    Upon information and belief, MEDSCAN MOBILE, is an unincorporated entity, operated and controlled by the Defendant, JACK LEFKOWITZ, as well with the other codefendant, JOHN DOE 2, whose identity has yet to be ascertained, and that this unincorporated entity was also used for the specific purpose of deceiving and defrauding the Plaintiff in order to obtain his monies through the scheme as is hereinafter described.

26.    That the aforesaid entities were utilized as vehicles through which the Defendants, by in engaging in a shell game, defrauded the Decedent through a sham investment scheme; and, whereby the stolen funds were surreptitiously transferred out the jurisdiction of this court and the United States; secretly deposited abroad in various numbered bank accounts under the control of various undisclosed beneficiaries (believed to include

the Defendants) to conceal the beneficial account owners; all aimed at hindering, impeding and obstructing the Decedent from obtaining the return of monies rightfully belonging to him.

27. "JOHN DOES" 3 through 10, are fictitious names and are intended to be the person, persons or entities serving as the nominees, transferees, enablers and/or alter egos of the Defendants in possession of the Decedent's property that is the subject of this action. And, if and when their identities are ascertained, Plaintiff intends to substitute them in this action after discovery thereof.

### IV.
### THE UNDERLYING FACTS AND BACKGROUND OF THIS ACTION

### (i)

### The Underlying Scheme And Means Used To Purloin And Steal The Decedent's Monies

28. The Defendants, acting together and in concert, utilized three separate entities, MASKIL EL-DAL, INC., CARE TO CARE

MANAGEMENT, LLC, MAIMONIDES MEDICAL SERVICES, LLC, and MEDSCAN MOBILE in order to perpetrate the fraud complained of herein.

29.    The object of the fraud was to gain access to monies that amounted to the sum of $3,590,000.00 and received by the Decedent from the proceeds of a sale of his property, and to steal the same from him through a bogus investment in these entities.

30.    In or about November 2007, the Plaintiff, TIBOR STEINBERGER, as the sole stockholder and beneficial owner of 178 FRANKLIN HOLDING CORP, concluded a real estate transaction and sale of property in New York State whereby the proceeds thereof, instead of being paid to him, and in accordance to his directions, were retained for his use and benefit in the IOLA escrow account of BERNARD SCHAFRAN, ESQ., the attorney for the seller and a member of the New York bar.  The monies in the attorney's escrow account amounted to $3,590,000.00.

**(ii)**

**The Scheme**

31.    That sometime after the aforesaid real estate closing, the Defendant JACK LEFKOWITZ proposed that the Decedent make an investment with the proceeds derived from the sale of his property in:

      i.    CARE TO CARE MANAGEMENT, LLC, a New York limited liability company that was to be formed as a Radiology Benefits Management Service company allegedly providing medical and/or clinical services to its subscribers;

     ii.    MAIMONIDES MEDICAL SERVICES, LLC, a Delaware limited liability company that was to be formed as a medical service provider to its subscribers; and

   iii.    MEDSCAN MOBILE, an unincorporated entity, formed to create medical mobile scanning devices/equipment.

32.    However, pending discussions between these two parties, and in reliance upon Defendants' fraudulent misrepresentations, TIBOR STEINBERGER, consented and directed the transfer of the funds out of the

16

attorney's escrow account of MASKIL EL-DAL, INC, but specifically to be held *"in trust"* by Defendant JACK LEFKOWITZ, as trustee, thereof with the Defendant corporation.

33.    Upon information and belief, MASKIL EL-DAL, INC, is solely owned and wholly controlled by Defendants, JACK LEFKOWITZ and BLUMA LEFKOWITZ.

34.    In convincing the Decedent to invest in what ultimately has been determined to be a fraudulent scheme solely aimed at obtaining the monies derived by the Decedent from the sale of his property -- but before any formal documents could be agreed upon or executed pertaining to the contemplated investments -- the Defendant made various oral and written misrepresentations, more specifically, those contained in a letter dated November 11, 2007, whereby JACK LEFKOWITZ represented and acknowledged to the Decedent that *"[u]pon written request from yourself moneys will be released to you promptly as per your instructions and*

*directions."* The letter was signed "JACK LEFKOWITZ Trustee."
(**Exhibit "B"**)

35.    That CARE TO CARE MANAGEMENT, LLC was allegedly formed by the Defendants for the purpose of providing radiology benefits services and/ or medical or clinical services to its subscribers. However, this entity was used by the Defendants as a vehicle to defraud the Decedent by which they falsely represented to him that the Defendants had transferred his monies into that entity as his capital contribution.

36.    Indeed, the aforesaid representations (that Decedent's monies were transferred into CARE TO CARE MANAGEMENT, LLC) were false, in that the Defendants, in fact, never transferred those funds into this entity as an investment or as the Decedent's alleged capital contribution; but that the Defendants diverted and transferred Decedent's monies out of this Court's jurisdiction to their foreign, offshore, numbered bank accounts held and controlled by the Defendants despite the fact that Decedent neither consented to investing nor becoming a member of CARE TO CARE

MANAGEMENT, LLC, nor to the said transfer of his monies by the Defendants.

37.   That MAIMONIDES MEDICAL SERVICES, LLC was allegedly formed by the Defendants as a medical service provider. However, this entity was used by the Defendants as a vehicle to defraud the Decedent by falsely representing to him that the Defendants had transferred his monies into that entity as his capital contribution.

38.   Indeed, the aforesaid representations (that Decedent's monies were transferred into MAIMONIDES MEDICAL SERVICES, LLC) were false, in that the Defendants, in fact, never transferred Decedent's monies into this entity as an investment or as a capital contribution; but the Defendants transferred Decedent's monies out of this court's jurisdiction to foreign offshore bank accounts held and controlled by the Defendants.

39.   That MEDSCAN MOBILE is allegedly an unincorporated entity, designed to create mobile medical scanning devices and equipment.

However, this entity was also used by the Defendants as a vehicle to defraud the Decedent by falsely representing to him that the Defendants had transferred his monies into that entity as his capital contribution.

40.     Indeed, the aforesaid representations (that Decedent's monies had been transferred to MEDSCAN MOBILE) were false, in that the Defendants, in fact, never transferred Decedent's monies to this entity as an investment or as a capital contribution; but, instead, the Defendants surreptitiously transferred Decedent's monies out of this Court's jurisdiction to foreign offshore bank accounts held and controlled by the Defendants JACK LEFKOWITZ and BLUMA LEFKOWITZ.

### (iii)
### Albeit by Fraud, The Defendants Successfully
### Obtain The Decedent's Monies

41.     Despite the fact that the Decedent's funds had been placed in trust with JACK LEFKOWITZ, the alleged "Trustee," pending any further, prospective investments, the Defendants had advised the Decedent that the investments had already been made for his benefit in CARE TO CARE

MANAGEMENT, LLC, MAIMONIDES MEDICAL SERVICES, LLC, and MEDSCAN MOBILE, through Defendant, JACK LEFKOWITZ and BLUMA LEFKOWITZ's religious corporation, MASKIL EL-DAL, INC. Having, thus, placed his trust and confidence in the Defendant JACK LEFKOWITZ to guide and advise him in making various investments, the Decedent had no reason to question his bona fides and relied upon his representations, albeit false, to that effect.

**(iv)**
**The Defendants Fraudulently Conceal Their Actions**
**And Transfer The Stolen Funds Into Their Four Separate**
**Offshore, Numbered Bank Accounts**

42.     Despite the false pretense and the fraudulent misrepresentations made by the Defendants, they never transferred any of the Decedent's monies into CARE TO CARE MANAGEMENT, LLC, MAIMONIDES MEDICAL SERVICES, LLC, and MEDSCAN MOBILE at all, but, instead, exploiting the consent that had been fraudulently obtained from the Decedent, presented it to BERNARD SCHAFRAN, ESQ., and directed him transfer the Decedent's funds from his IOLA escrow account.   And,

surreptitiously, without Decedent's knowledge or consent, caused the funds

to be transferred abroad and deposited in the offshore numbered bank

accounts of JACK LEFKOWITZ and BLUMA LEFKOWITZ as follows:

**Bank Wire Transfer #1 –**

Bank Jacob Safra (Schweiz AQ)
Blecherweg 1/ Paradeplatz-Postfach 2123
CH-8022 Zurich, Switzerland
Ref 506071
IBAN CH35085470506071   00010
For Beneficiary: **RORICI (CUSTOMER)**
Attn:  Mr. Marcus Leuzinger
Amount: $820,000.00

**Bank Wire Transfer #2 –**

Credit Suisse, Zurich, Switzerland
IBAN CH 88 0483 5090 9410 4400 0
Swiss Code Creschzz/80A
For Account: Arzi Bank da Zurich
Account No. 909410-44
Attn: Motti Zoladz
For Beneficiary:  **MONTICOLA (CUSTOMER)**
Amount: $700,000.00

**Bank Wire Transfer #3 –**

UBS AG
Paradeplatz 6 PO Box CH 8098
Zurich, Switzerland
Att'n: Stephan Suess
Beneficiary: **230-772684 (CUSTOMER)**
Amount: $750,000.00

**Bank Wire Transfer #4 –**

Mizrahi Tefahot Bank Ltd.
12 Lincoln Street
Tel Aviv, 67134 Israel
(SWIFT ID)  MIZBILIT
Beneficiary:  **Bluma Lefkowitz**
Account No. 135949
Amount $795,000.00

43.    Upon information and belief, the Defendants JACK LEFKOWITZ and BLUMA LEFKOWITZ maintain, control and are the beneficial owners of the above offshore numbered bank accounts specifically formed to disguise their true ownership as the beneficiaries thereof, all in order to avoid the payment of federal and state income taxes and to evade the civil and criminal the laws of the United States of America.

44.    In so defrauding the Decedent and in committing an outright theft of his monies, the Defendants were able to utilize bank accounts previously maintained and/or owned by them to which those funds were transferred and deposited, not only to defraud the Decedent, but also to evade income tax laws and defraud the government of the United States of

America as well; and, as shall hereafter be seen, all of which are indictable and predicate offenses offenses under federal and state laws.

### (v)
### The Fortuitous Discovery of The Theft And
### Efforts To Avoid Litigation Between The Parties

45.    In 2011, when the Decedent had been in seriously declining and rapidly failing health that was advancing at a most precipitous pace, STEINBERGER, mindful of his infirmities and of the mortality of human life, he began taking steps to gather his assets and take inventory of his investments.

46.    That, sometime in or about early 2011, while visiting in the United States, and making inquiry into the status of the funds entrusted to JACK LEFKOWITZ on behalf of STEINBERGER, his agent fortuitously discovered that the funds were neither held in trust nor reinvested as had been represented, but, instead, transferred by BERNARD SCHAFRAN, ESQ., at the direction of Defendant JACK LEFKOWITZ to the personal accounts of the Defendants as alleged in paragraph "42" herein.

47.    Thereafter, STEINBERGER having been apprised of his agent's findings, steps were taken by him to have JACK LEFKOWITZ return his monies. And, specifically in order to avoid any litigation between the parties -- something that is expressly frowned upon as being against the Decedent's religious beliefs and the beliefs of the community of which parties belonged to  -- the Decedent enlisted the aid of his son-in-law, CHAIM SAKS, as well as the aid of various rabbis, to render assistance.  It should be noted that at that time, the Decedent was seriously ill; he was on a strict regimen of dialysis treatments for renal failure (which he ultimately died from) and -- living in London, England – he was unable to travel or handle his own affairs. Thus, the Decedent requested that his son-in-law take steps to amicably settle the matter with JACK LEFKOWITZ. And, insofar as Rabbi BENYUMIN EISENBERGER was the rabbi of JACK LEFKOWITZ, his aid was also enlisted by CHAIM SAKS to settle any differences between the parties.

48.    What then followed were extended efforts by CHAIM SAKS, including numerous telephone conversations with JACK LEFKOWITZ; and,

also, numerous telephone calls and meetings with the intermediary, rabbi BENYUMIN EISENBERGER, as well as with other community members, all in an attempt to avoid any litigation in accordance with the parties' religious beliefs, and to amicably settle the differences between them.

49.     Despite the continuing efforts of the parties to settle the matter, JACK LEFKOWITZ -- who owns a residence and spends most of his time abroad in Israel -- continually procrastinated and delayed any meetings with CHAIM SACKS and his rabbi with proffered excuses attributed to his inability to attend due to scheduling differences and the travel difficulties of residing abroad.   Thus, any efforts at settlement were incessantly postponed, as it subsequently appeared that JACK LEFKOWITZ had been engaging in dilatory tactics by delaying all proceedings and spurning any meetings with CHAIM SAKS and rabbi EISENBERGER.

50.     Subsequently, after STEINBERGER'S death, although the efforts of his agents had failed, this action is being commenced upon the

appointment of the Decedent's personal representative and Executor who now brings this action based upon the causes as are hereinafter set forth.

### FIRST:

**PLAINTIFF'S FIRST CAUSE OF ACTION**
**AGAINST ALL DEFENDANTS**
***(Common Law Fraud)***

51.    Plaintiff repeats and reiterates each and every one of the foregoing allegations, incorporating them by reference in the following cause of action herein with the same force and effect as through set out at length.

52.    That this claim is timely, having been brought by Plaintiff within six years after the date of accrual of the cause of action as stated herein.

53.    That, upon information and belief, the Defendant JACK LEFKOWITZ and his wife, the codefendant BLUMA LEFKOWITZ, are the sole principals of Defendant MASKIL EL-DAL, INC.

54.     That Defendant JACK LEFKOWITZ fraudulently induced TIBOR STEINBERGER to grant him access to his monies by making representations, both orally and in writing, to the Decedent that the subject funds, the amount of $3,590,000.00 as described herein, would be held "in trust" with MASKIL EL-DAL, INC., and that Defendant JACK LEFKOWITZ would hold those monies as "Trustee" and would return the same on demand.

55.     More specifically, on November 11, 2007, JACK LEFKOWITZ made oral and written representations and statements to the Decedent to the following effect:

> "[A]ll monies transferred into our account as per instruction of
> Mr. Tibor Steinberger shall be held in trust for your benefit.
> "Upon written request from yourself all monies will be returned
> to you promptly as per your instruction and direction."
>
> **(Exhibit "B")**

56.     That the aforesaid statements were made in writing and signed by JACK LEFKOWITZ in order to induce the Decedent to part with, and give his consent to the transfer his monies to the defendant MASKIL EL DAL, INC,  as well as to assuage any of his concerns regarding the return thereof.

57.     That the aforesaid statements and representations made by JACK LEFKOWITZ were false when made, were known by him to be false, and were intended to secure the reliance and consent of the Decedent to the transfer of his monies and to induce him to give his consent thereto.

58.     That, in reliance upon the false and fraudulent misrepresentations of the Defendants, the Decedent was duped into consenting to the transfer and release of his monies from the IOLA escrow of BERNARD SCHAFRAN, ESQ., to wit, the sum of $3,590,000, account of into MASKIL EL-DAL, INC, the entity wholly owned and controlled by the Defendants, JACK LEFKOWITZ and BLUMA LEFKOWITZ. However, those funds were deliberately diverted by the said Defendants,

finding their way into the offshore accounts of JACK LEFKOWITZ and BLUMA LEFKOWITZ instead.

59.    To the extent referred to herein whereby the said Defendants represented to the Decedent, specifically stating to him on November 11, 2007 that: *"[A]ll monies transferred into our account as per* [your] *instruction . . . shall be held in trust for your benefit.* [And, that] "[u]*pon written request from yourself all monies will be returned to you promptly as per your instruction and direction."* (id)

60.    The aforesaid statements, made orally and in writing on November 11, 2007, were false when made; they were known by the Defendant to be false, and were made for the specific purpose of misleading and deceiving the Decedent; to induce him to act and rely thereon, and aimed at getting him to part with his monies.

61.    That, in fact, the Decedent's monies were never held in trust or reinvested in any of the aforesaid entities as represented; but, instead,

transferred by the Defendants, JACK LEFKOWITZ and BLUMA
LEFKOWITZ, and concealed in their offshore and secretly numbered bank
accounts in Switzerland and in Israel as indicated under paragraph number
"42" above.

62. That the Plaintiff's Decedent, in so acting, reasonably relied
upon the statements and misrepresentations of the Defendant JACK
LEFKOWITZ, albeit intentionally false and known to the said Defendant to
be false.

63. As result of the foregoing, the Plaintiff's Decedent sustained
the damages as are herein complained of; and, that Plaintiff is accordingly
entitled to judgment against Defendants, the amount to be determined by the
trier of facts hereof, but not less than $3,590,000.00.

64. An inference may be properly drawn against the Defendant
BLUMA LEFKOWITZ, and the fraudulent acts of her husband, JACK
LEFKOWITZ, may be imputed to her as a co-conspirator. BLUMA

LEFKOWITZ was a direct beneficiary and a recipient of the proceeds of the fraud; she had actual knowledge thereof and knew of the false and fraudulent misrepresentations of her husband, JACK LEFKOWITZ that were made for, amongst other things, her benefit; and, she accordingly participated in the fraud and enabled its commission as a recipient of the illegal gains that were subsequently transferred to her and secreted in her personal bank account abroad in Israel as referred to in paragraph "42" herein.

## SECOND:

### PLAINTIFF'S SECOND CAUSE OF ACTION AGAINST ALL DEFENDANTS
#### (*Fraud In The Inducement*)

65. Plaintiff repeats and reiterates each and every one of the foregoing allegations, incorporating them in the following cause of action herein with the same force and effect as through set out at length.

66. The Defendants, acting jointly and in concert, accomplished their scheme through false pretenses and through fraudulent trick, scheme

and device, as well as by false representations and fraudulent concealments.

67.    Had the Decedent known the truth as actually existed, he would have never agreed to turn his property over to be held "in trust" or reinvested as was falsely misrepresented to him and deceptively stated that the monies are *"to be held in trust for your benefit."*

68.    Under the circumstances complained of herein, Defendants' statements were knowingly reckless and made with the intent to deceive and for the purpose of intentionally inducing the Decedent to act thereon.

69.    That the Decedent did, in fact, justifiably rely upon Defendants' misrepresentations and was thereby induced to act upon their false and fraudulent statements and deliberate misrepresentations to his injury and damage, as described herein.

70.    The actions of the Defendants were intentional and aimed at

deceiving the Decedent, and based upon their avarice and greed, and in coveting the property of another that did not belong to them.

71.     As result of the foregoing, the Decedent sustained financial damages stemming from the illegal acts of the Defendants.

72.     Under the circumstances herein prevailing, the Plaintiff is entitled to pursue this cause of action against the Defendants in damages for fraud in the inducement, including, but not limited to, an award of punitive or exemplary damages as may so be determined by the trier of the facts hereof, but not less than $3,590,000.00.

## THIRD:

### PLAINTIFF'S THIRD CAUSE OF ACTION AGAINST ALL DEFENDANTS
### (*Aiding And Abetting Fraud*)

73.     Plaintiff repeats and reiterates each and every one of the foregoing allegations, incorporating them by reference in the following

cause of action herein with the same force and effect as through set out at length.

74.     That Defendant JACK LEFKOWITZ induced Plaintiff's Decedent to deposit with him, and then to hold Plaintiff's $3,590,000.00 in trust and then allegedly reinvested through a deliberately contrived and sham investment scheme utilizing his entities, the Defendants, MASKIL EL-DAL, INC. and CARE TO CARE MANAGEMENT, LLC, MAIMONIDES MEDICAL SERVICES, LLC, and MEDSCAN MOBILE. And, as a result of such actions, the Defendants, and each of them, affirmatively assisted, help conceal, and enabled the fraud to be successfully carried out and perpetrated upon the Decedent as complained of herein.

75.     That as a result of the acts and omissions complained of herein, including, but not limited to, Defendants misappropriation and conversion of the sum of $3,590,000.00 that belonged to the Decedent, Defendants breached their fiduciary duties owed to Plaintiff's Decedent.

76.    That all Defendants knowingly participated, acted in concert by rendering substantial assistance and inducing Plaintiff's Decedent to furnish them $3,590,000.00, and thereafter fraudulently retaining, concealing, and failing to return the same upon the Decedent's demand for same.

77.    More specifically, the Defendant JACK LEFKOWITZ, with intent to deceive, instructed the attorney holding the Decedent's funds in escrow to transfer the funds to various offshore bank accounts under his dominion and control, including to offshore accounts held and controlled by Defendants JACK LEFKOWITZ and BLUMA LEFKOWITZ while, at the same time, misrepresenting to the Decedent that the funds would be held by him in trust as a trustee and later reinvested for his benefit in the entities described herein.

78.    Subsequently thereafter, and before any agreements could be entered into between the parties with Plaintiff's Decedent, the Defendant, JACK LEFKOWITZ, the alleged trustee, made various fraudulent misrepresentations to the effect that his entity, MASKIL EL-DAL, INC, a

religious corporation (the Defendants JACK LEFKOWITZ and BLUMA LEFKOWITZ being principals thereof) would hold the funds and serve as investor to yet his other entities for the benefit of the Decedent, CARE TO CARE MANAGEMENT, LLC, MAIMONIDES MEDICAL SERVICES, LLC, and MEDSCAN MOBILE; and, that, upon information and belief, Defendants JACK LEFKOWITZ and Defendants "JOHN DOES" 1 through 10 are the principals thereof.

79. That throughout the course of dealings, the Defendants made untruthful representations to Plaintiff's Decedent that were knowingly false, and by which, after obtaining access to the Decedent's funds, the Defendants transferred those funds to their offshore, secreted numbered bank accounts solely to deceive Plaintiff's Decedent, rather than holding the same in trust or reinvesting them as alleged; and, thus, permanently depriving the Decedent of his property.

80. That the acts and omissions of the Defendants as complained of herein, in acting as aiders and abettors, facilitated the fraud complained of;

and, that under the structured scheme herein, all Defendants jointly participated in their self-dealings, failed to use reasonable care in handling the funds of Plaintiff's Decedent, failed to disclose and withheld material facts, made false and factual misrepresentations as are specifically described in **Exhibit "B"** annexed hereto, and additionally failed to return the funds upon demand.

81.     In light of the foregoing, all of the Defendants proximately caused the harm on which the primary liability is predicated, and, accordingly, are jointly and severally liable for the damages sustained by the Plaintiff's Decedent and for any judgment entered, to be determined by the trier of facts hereof.

82.     As a result of the foregoing, Defendants, and each of them, are liable in damages for their said actions in aiding and abetting the fraud complained of herein.

## FOURTH:

## PLAINTIFF'S FOURTH CAUSE OF ACTION
## AGAINST ALL DEFENDANTS
### (Breach Of Fiduciary Duty)

83.    Plaintiff repeats and reiterates each and every one of the foregoing allegations, incorporating them by reference in the following cause of action herein with the same force and effect as through set out at length.

84.    That an ongoing and continuing confidential relationship and trust was created between the Decedent and Defendant JACK LEFKOWITZ as a result of the latter assuming the role as trustee of the Decedent's monies. That relationship also arose out of the principal agency relationship that had also been established by and between Plaintiff's Decedent and Defendants, JACK LEFKOWITZ, BLUMA LEFKOWITZ and "JOHN DOES" 1 through 10, the principals of MASKIL EL-DAL, INC, CARE TO CARE MANAGEMENT, LLC, MAIMONIDES MEDICAL SERVICES, LLC, and MEDSCAN MOBILE.

85.    That JACK LEFKOWITZ, through his entities MASKIL EL-DAL, INC, CARE TO CARE MANAGEMENT, LLC, MAIMONIDES MEDICAL SERVICES, LLC, and MEDSCAN MOBILE, and through the principals thereof, Defendant BLUMA LEFKOWITZ and "JOHN DOES" 1 through 10, represented and agreed to continually hold the Decedent's funds in trust and for his benefit.

86.    However, by the Defendants' acts and omissions complained of herein, including, but not limited to, the Defendants' clandestine and hitherto undisclosed misappropriation and conversion of Plaintiff's $3,590,000.00, the Defendants' failure to act honestly, to exercise reasonable care in handling Plaintiff Decedent's funds, by engaging in self-dealings, in failing to disclose and deliberately withholding material facts to Plaintiff's Decedent, all constitutes an egregious breach of the fiduciary duties owed to the Decedent.

87.    In light of the foregoing, the Plaintiff is entitled to an award of actual damages stemming from Defendants' breach of their fiduciary duties,

for disgorgement of any profits that the Defendants have earned as a result of the acts or omissions complained of herein; and, additionally, for punitive or exemplary damages, and to be determined by the trier of the facts hereof, but not less than $3,590,000.00.

## FIFTH:

### PLAINTIFF'S FIFTH CAUSE OF ACTION
### AGAINST ALL DEFENDANTS
#### (*Aiding And Abetting Breach of Fiduciary Duty*)

88.     Plaintiff repeats and reiterates each and every one of the foregoing allegations, incorporating them by reference in the following cause of action herein with the same force and effect as through set out at length.

89.     That, by having agreed to safeguard and hold his monies in trust and to return it on demand, the defendant JACK LEFKOWITZ owed a fiduciary duty and obligation to the plaintiff's Decedent.

90.   In procuring the Decedent's monies by fraudulent means, and by subsequently refusing to return the funds to the Decedent, the defendant, JACK LEFKOWITZ breached his fiduciary duties as were owed to the Decedent.

91.   That all Defendants, and each of them individually, as aiders and abettors, had actual knowledge of Defendant LEFKOWITZES' breach of his fiduciary duties.

92.   That all Defendants, acting jointly, severally and together in concert, participated, assisted, aided and abetted in the breach of Defendant JACK LEFKOWITZES' breach of his fiduciary duties, the commission of the fraudulent acts or omissions complained of herein, including, but not limited to, procuring the Decedent's funds through false pretenses; funneling Plaintiff Decedent's funds through offshore foreign bank accounts held in the names of the Defendants, JACK LEFKOWITZ and BLUMA LEFKOWITZ to disguise the true owners thereof; and in also utilizing the Defendants MASKIL EL-DAL, INC. in a sham investment scheme with

## SIXTH:

## PLAINTIFF'S SIXTH CAUSE OF ACTION
## AGAINST ALL DEFENDANTS
### (*Imposition Of Equitable Lien*
### *And A Constructive Trust*)

96.    Plaintiff repeats and reiterates each and every one of the foregoing allegations, incorporating them by reference in the following cause of action herein with the same force and effect as through set out at length.

97.    The fiduciary relationship that had been created and established between the Decedent and the Defendants, as evidenced by the transactions between them whereby the Defendant JACK LEFKOWITZ acknowledgement that the Decedent's monies would be held by him as trustee, *"in trust for [his] benefit,"* and that *"[u]pon written request from yourself moneys will be released to you promptly as per your instructions and directions,"* forms the basis for this cause of action.

CARE TO CARE MANAGEMENT, LLC, MAIMONIDES MEDICAL SERVICES, LLC, and MEDSCAN MOBILE as invented by the Defendants.

93.     That all Defendants, and each of them, knowingly induced and/or participated in the breach and had knowledge that the acts or omissions complained of herein are wrongful, illegal and tortious.

94.     As a result of the foregoing, Plaintiff's Decedent sustained the damages and injuries as are complained of herein.

95.     In light of the foregoing, all the Defendants are to be held jointly and severally liable for the damages for aiding, abetting and assisting in the breach of fiduciary duty owed to the Decedent and for any judgment as may be determined by the trier of facts hereof.

98.   That there was an express promise by Defendants that Decedent's monies would be returned to him *"promptly as per* [his] *instructions and directions."*

99.   In reliance upon the promise of the Defendant, and believing in the honorable intentions of JACK LEFKOWITZ, the Decedent consented to the transfer of $3,115,000.00 to, MASKIL EL-DAL, INC, the entity owned and controlled by JACK LEFKOWITZ and BLUMA LEFKOWITZ.

100.   That, despite Decedent's demands for the return of his monies, the Defendants wrongfully refused to return any sums whatsoever to him.

101.   As result of the foregoing, the Defendants have been unjustly enriched at the expense of the Decedent, and all to the latter's damage as complained of herein.

102.   Thus, by and through the foregoing, the Plaintiff has demonstrated the existence of (1) a confidential or fiduciary relation, (2) a

promise, (3) a transfer in reliance thereon and (4) unjust enrichment, all constituting the basis for a cause of action against the Defendants for the imposition of a constructive and equitable lien.

103.   The Plaintiff is therefore entitled to trace the Decedent's funds and to have a constructive trust and equitable lien imposed against the resulting assets of the Defendants in order to repatriate the property of the Decedent from Defendants' offshore bank accounts.

104.   In the event the Plaintiff is unable to locate any of his property transferred and secreted by the Defendants, then the Plaintiff seeks to impose a constructive trust and equitable lien against any other of Defendants' properties that may be found in this or in any other jurisdiction.

## SEVENTH:

### PLAINTIFF'S SEVENTH CAUSE OF ACTION AGAINST ALL DEFENDANTS
### (*Conversion*)

105. Plaintiff repeats and reiterates each and every one of the foregoing allegations, incorporating them by reference in the following cause of action herein with the same force and effect as through set out at length.

106. That the Defendants have intentionally and without authority, through trick, scheme and device, assumed and retained control and illegally exercised dominion over the Decedent's property, to wit, the monies allegedly held in trust by Defendant JACK LEFKOWITZ; and, that, by refusing to return the same after due demand having been made therefor, have interfered with Decedent's right of possession thereto.

107. That the Defendants, without the Decedent's permission, or consent, and disregarding a demand for the return of his funds, continue to interfere with Plaintiff's rights, all to his damages as are claimed of herein.

108. Plaintiff is entitled to judgment against the Defendants for the damages in conversion and civil theft as claimed in this action as result of having intentionally converted his property and refusing to return same.

## EIGHTH:

### PLAINTIFF'S EIGHTH CAUSE OF ACTION
### AGAINST ALL DEFENDANTS
### (*Unjust Enrichment*)

109. Plaintiff repeats and reiterates each and every one of the foregoing allegations, incorporating them by reference in the following cause of action herein with the same force and effect as through set out at length.

110. In light hereof, the Defendants were enriched; the enrichment was at the Decedent's expense; and the Defendants' retention of the benefit would be unjust. And, in such circumstances equity and good conscience require the Defendants to make restitution.

111. That, as a result of the foregoing, the Defendants were unjustly enriched through their acts of fraud, misrepresentation and deceit, all at the Decedent's expense; and, that it is against equity and good conscience to permit them to retain what is sought to be recovered herein.

## NINETH:

### PLAINTIFF'S NINETH CAUSE OF ACTION
### AGAINST ALL DEFENDANTS
### (*Accounting -- Disclosure And Return of Plaintiff's Property*)

112. Plaintiff repeats and reiterates each and every one of the foregoing allegations, incorporating them by reference in the following cause of action herein with the same force and effect as through set out at length.

113. That, in light of the existence of the aforesaid financial relationship of a mutual and confidential nature between the parties whereby monies or property was entrusted to the Defendants, the Plaintiff has the

right to an accounting from the Defendants, and each of them, including JACK LEFKOWITZ, the alleged <u>trustee</u>, for all of the Decedent's monies.

114.   That, under the circumstances hereof, the court should order the Defendants, and each of them, to fully account for the Decedent's monies that were allegedly to be *"held in trust for [his] benefit,"* to disclose the present location of those assets, and to identify the individual or entity presently in possession or control thereof.

115.   That, in furtherance of any accounting, the issuance of Letters Rogatory to the courts of Switzerland and Israel for extra-judicial assistance is proper so that the testimony can be taken of the depository banks in the foreign jurisdictions where the Defendants had transferred and deposited the Decedent's monies in their various offshore banks; and, so that the funds may be, traced, identified, preserved and/ or repatriated pending the outcome of this action.

## TENTH:

### PLAINTIFF'S TENTH CAUSE OF ACTION
### AGAINST ALL DEFENDANTS
### (*Civil RICO Violations*)

116. Plaintiff repeats and reiterates each and every one of the foregoing allegations, incorporating them by reference in the following cause of action herein with the same force and effect as through set out at length.

117. Plaintiffs assert this cause of action against the Defendants under 18 U.S.C. §§ 1961 - 1968, the federal Racketeer Influenced Corrupt Organizations Act ("RICO") whereby it is unlawful for any person employed by or associated with any enterprise engaged in or the activities which affect, interstate or foreign commerce to conduct or participate directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.

118. Plaintiff has been afforded a private right of action under the statute for treble damages, costs and attorney fees under the RICO statute

(18 U.S.C. § 1962), and state courts have concurrent jurisdiction over civil RICO claims (*Tafflin v. Levitt*, U.S. Supreme Court, 493 U.S. 455 (1990)).

119.   The actions of the Defendants' as herein complained of are based in a scheme, the object thereof being to procure the Decedent's monies through fraud, trick and device.  And, in implementing their scheme, the Defendants have run afoul of the RICO statutes for which they are answerable in the damages that Plaintiff seeks to recover herein.

## Background

120.   The   Defendants,   JACK   LEFKOWITZ   and   BLUMA LEFKOWITZ, have utilized various entities in an ongoing commission of various fraudulent activities, the instant fraud having been perpetrated against the Plaintiff's Decedent, TIBOR STEINBERGER, and appearing to be just one of Defendants' latest ventures in the civil theft of the property of others.

52

121.   JACK and BLUMA LEFKOWITZ are no strangers to engaging in various fraudulent activities and in secreting their assets and ill-gotten gains in the many entities they control, including, but not limited to, MASKIL EL-DAL, INC. and MEDSCAN with which they maintain a most incestuous relationship that is aimed at defrauding their creditors. (See **Exhibit "C"** and **Exhibit "D"**)  The Defendants have, thus, exhibited an ongoing threat and pattern of illegal activity to satisfy RICO's close-ended continuity requirement for establishing a "pattern of racketeering activity" under 18 U.S.C.A. §§ 1341, 1343, 1962.

122.   Once more, in the commission of a fraud against the Decedent herein, JACK and BLUMA LEFKOWITZ have again used their Defendant entities, including MASKIL EL-DAL, INC, as vehicles through which to steal the Decedent's monies.

**Racketeering Violations**

123.   Upon information and belief, and in or about November - December, 2007, within the Eastern District of New York and elsewhere, the defendants JACK LEFKOWITZ and BLUMA LEFKOWITZ, being persons employed by and associated with enterprise, as more fully described below, which enterprise was engaged in, and the activities of which affected, interstate and foreign commerce, did unlawfully and knowingly conduct and participate, directly and indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity, as set forth herein.

**The Enterprise**

124.   The enterprise consists of JACK LEFKOWITZ, acting in concert and together with BLUMA LEFKOWITZ, that utilizes MASKIL EL-DAL, INC., CARE TO CARE MANAGEMENT, LLC, MAIMONIDES MEDICAL SERVICES, LLC, and MEDSCAN MOBILE, and others presently unknown (whose identities Plaintiff intends to allege when discovered) as vehicles to fraudulently obtain the property of the Decedent.

125. The shared purposes or objective of the enterprise has always been, and was, as in the present instance, to obtain the property of others, i.e., the Decedent's monies, through fraud trick, scheme and device.

126. The principal means and the method used by the Defendants in furthering their scheme was, as herein complained of, to first convince the Decedent that MASKIL EL-DAL, INC, would receive his monies to be held in trust; and, having thereafter gained his trust and confidence in consenting to the transfer of his assets to that entity, the Defendants fraudulently utilized MASKIL EL-DAL, INC, CARE TO CARE MANAGEMENT, LLC, MAIMONIDES MEDICAL SERVICES, LLC, and MEDSCAN MOBILE, only as mere façades an passive vehicles by which to facilitate their theft, and claiming that the Decedent's monies had been invested therein as capital investments. However, all the while, the Defendants had illegally diverted the Decedent's monies from the escrow account of an attorney, not to MASKIL EL-DAL, INC, but to their offshore, numbered accounts in Switzerland and Israel as indicated herein.

127.  That, together with and utilizing the above entities, each of the Defendants herein were members of an illegal "enterprise" specifically formed for the purpose of committing a theft of the subject monies from the Plaintiff's Decedent (18 U.S.C. § 1961 (4)); and, each of the individual Defendants are "Persons" as defined in (18 U.S.C. § 1961 (3)) subject to liability hereunder.

## The Pattern of Racketeering Activity
## And Predicate Acts

128.  That the pattern of racketeering activity engaged in by Defendants (18 U.S.C. § 1961 (5)) consisted of at least two acts committed within ten years of each other, to wit, (a) transferring and/or causing the transfers of the monies herein referred to in paragraph "42" of this complaint on at least four separate occasions, by wiring same to various banks in Switzerland and in Israel; and (b) in further use of the mails and telephone on various dates in contacting the Decedent as well as the various banks as hereinabove stated.

129. On or about November 11, 2007, the Defendants JACK LEFKOWITZ and BLUMA LEFKOWITZ, in furtherance and the commission of the fraud complained of herein, used, and/or caused to be used the United States mails (18 U.S.C.A. § 1341 ["Frauds and swindles"]) and/or wires (18 U.S.C.A. § 1343 ["Fraud by wire, radio, or television"] on at least four occasions to transfer and secrete the funds stolen from the Decedent, including, but not limited to, violations of the money laundering statutes of the United States (18. U.S.C.A § 1957 ["Engaging in monetary transactions in property derived from specified unlawful activity"]), during the past ten years by which, through fraud and deceit, and contrary to the trust reposed in them by the Decedent, by having wired or caused to be wired the various sums of Defendant's monies as herein described from the IOLA Escrow Account of BERNARD SHAFRAN, ESQ., to the following recipients:

**<u>Bank Wire Transfer #1 –</u>**

Bank Jacob Safra (Schweiz AQ)
Blecherweg 1/ Paradeplatz-Postfach 2123
CH-8022 Zurich, Switzerland
Ref 506071
IBAN CH35085470506071   00010
For Beneficiary: **RORICI (CUSTOMER)**
Attn:  Mr. Marcus Leuzinger
Amount: $820,000.00

**<u>Bank Wire Transfer #2 –</u>**

Credit Suisse, Zurich, Switzerland
IBAN CH 88 0483 5090 9410 4400 0
Swiss Code Creschzz/80A
For Account: Arzi Bank da Zurich
Account No. 909410-44
Attn: Motti Zoladz
For Beneficiary:  **MONTICOLA (CUSTOMER)**
Amount: $700,000.00

**<u>Bank Wire Transfer #3 –</u>**

UBS AG
Paradeplatz 6 PO Box CH 8098
Zurich, Switzerland
Att'n: Stephan Suess
Beneficiary: **230-772684 (CUSTOMER)**
Amount: $750,000.00

**Bank Wire Transfer #4 –**

Mizrahi Tefahot Bank Ltd.
12 Lincoln Street
Tel Aviv, 67134 Israel
(SWIFT ID) MIZBILIT
Beneficiary: **Bluma Lefkowitz**
Account No. 135949
Amount $795,000.00

130.   That, the wires and/or mails were utilized by the Defendants to secrete the funds fraudulently obtained by the Defendants and stolen from the Decedent in their said offshore, numbered and unreported bank accounts, and to also defraud the taxing authorities of the United States of America.

131.   That the hereinabove mentioned acts are indictable under both federal and state law.

132.   That, as a result of the foregoing, Defendants engaged in "Racketeering Activity" as defined in 18 U.S.C. § 1961(1) involving mail fraud (18 U.S.C.A. § 1341); wire fraud (18 U.S.C.A. § 1343); money laundering (18. U.S.C.A § 1957); obstruction of justice (18 U.S.C. Chap.

attempt to evade or defeat tax (28 U.S.C. § 7201); fraud and false statements (26 U.S.C. § 7206); and bank fraud (18 U.S.C. §1844).

### The Continuing And Ongoing Nature Of The Enterprise

133.   Since 2006, continuing in 2009, and continuing up to the date hereof, JACK and BLUMA LEFKOWITZ have utilized and controlled MASKIL EL-DAL, INC, and the various other Defendant entities as vehicles to continually hide assets and to defraud their creditors and others.

134.   That civil judgments were heretofore entered against Defendant JACK LEFKOWITZ individually, including but not limited to a judgment in favor of Lee Ordell Real Estate, Inc. in the sum of $670,966.00, docketed in the Supreme Court, New York County, and filed on September 5, 2002; a judgment in favor of Fischbein Badillo Wagner Harding, in the sum of $212,097.00, docketed in the Supreme Court, New York County, and filed on October 2, 2001.

135.   That Defendants utilized MASKIL EL-DAL, INC. to hide their assets and to defraud various creditors including the judgment-creditors as alleged herein.

136.   Their continued use of MASKIL EL-DAL, INC. to hide assets and defraud their creditors has been noted and judicially established in two opinions arising out of the Supreme Court of the State of New York, County of New York. (*See Lee Odel Real Estate Inc. v Jack Lefkowitz, Bluma Lefkowitz and Maskil El-Dal, Inc.,* NYS Supreme Court, Ind. No. 108939/07 [**Exhibit "C"**]; and *Core Marketing Group, LLC v. Jack Lefkowitz, Maskil El Dal, Inc., et ano.,* NYS Supreme Court, Ind. No. 114604/06 [**Exhibit "D"**]).   The Defendants have continually engaged in and exhibited an ongoing, continuing and unabated threat of illegal activity in satisfaction of RICO's close-ended continuity requirement for establishing a "pattern of racketeering activity."

### The Nexus to Interstate Commerce

137.   That the foregoing enterprise was engaged in, or its activities affected, interstate and/or foreign commerce, and Defendants were part of such "enterprise" that was engaged in and which affected interstate commerce.

138.   Furthermore, the aforesaid enterprise was actually affected by and actually conducted via the racketeering activity as aforesaid, in that, there was a nexus between the component predicate acts as referred to above and the said enterprise by which the theft of Decedent's property had been committed.

139.   That, as a result of the foregoing, the Defendants did conspire amongst themselves in utilizing the aforesaid entities to violate the provisions of the RICO Act as hereinabove described (18 U.S.C. § 1962(d)).

140.   That the foregoing actions of the Defendants did violate the provisions of 18 U.S.C. 1962(c).

141.   That, as a result of the foregoing, Plaintiff's Decedent has been injured and did sustain damages of not less than $3,590,000 by reason of the aforesaid violations (18 U.S.C. §§ 1962(c) and 1964 (c)), his said injuries being wholly compensable under the statute as is therein provided for.

## ELEVENTH:

### PLAINTIFF'S ELEVENTH CAUSE OF ACTION
*(Conspiracy To Violate The RICO Statutes*
*18 U.S.C.  § 1962(d))*

142.   Plaintiff repeats and reiterates each and every one of the foregoing allegations, incorporating them by reference in the following cause of action herein with the same force and effect as through set out at length.

143.   That, within the time period alleged herein, the Defendants, and each of them, agreed to conduct and participate in the conduct of the affairs of the enterprise, directly and indirectly, through a pattern of "Racketeering Activity" as defined in 18 U.S.C. § 1961(1) involving mail fraud (18 U.S.C.A.

U.S.C.A. § 1341); wire fraud (18 U.S.C.A. § 1343); money laundering (18. U.S.C.A § 1957); obstruction of justice (18 U.S.C. Chap. 73); attempt to evade or defeat tax (28 U.S.C. § 7201); fraud and false statements (26 U.S.C. § 7206); and bank fraud (18 U.S.C. §1844).

144.   That, the Defendants, and each of them, had knowledge of the conspiracy and that it extended beyond their individual roles and/ or knowingly agreed to committing the aforesaid overt acts in furtherance of their conspiracy, i.e., the Racketeering Acts, herein described, in that they took steps to transfer stolen monies out from the jurisdiction of this court to be secreted and concealed in their respective bank accounts abroad, and agreed to an overall objective of the conspiracy knowing that other persons were conspiring to participate in the same enterprise through a pattern of racketeering activity in violation of 18 U.S.C. §§ 1961 – 1968.

145.   That, as a result of the foregoing, Plaintiff's Decedent has been injured by reason of the aforesaid violations (18 U.S.C. §§ 1962(d), his said

injuries being wholly compensable under the statute as is therein provided for.

### PLAINTIFF'S ELEVENTH CAUSE OF ACTION
### AGAINST ALL DEFENDANTS
### (*Appointment of a receiver*)

146.     Plaintiff repeats and reiterates each and every one of the foregoing allegations, incorporating them by reference in the following cause of action herein with the same force and effect as through set out at length.

147.   That, in light of the foregoing, a receiver of the assets of the Defendants should be appointed to prevent any dissipation thereof pending the outcome of this action.

WHEREFORE, Plaintiff prays that he be granted judgment against the Defendants, jointly and severally, on each of the causes of action herein for actual, compensatory and punitive damages as may be provided for at common law and by statute in an amount to be determined by the trier of the

facts, but not less than $3,590,000, and that they be further trebled according

to law as prayed for herein, together with an assessment for attorney's fees,

costs and interest against all Defendants herein.

## JURY DEMAND

Plaintiff demands trial by jury on all issues in this action.

Dated,   Brooklyn, New York
         October 17, 2013

LAW OFFICES OF SOLOMON E. ANTAR
By,

/S/   *Solomon E. Antar*

SOLOMON E. ANTAR, ESQ.  (SEA-7804)
Office & P.O. Address
26 Court Street, Suite 1200
Brooklyn, N.Y. 11242
Tel.  1-212-388-0900
Fax. 1-718-504-6138
solomon.antar@gmail.com

*Attorneys for Plaintiff*

# EXHIBIT "A"

THEY BEAR THE IMPRESSED SEAL OF THE COURT

# IN THE HIGH COURT OF JUSTICE

## The District Probate Registry at Ipswich

BE IT KNOWN that **TIBOR STEINBERGER**
otherwise ZVI STEINBERGER
otherwise CVI STEINBERGER

of **10 Portland Avenue London   N16 6ET**

died on the **3rd** day of **October 2012**
domiciled in **England and Wales**

AND BE IT FURTHER KNOWN that the last Will and Testament of the said deceased (a copy of which is annexed) was proved and registered in the High Court of Justice and that Administration of all the estate which by law devolves to and vests in the personal representative of the said deceased was granted by the said Court on this date to the Executor

**SIMCHE STEINBERGER** of **10 Portland Avenue London N16 6ET**

It is hereby certified that it appears from information supplied on the application for this grant that the gross value of the said estate in the United Kingdom amounts to £555,328 and the net value of such estate amounts to £548,328

DATED the **9th** day of **October 2013**



C. Suchiyl

DISTRICT REGISTRAR / PROBATE OFFICER

Extracted by **WALLER POLLINS (Ref: JW/W15014) Premier House 112 Station Road Edgware Middlesex HA8 7BJ**

**EXHIBIT "B"**



**Maskil El-Dal Inc.**
**1526 52nd Street**
**Brooklyn, New York 11219**

Mr. Tibor Steinberger                                    November 11, 2007
10 Portlad Avenue
Stamford Hills
Londod


Dear Mr. Steinberger


Please be advised all monies transferred in to our account as per instruction of Mr. Tibor
Steinberger shell be held in trust for your benefit.

Upon written request from yourself monies will be released to you promptly as per your
instruction and direction.

Maskil El-Dal may commingle the Steinberger funds in its account without any further
liability to Mr. Steinberger.


Respectfully



_____
Jack Lefkowitz
Trustee

# EXHIBIT "C"

# SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY

PRESENT: _____ HON. CAROL EDMEAD _____          PART 35

_Justice_

Lee Odell

|  |  |
|---|---|
| INDEX NO. | 108935/07 |
| MOTION DATE | 2/29/09 |
| MOTION SEQ. NO. | 02 |
| MOTION CAL. NO. | |

- v -

Lefkowitz, J

The following papers, numbered 1 to _____ were read on this motion to/for _____

| | PAPERS NUMBERED |
|---|---|
| Notice of Motion/ Order to Show Cause — Affidavits — Exhibits ... | _____ |
| Answering Affidavits — Exhibits _____ | _____ |
| Replying Affidavits _____ | _____ |

**Cross-Motion:** ✓ **Yes**  ☐ **No**

Upon the foregoing papers, it is ordered that this motion

In accordance with the accompanying Memorandum Decision, it is hereby

ORDERED that the branch of the motion by the Lefkowitz defendants to dismiss the plaintiff's first, fifth, and sixth causes of action for failure to state a cause of action, and the first cause of action as time-barred, is denied; and it is further

ORDERED that the branch of the motion by the Lefkowitz defendants to dismiss the plaintiff's eighth cause of action for failure to state a cause of action is denied as moot; and it is further

ORDERED that the branch of the motion by the Lefkowitz defendants to dismiss the plaintiff's claims for punitive damages is granted, and such claims are dismissed; and it is further

ORDERED that the branch of the motion by the Lefkowitz defendants pursuant to CPLR 3024, to strike certain allegations in the complaint as scandalous and irrelevant material, is denied; and it is further

Page 1 of 2

Dated: _____          _____
                                                                                    J.S.C.

Check one:          FINAL DISPOSITION          NON-FINAL DISPOSITION

Check if appropriate:          DO NOT POST

**MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE FOR THE FOLLOWING REASON(S):**

ORDERED that the branch of the motion by the Lefkowitz defendants to compel the plaintiff to amend its Complaint to assert a more definite statement of its claims is granted solely to the extent that within 20 days of service of this order with notice of entry, plaintiff shall identify the section of the Debtor and Creditor Law under which it seeks relief in the fifth cause of action; and it is further

ORDERED that the cross-motion by Maskil dismiss the complaint in its entirety as asserted against him, on the ground that the claims fail to state a cause of action and are barred by the statute of limitations is denied, except that the punitive damages claims are dismissed; and it is further

ORDERED that plaintiff serve a copy of this order with notice of entry upon all parties within 20 days of entry.

This constitutes the decision and order of the Court.

Page 2 of 2

FILED

MAY 13 2009

COUNTY CLERKS OFFICE
NEW YORK

Dated 5/11/09        ENTER: _____ J.S.C.
                          HON. CAROL EDMEAD

Check one: ❑ FINAL DISPOSITION   ☒ NON-FINAL DISPOSITION

Check if appropriate:     ❑ DO NOT POST        ❑ REFERENCE

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART 35
---------------------------------------------------------------X

LEE ODELL REAL ESTATE, INC.,                                     Index No. 108939/2007

                                    Plaintiff,                    Sequence No. 002

                    -against-

JACK LEFKOWITZ, BLUMA LEFKOWITZ
and MASKIL EL-DAL,

                                    Defendants.
----------------------------------------------------------------- X

HON. CAROL EDMEAD, J.S.C.

## MEMORANDUM DECISION

Plaintiff Lee Odell Real Estate, Inc. ("plaintiff"), a judgment creditor of defendant Jack

Lefkowitz ("Jack"), commenced this action against defendants Jack and Bluma Lefkowitz

("Bluma") (collectively, the "Lefkowitz defendants") and Maskil El-Dal ("Maskil") alleging

fraud (first cause of action) and fraudulent conveyances in violation of Debtor and Creditor Law

§§273 and 273-a (second, third, fourth, fifth, seventh, and eighth causes of action), and seeking a

judgment directing that the land and improvements thereon owned by Bluma be sold in order to

satisfy plaintiff's judgment.

The Lefkowitz defendants now move to dismiss (1) the plaintiff's first, fifth, sixth and

eighth causes of action for failure to state a cause of action (CPLR 3211(a)(7), (2) the first cause

of action as time-barred (CPLR 3211(a)(5)), and (3) certain allegations in the complaint as

scandalous and irrelevant pursuant to CPLR 3024. In the alternative, the Lefkowitz defendants

move to compel the plaintiff to serve an Amended Complaint with a more definite statement of

its claims.

By cross-motion, Maskil moves to dismiss the complaint in its entirety as asserted against

him, on the ground that the claims fail to state a cause of action and are barred by the statute of limitations.

### Factual Background

According to the Complaint, plaintiff sued Jack in 1998 to recover a brokerage commission relating to the acquisition of certain real property in Manhattan (the "lawsuit"). Following a bench trial, in August, 2002 plaintiff obtained a judgment against Jack for approximately $671,000.00 (the "Judgment"). Except for approximately $34,000.00 in credits *via* payments received pursuant to restraining notices, the Judgment remains unpaid.

Maskil is a religious corporation registered in Brooklyn, New York. During 1998 through 2001, Maskil had been operated by the Lefkowitz defendants and used as a vehicle to shield and launder Jack's income and assets, while Jack was a defendant in the lawsuit. In December 1997, Maskil acquired real property in Brooklyn (the "Brooklyn home"), without court permission. The Brooklyn home was renovated, and the Lefkowitz defendants moved in, making the Brooklyn home their primary residence. By 2001, Jack dominated Maskil, using it for his personal purposes and transferring into it personal assets and personal income. In June 2001, Maskil deeded the Brooklyn home to Bluma, without court permission, and either without consideration or below market value (the "2001 Brooklyn home conveyance"). Bluma then mortgaged the home, and subsequently borrowed funds against the Brooklyn home.

Bluma claims that she does not know what happened to those funds. However, in 2006, Bluma purchased another single-family home in Brooklyn for $700,000, and later sold it in early 2008. Bluma also acquired a condominium in Manhattan for $2.6 million in 2006, and recently sold it for profit in late 2007. Bluma recently transferred the Brooklyn home to herself and

2

"Tova Greenbaum." Maskil has made numerous other real estate transactions from 1998 to the present. Bluma and Maskil have deposits outstanding on other condominium units and are involved in other potential real estate transactions. All of the above transactions were conducted at Jack's direction.

After the Judgment, Jack and Bluma were deposed in 2002 concerning their assets. Jack testified that he was not a member of any partnership or limited liability company, had no income in 1999 and 2000, and that no one owed him any money. However, Jack owned all or a majority of the ownership units of New York Medscan, LLC (a medical imaging business), and was its managing member. Jack was also a member of other limited liability companies, and had income in 1999 and 2000. Jack personally guaranteed a portion of the equipment leases from "GE Capital" to Medscan. Jack represented to GE Capital that he was a managing member of Medscan, signed financial and court documents from 2001 through 2004 as "Managing Member" and held himself out as "owner" of Medscan. Further, Jack obtained a $615,000 judgment in 1999 and continued to attempt to collect that judgment until recently, when the holder of another judgment against him was able to force the judicial sale of said judgment in order to satisfy Jack's obligations to that creditor.

Bluma also testified at an asset deposition, wherein she stated that she did not have any knowledge of anyone other than herself, who has had any involvement with Maskil. However, she was aware of Jack's total control of Maskil.

After plaintiff discovered Jack's ownership interest in Medscan in 2006, Jack allegedly transferred his interest in Medscan to Bluma and/or an entity known as Barclay Dwyer, which was then wholly-owned by Bluma, without fair consideration (the "2006 Medscan conveyance").

3

This action for fraud and fraudulent conveyance ensued.

<u>The Lefkowitz Defendants' Motion</u>

The Lefkowitz defendants argue that the fraud cause of action fails to plead fraud with the required specificity pursuant to CPLR 3016(b). The Complaint refers to two transactions, the Brooklyn home and the Medscan matter. However, Jack did not hold title to the Brooklyn home, and the transaction took place more than six years ago, rendering this claim time-barred. As to the Medscan matter, plaintiff failed to set forth any basis, other than speculation and mere suspicion, for Jack's alleged ownership and/or transfer of any interest in Medscan. The remaining allegations of "other" transactions lack specificity.

As to the first cause of action, the Lefkowitz defendants contend that the Brooklyn home was conveyed on "July 21, 2001." Thus, this action, commenced on June 27, 2007 beyond the six-year statute of limitations, is time-barred and should be dismissed pursuant to CPLR 3211(a)(5). In any event, since Jack did not have an interest in the Brooklyn home, the provisions of the Debtor and Creditor are inapplicable. Finally, since there is no civil cause of action for conspiracy, the "conspiracy to defraud" allegation in the first cause of action must be dismissed, pursuant to CPLR 3211(a)(7).

The fifth cause of action fails to make any reference to any particular section of the Debtor and Creditor Law, and fails to give the Lefkowitz defendants notice of the legal basis for the proposed claim. Therefore, the fifth cause of action should be dismissed pursuant to CPLR 3211(a)(7).

The sixth cause of action to compel the sale of real property owned by Bluma fails to provide the Lefkowitz defendants with any notice as to the statutory or other basis for the

4

requested relief, and thus, fails to state a cause of action.

As there is no separate cause of action of punitive damages in New York, the eighth cause of action for an award of such damages fails to state a claim.

Further, the scandalous and prejudicial allegations in paragraphs 1-3 and 15-27 regarding the Lefkowitz's diversion and secretion of assets, and use of Jack's rabbi to plead claims of poverty on Jack's behalf should be stricken from the Complaint pursuant to CPLR 3024(b).

To the extent any portion of the Complaint is not dismissed, plaintiff should serve a more definite statement pursuant to CPLR 3024(a). The Complaint is pleaded in generalities and gives only examples of transactions forming the basis of plaintiff's claims.

<u>Maskil's Motion</u>

Maskil argues that the causes of action relating to Maskil are barred by the applicable statute of limitations. The only allegation in the Complaint against Maskil relates to the deeding of the Brooklyn home on "June 22, 2001," which was purchased by Maskil in December 1997 and sold to Bluma for insufficient consideration.

Moreover, the alleged fraudulent conduct was discovered more than two years prior to the commencement of this action. Plaintiff alleges that it had actual knowledge or a belief that Jack was using Maskil to shield his assets since as early as 1998, and plaintiff actively litigated against Jack and issued restraining notices from 1998 to 2002.

Further, the claim against Maskil for conspiracy fails for the reasons stated above.

And, punitive damages are only recoverable for fraud where the fraud was aimed at the general public, was gross and wanton in nature, and involved a high degree of moral culpability. The recovery afforded under the Debtor and Creditor Law is limited to nullification of the

conveyance, and removing property from the reach of a creditor is not misconduct so gross and wanton to justify punitive damages.

Opposition

Plaintiff points out given that the Lefkowitz defendants assert that the transfer of the Brooklyn home took place on *July* 21, 2001, the action, commenced on June 2007, is plainly within the six-year statute of limitations. Further, the Complaint's allegation that said transfer occurred on June 21, 2001, is also a typographical error; the transfer occurred on or after June 28, 2001, and the action was commenced on June 27, 2008, within the six-year statute of limitations. Plaintiff served an amended complaint, as of right, to reflect the correct date of the transfer.

Further, fraud has been sufficiently pleaded. The remedy for violating CPLR 3016(b) is to order that certain matters be repleaded. A cursory examination of the Complaint reveals that a fraud claim has been specifically plead.

In addition, since the Amended Complaint now reformats the punitive damages to include them as part of each of the first through fifth causes of action, the branch of the motion seeking to dismiss the separate punitive damage cause of action is moot. Further, as now plead, punitive damages may be recoverable from the judgment-debtor and his co-conspirator since the fraudulent transfers of assets involves conduct which could be characterized as disingenuous, contumacious, illegal, and directed at the public in light of the public benefits conferred upon Maskil by its status as a not-for-profit religious corporation. Thus, defendants' alleged conduct states a claim for punitive damages.

Furthermore, the preliminary statements found in paragraphs one through three are appropriate. The statements include allegations of specific material fact that highlight the

6

extraordinary efforts and willingness of the Lefkowitz defendants to dissemble and defraud in order to avoid the collection of a judgment. Since fraud is almost always to be inferred, it is essential for plaintiff to specify examples of cynical and outrageous conduct from which the defendants' intent may be inferred. Moreover, the allegations concerning misuse of a religious corporation for personal ends tend to support a "fraud upon the public" element.

Plaintiff argues that as to the first cause of action, the claim that Jack had no interest in the Brooklyn home does not warrant dismissal. The Complaint alleges that Jack and Maskil were alter egos of each other, and that Maskil deeded the Brooklyn home to Bluma for insufficient consideration. It necessarily follows that Maskil's property, such as the home, could have been reached by the judgment-creditor had it allegedly not been put beyond the creditor's reach by virtue of the transfer. Furthermore, New York law permits a conspiracy cause of action when attached to a particular cause of action. Plaintiff did not plead conspiracy alone, but rather a conspiracy to accomplish a fraud and fraudulent transfers, which is permissible.

Further, although the fifth cause of action does not specify a section of the Debtor and Creditor Law, it sufficiently pleads the elements of section 276 of that law. Moreover, New York law recognizes a cause of action in damages for transfers which meet the allegations set forth in the fifth cause of action.

Plaintiff also contends that the sixth cause of action is timely, as stated above, and incorporates the allegations concerning the fraudulent transfer from Jack and his alter ego, Maskil, to Bluma. The Debtor and Creditor Law provides a cause of action to set aside fraudulent transfers.

Finally, no definite statement is required.

7

<u>Lefkowitz Defendants' Reply</u>

The Lefkowitz defendants add that since the Amended Complaint and original Complaint are identical (except for correcting a typographical error as to the date of the Deed from Maskil to Bluma, withdrawing the eighth cause of action for punitive damages, adding punitive damages to certain causes of action) they wish to proceed with their motion as against the Amended Complaint.

The Lefkowitz defendants argue that the case cited by plaintiff confirms that there is a higher standard for a pleading alleging fraud than the standard for other pleadings in general. Plaintiff's claim that it cannot detail the fraud as the facts are peculiarly within the Lefkowitz defendants' knowledge lacks merit. Notwithstanding the opportunity to take two depositions of Jack and one deposition of Bluma, and obtain voluminous bank and other financial records, plaintiff's Amended Complaint is devoid of any specific factual allegations of fraud.

As to the first cause of action, although plaintiff asserts that Jack and Maskil were "alter egos of each other," the Amended Complaint does not seek a declaratory judgment or any other affirmative relief to that effect, or provide any support for the single, conclusory "alter ego" allegation. Plaintiff failed to allege the necessary elements to pierce the corporate veil of Maskil. Further, the cursory allegations that Jack controls Maskil are insufficient. And, as to the conspiracy to commit fraud, the Amended Complaint contains none of the hallmark allegations for fraud, such as misrepresentation, reasonable reliance, and damage. To the extent the first cause of action now claims fraud and fraudulent transfers, it should be dismissed as duplicative of plaintiff's other causes of action.

Additionally, as plaintiff's seventh cause of action also seeks relief under Section 276 of

8

the Debtor and Creditor Law, the fifth cause of action should be dismissed as duplicative.

Plaintiff has yet to set forth the specific basis for the sixth cause of action and, instead, has left the Lefkowitz defendants to guess as to the exact legal authority on which the sixth cause of action is based. As such, plaintiff's sixth cause of action should be dismissed for failure to state a cause of action.

Furthermore, the cases cited by plaintiff provide no support for its position that punitive damages are proper in this matter.

Finally, the improper personal attacks by plaintiff are neither material, nor relevant to the litigation.

### Maskil's Reply

Maskil incorporates by reference legal arguments set forth by the Lefkowitz defendants. Maskil further argues that plaintiff failed to adequately plead liability pursuant New York's general common law fraud and Debtor and Creditor Law, thus requiring dismissal of the entire complaint against Maskil.

The second, third, fourth, fifth, and seventh causes of action do not indicate how Maskil can be liable under the respective provisions of the Debtor and Creditor Law. Maskil was not a party to the underlying judgment and therefore, the real property could not have been conveyed "when the person making it is a defendant in an action for money damages or a judgment" under Debtor and Creditor Law § 273-a.

Similarly, Jack Lefkowitz was not a party to the purchase and sale of the property and therefore, the conveyances could not have been made "by a person who is or will be thereby rendered insolvent," under Debtor and Creditor Law § 273, or by a person with actual intent to

9

hinder, delay, or defraud a creditor, under Debtor and Creditor Law § 276.  Since plaintiff has not

adequately pled liability pursuant to Debtor and Creditor Law § 276, then it also cannot recover

attorneys' fees under Debtor and Creditor Law § 276-a.

Maskil argues that the allegations on information and belief that Jack totally dominated

Maskil such that each has become the alter ego of the other, and that Jack used Maskil for

transferring into it personal assets and income are insufficient to sustain a cause of action against

Maskil.  Nowhere does plaintiff indicate how Jack dominated and controlled Maskil specifically

as to the purchase and sale of the property, or how that specific control was used to defraud

plaintiff to its detriment.

Finally, plaintiff's failure to plead at a minimum a *prima facie* case against Maskil

pursuant to the statutory cause of action for a fraudulent conveyance demonstrates that they have

not pled its first cause of action for common law fraud with any particularity.

Analysis

In determining a motion to dismiss pursuant to CPLR §3211(a)(7), the court's role is

ordinarily limited to determining whether the complaint states a cause of action *(Frank v

DaimlerChrysler Corp.*, 292 AD2d 118, 741 NYS2d 9 [1st Dept 2002]).  The standard on a

motion to dismiss a pleading for failure to state a cause of action is not whether the party has

artfully drafted the pleading, but whether deeming the pleading to allege whatever can be

reasonably implied from its statements, a cause of action can be sustained (see *Stendig, Inc. v

Thorn Rock Realty Co.*, 163 AD2d 46 [1st Dept 1990]; *Leviton Mfg. Co., Inc. v Blumberg*, 242

AD2d 205, 660NYS2d 726 [1st Dept 1997] [on a motion for dismissal for failure to state a cause

of action, the court must accept factual allegations as true]).  When considering a motion to

10

dismiss for failure to state a cause of action, the pleadings must be liberally construed (*see* CPLR §3026), and the court must "accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit into any cognizable legal theory" (*Nonnon v City of New York*, 9 NY3d 825 [2007]; *Leon v Martinez*, 84 NY2d at 87-88). However, in those circumstances where the bare legal conclusions and factual allegations are "flatly contradicted by documentary evidence," they are not presumed to be true or accorded every favorable inference [*Biondi v Beekman Hill House Apt. Corp.*, 257 AD2d 76, 81, 692 NYS2d 304 [1st Dept 1999], *affd* 94 NY2d 659, 709 NYS2d 861 [2000]), and the criterion becomes "whether the proponent of the pleading has a cause of action, not whether he has stated one" (*Guggenheimer v Ginzburg*, 43 NY2d 268, 275, 401 NYS2d 182 [1977]; *see also Leon v Martinez, supra*]; *Ark Bryant Park Corp. v Bryant Park Restoration Corp.*, 285 AD2d 143, 150, 730 NYS2d 48 [1st Dept 2001]).

<u>First Cause of Action Against the Lefkowitz Defendants</u>

The first cause of action seeks to set aside the 2001 Brooklyn home conveyance to Bluma, on the ground that defendants "conspired to defraud the creditors of Lefkowtiz and to render noncollectable the judgment held by plaintiff against Lefkowitz." Such cause of action is not barred by the Statute of Limitations. It is uncontested that the six-year statute of limitations under CPLR §213(8) applies to the first cause of action.[1] As plaintiff points out, even accepting as true the contention by the Lefkowitz defendants that the Brooklyn home conveyance occurred

---

[1] CPLR §213(8) provides as follows:

In an action based upon fraud; the time within which the action must be commenced shall be the greater of six years from the date the cause of action accrued or two years from the time the plaintiff or the person under whom the plaintiff claims discovered the fraud, or could with reasonable diligence have discovered it.

on *July* 21, 2001, the action, commenced on June 2007, is timely. Moreover, plaintiff's submissions establish that said conveyance occurred on or after June 28, 2001, (and not on June 21 as the Complaint alleges), and thus, the action was timely commenced on June 27, 2008, a day before the expiration of the six-year statute of limitations.[2]

Nor can it be said that the first cause of action fails to state a cause of action for conspiracy to defraud Jack's creditors. Although Jack did not have an "interest" in the 2001 Brooklyn home conveyance between Maskil and Bluma, plaintiff claims that Jack was the alter ego of Maskil, and controlled Maskil's assets to the extent of diverting its assets to avoid the possibility of its assets being used to satisfy the Judgment against Jack.

*Sweeney, Cohn, Stahl & Vaccaro v Kane* (6 AD3d 72, 773 NYS2d 420 [2d Dept 2004]) is instructive. In *Sweeney*, Amy Kane and her husband George Kane incorporated the defendant Gin Properties, Inc., as a subchapter S corporation in Florida in June 1994. The Kanes entered into a contract to buy a house located at 73 Gin Lane in Southampton, New York. After title closed, Gin Properties, Inc. became the owner of 73 Gin Lane, the principal residence of the Kanes. Thereafter, the plaintiff law firm, on behalf of Mrs. Kane, negotiated a settlement between Mrs. Kane and her prior law firm in October 1994 in connection with an action in Surrogate's Court, wherein she agreed to pay $13,000 in full discharge of her fee obligation to the prior law firm. When Amy Kane failed to pay the $13,000 attorney's fee in accordance with the stipulation, her prior law firm obtained a judgment dated March 8, 1995, for that amount. Shortly thereafter, the plaintiff law firm sued Amy Kane for the balance due on its retainer, and obtained a judgment on February 28, 1996 against Amy Kane for $5,049.93. During the course

---

[2] The amended complaint reflects the alleged correct date of the transfer as June 27, 2001.

of their efforts, both law firms discovered Gin Properties, Inc. The plaintiffs commenced the action on the theory that Gin Properties, Inc. was the alter ego of the Kane defendants and that its property should be sold to pay the plaintiffs' judgments.

The Court found that the Kanes "utterly dominate[d] Gin Properties, Inc., and they formed it to protect assets from claims of creditors such as the plaintiffs, thereby, in effect, defrauding them." They paid the real property taxes and mortgage principal and interest for 73 Gin Lane, *in which they reside*, took income tax deductions on their own tax returns for the interest and taxes. *They were in complete control of the real property, improved it with their own funds*, including the addition of a home entertainment theater and putting green. Although expenses for these purposes and for the Kanes' family, such as college expenses, were paid by corporate checks, these were fed by loans made by the Kanes to Gin Properties, Inc. *Such domination makes Gin Properties, Inc.* (named for the road on which their Suffolk County home is located), *an alter ego of the Kane defendants.* Therefore, its property is subject to the claims of their creditors. Piercing the corporate veil is an equitable concept that allows a creditor to disregard a corporation and hold its controlling shareholders personally liable for the corporate debt. Reverse-piercing flows in the opposite direction and makes the corporation liable for the debt of the shareholders. The Court further found that since "George Kane . . . was a driving force behind the scheme to avoid Amy Kane's creditors, and he benefitted as much as she did from using the corporate form for personal purposes, gaining income tax and habitat advantages, the conclusion is ineluctable that the Kanes were acting in concert."

This case illustrates the sustainability of the first cause of action, even though Jack was neither a party to nor had an "interest" in the Brooklyn home. Although general and conclusory

allegations that non-debtor co-conspirators (*i.e.*, Bluma and Maskil) somehow participated in a scheme to defraud, without identifying affirmative representations upon which the creditors relied, are insufficient to sustain such a cause of action (*see Gallant v Kanterman*, 198 AD2d 76, 603 NYS2d 315 [1st Dept 1993]), the Complaint alleges that Jack and Maskil were alter egos of each other, that Maskil deeded the Brooklyn home to Bluma for insufficient consideration, who then borrowed funds against the Brooklyn home. The borrowed funds allegedly disappeared. It is alleged that the property of Maskil, Jack's alleged alter ego, such as the home, could have been reached by the judgment-creditor had it allegedly not been put beyond the creditor's reach by virtue of the transfer. It is also alleged that the Medscan property, which was under the control of Jack, was transferred to Bluma or an entity then wholly-owned by Bluma, without fair consideration  As the Kanes, the Lefkowitz defendants herein allegedly were acting in concert (*see PalmOne, Inc. v R.C.S. Computer Experience, L.L.C.*, 15 Misc 3d 1127, 841 NYS2d 220 [Sup Ct 2007] [where defendants failed to establish their entitlement to dismissal of plaintiff's causes of action premised upon the Debtor and Creditor Law's fraudulent conveyance provisions, they also failed to establish their entitlement to dismissal of the conspiracy cause of action ]). Therefore, the first cause of action is sufficiently stated against the Lefkowitz defendants.

Fifth Cause of Action Against the Lefkowitz Defendants

The fifth cause of action incorporates the allegations in the previous portions of the Complaint and alleges that the Lefkowitz defendants and Maskil made the 2001 Brooklyn home and 2006 Medscan conveyances "with actual intent to hinder, delay and/or defraud the present and future creditors of [Jack] Lefkowitz, including plaintiff." It further alleges that as "a direct result of the conveyances, plaintiff was injured, for which defendants are liable, pursuant to

14

Debtor and Creditor law, in an amount that it is undetermined but at a minimum is the amount of

the Judgment. . . ." Although, as the Lefkowitz defendants contend, this cause of action fails to

make any reference to any particular section of the Debtor and Creditor Law, plaintiff contends

that it pleads the elements of section 276. Debtor and Creditor Law § 276 provides that "Every

conveyance made and every obligation incurred with actual intent, as distinguished from intent

presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to

both present and future creditors." Here, the Complaint alleges circumstances surrounding the

purchase of certain additional property, including that under Jack's control and with Jack's

knowledge of potential liability to creditors such as the plaintiff, Bluma obtained a mortgage loan

against the Brooklyn home, and did not know where the funds were, but that some time

thereafter, she purchased another home in Brooklyn, followed by a home in Manhattan. Such

allegations are sufficient to plead a fraudulent conveyance under Debtor and Creditor Law § 276

(*see Nonas v Romantini*, 271 AD2d 292, 706 NYS2d 109 [1st Dept 2000] [third cause of action

reinstated, finding "Badges of fraud permitting an inference of fraudulent intent include the close

relationship between Feder and Fleisher, in that their owners were husband and wife; the

apparently nominal consideration that Fleisher gave for Feder, in that the former was only to pay

off the latter's creditors of which there were apparently none; husband's alleged control over the

transferred property after the transfer; and, as already indicated, the alleged incipiency of the

obligation owing to plaintiffs' and husband's knowledge thereof]).

Contrary to the Lefkowitz defendants' contention, plaintiff's fifth cause of action is not

duplicative of the seventh cause of action. The seventh cause of action seeks relief under Section

276-a of the Debtor and Creditor Law, which provides that "In an action . . . brought by a creditor

. . . to set aside a conveyance by a debtor, where such conveyance is found to have been made by the debtor and received by the transferee with actual intent . . . to hinder, delay or defraud either present or future creditors, in which action . . . the creditor . . . shall recover judgment, the justice . . . presiding at the trial shall fix the reasonable attorney's fees of the creditor . . . and the creditor . . . shall have judgment therefor against the debtor and the transferee who are defendants *in addition to* the other relief granted by the judgment." (Emphasis added).  The seventh cause of action alleges that the 2001 Brooklyn home and 2006 Medscan conveyances "referred above were made with the actual intent to hinder, delay and/or defraud plaintiff," and that plaintiff is entitled to recover attorneys's fees pursuant to Debtor and Creditor Law § 276-a.  The Seventh cause of action seeks legal fees under 276-a, whereas plaintiff's fifth cause of action seeks damages under 276.  Therefore, the fifth cause of action is not duplicative of the seventh cause of action.

Therefore, the application to dismiss the fifth cause of action pursuant to CPLR 3211(a)(7) is denied.

<u>Sixth Cause of Action Against the Lefkowitz Defendants</u>

The sixth cause of action incorporates the allegations contained in the preceding paragraphs, but seeks a judgment that "the land with buildings and improvements owned by Bluma Lefkowitz described above be sold and that the money sufficient to satisfy the Judgment . . . be paid over to plaintiff . . . ."  Caselaw permits a judgment creditor to seek the sale of the fraudulent conveyed property in order to satisfy a judgment in its favor (*see National Enterprises, Inc. v Clermont Farm Corp.*, 46 AD3d 1180, 848 NYS2d 420 [3d Dept 2007] [holding that the "Supreme Court properly determined that Property I was fraudulently conveyed to Clermont II

and directed sale of that parcel to satisfy petitioner's judgment"]).  Therefore, the application to dismiss the sixth cause of action is denied.

### Eighth Cause of Action Against the Lefkowitz Defendants

The eighth cause of action for punitive damages was essentially withdrawn as a separate cause of action.  Therefore, dismissal of the eighth cause of action is denied as moot.  However, to the extent that plaintiff added a claim for punitive damages to the remaining causes of action, such claim is dismissed.  "The creditor's remedy in a fraudulent conveyance action is limited to reaching the property which would have been available to satisfy the judgment had there been no conveyance" (*Marine Midland Bank v Murkoff*, 120 AD2d 122, 132, 508 NYS2d 17; *appeal dismissed*, 69 NY2d 875, 514 NYS2d 1029); *see*, Debtor and Creditor Law §§ 278, 279).  A creditor's remedy for the transfer of its debtor's assets, "where undertaken prior to a judgment on the debt, is to obtain a nullification of the conveyance (*see*, § 279) and, where undertaken after judgment, additionally to secure the assets in satisfaction of the debt" (*see*, § 278) *(Federal Deposit Ins. Corp. v Porco*, 75 NY2d 840 [1990]).  The statutory remedies available for the conveyance of property to remove it from the reach of a potential judgment creditor are limited to placing the parties in *status quo ante (Blakeslee v Rabinor*, 182 AD2d 390, 582 NYS2d 132 [1st Dept 1992] *citing* Debtor and Creditor Law § 279 and *Marine Midland Bank v Murkoff, supra*).  Here, the alleged conduct of the Lefkowitz defendants and Maskil herein, in allegedly attempting to place assets under the control of Jack outside the reach of his creditors, *without more*, does not constitute sufficient moral culpability to support the award of punitive damages (*see Blakeslee v Rabinor*, 182 AD2d 390, 582 NYS2d 132 [1st Dept 1992]).  Therefore, the Lefkowitz defendants' application to dismiss the punitive damage claims in the Amended

Complaint is granted.

### Motion by the Lefkowitz Defendants for Definite Statement

CPLR 3024(a) applies to vague or ambiguous pleadings, and provides that "If a pleading is so vague or ambiguous that a party cannot reasonably be required to frame a response he may move for a more definite statement." Where it appears that the complaint alleges various causes of action and that the matter contained therein is indefinite, the court, in the exercise of its discretion, may require the service of an amended pleading as the case may require (*Bradford v 27 East 38th St. Realty Corp.*, 4 AD2d 830, 166 NYS2d 432 [1ᵗ Dept 1957]). Except for the fifth cause of action which fails to set forth the Debtor and Creditor Law section under which such claim is brought, the balance of the complaint sufficiently alleges the parties to the alleged fraudulent conveyances, the approximate dates and years, the nature and identity of the property in question, and the relief sought. Therefore, the alternate request that plaintiff be compelled to amend its complaint to assert a more definite statement is granted solely to the extent that plaintiff shall identify the section of the Debtor and Creditor Law under which it seeks relief in the fifth cause of action.

### Scandalous Material

The test under CPLR 3024 to strike scandalous or prejudicial material is whether allegation is relevant, in evidentiary sense, to the controversy and, therefore, admissible at trial. *Wegman v Dairylea Co-op., Inc.* 50 AD2d 108, 376 NYS2d 728 [4th Dept 1975] , appeal dismissed 38 NY2d 710, 382 NYS2d 1030, appeal dismissed 38 NY2d 918, 382 NYS2d 979; *see also, Soumayah v Minnelli*, 41 AD3d 390, 839 NYS2d [1st Dept 2007] [In reviewing a motion to strike any scandalous or prejudicial matter unnecessarily inserted in a pleading, the inquiry is

18

whether purportedly scandalous or prejudicial allegations are relevant to a cause of action];
*Shenandoah v Hill*, 9 Misc 3d 548, 799 NYS2d 892, *affd. as mod.* 28 AD3d 919, 815 NYS2d
290 [ 2005] [The standard for evaluating whether pleadings are so scandalous or unnecessary as
to warrant being stricken is measured by whether material would be admissible at trial]).

The first four paragraphs are essentially a summary of plaintiff's allegations in support of
its fraudulent conveyance claims against the defendants.  Whether the allegations surrounding
Jack's use of a Rabbi to solicit donations on Jack's behalf because Jack was "broke" is neither
irrelevant nor scandalous, but is relevant to the picture Jack and Bluma paints at their alleged
depositions that Jack has insufficient income to fully satisfy his creditors.  Therefore, the branch
of the motion to strike these portions of the complaint pursuant to CPLR 3024 is denied.

<u>Cross-Motion to Dismiss by Maskil</u>

Maskil's argument that each of the causes of action relating to it are barred by the
applicable statute of limitations, based on the deeding of the Brooklyn home on "June 22, 2001,"
lacks merit, in light of the record indicating that said transfer occurred on or about June 28, 2001.

Further, Maskil's argument that the conspiracy claim fails also lacks merit, for the
reasons stated above.  Additionally, contrary to Maskil's contentions, the allegations in the
complaint are sufficiently specific as to the parties involved, the nature and identity of the
allegedly fraudulent conveyed property, and the periods during which such transactions took
place.  The court will not dismiss the complaint on a pre-answer motion to dismiss and deprive
plaintiff of the opportunity to engage in discovery on the matter (*see Contractors Cas. and Sur.
Co. v. I.E.A. Elec. Group, Inc.*, 181 Misc 2d 469, 693 NYS2d 915 [Sup Ct New York County
1999]).

However, Maskil's request for dismissal of the punitive damages claims on the ground that they are unwarranted in this case, is granted, for the reasons noted above.

Conclusion

Based on the foregoing, it is hereby

ORDERED that the branch of the motion by the Lefkowitz defendants to dismiss the plaintiff's first, fifth, and sixth causes of action for failure to state a cause of action, and the first cause of action as time-barred, is denied; and it is further

ORDERED that the branch of the motion by the Lefkowitz defendants to dismiss the plaintiff's eighth cause of action for failure to state a cause of action is denied as moot; and it is further

ORDERED that the branch of the motion by the Lefkowitz defendants to dismiss the plaintiff's claims for punitive damages is granted, and such claims are dismissed; and it is further

ORDERED that the branch of the motion by the Lefkowitz defendants pursuant to CPLR 3024, to strike certain allegations in the complaint as scandalous and irrelevant material, is denied; and it is further

ORDERED that the branch of the motion by the Lefkowitz defendants to compel the plaintiff to amend its Complaint to assert a more definite statement of its claims is granted solely to the extent that within 20 days of service of this order with notice of entry, plaintiff shall identify the section of the Debtor and Creditor Law under which it seeks relief in the fifth cause of action; and it is further

ORDERED that the cross-motion by Maskil dismiss the complaint in its entirety as asserted against him, on the ground that the claims fail to state a cause of action and are barred by

20

the statute of limitations is denied, except that the punitive damages claims are dismissed; and it is further

ORDERED that plaintiff serve a copy of this order with notice of entry upon all parties within 20 days of entry.

This constitutes the decision and order of the Court.

Dated: May 11, 2009

Hon. Carol Robinson Edmead, J.S.C.

**HON. CAROL EDMEAD**

FILED

MAY 1 3 2009

COUNTY CLERK'S OFFICE
NEW YORK

# EXHIBIT "D"

SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY
PRESENT:     HON. MARYLIN G. DIAMOND       PART 48
*Justice*

---

CORE GROUP MARKETING LLC,

           Plaintiff,

       -against-

JACK LEFKOWITTZ, MASKIL EL DAL, INC. and
DAVID L. GALLO,

       Defendants.

---

INDEX NO. 114604/06

MOTION DATE

MOTION SEQ. NO. 001

MOTION CAL. NO.

*FILED*

*MAR 13 2007*

*COUNTY NEW YORK CLERK'S OFFICE*

---

Cross-Motion:    [X] Yes    [ ] No

**Upon the foregoing papers, it is ordered that:** This is an action to recover a brokerage commission of $50,000 which the plaintiff alleges it is entitled to from a transaction involving the assignment by defendants Maskil El Dal, Inc. and Jack Lefkowitz to defendant David E. Gallo of title to an apartment. The complaint asserts five causes of action. The first three causes of action are asserted against all three defendants and allege breach of contract, unjust enrichment and an account stated. The fourth and fifth causes of action are against only Maskil and Lefkowitz and allege fraudulent conveyance. Maskil and Lefkowitz have now moved to dismiss the first three causes of action as against Lefkowitz for failure to state a cause of action and the fourth and fifth causes of action for lack of particularity. The plaintiff has cross-moved for an order of attachment against Maskil and Lefkowitz.

       In moving to dismiss the first three causes of action as against Lefkowitz, the defendants argue that the contract of assignment was entered into by only Maskil and that, as a corporate officer, Lefkowitz may not be personally liable for the company's debts or breach of contract. In its opposition papers, plaintiff contends that this is an appropriate case for piercing the corporate veil. The doctrine of piercing the corporate veil is employed by a third party for the purpose of holding individuals or corporations liable for the conduct or contractual obligations of another corporation. As to individuals, courts will generally not pierce the corporate veil to reach a shareholder since the corporate form is a legitimate means of avoiding personal liability. *See Matter of Total Care Health Indus. v. Dept. of Social Servs.*, 144 AD2d 678 (2nd Dept 1988). However, where the plaintiff can establish that the owner exercised complete domination of the corporation with respect to the transaction in question and that this domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury, the corporate veil may be pierced. *See Matter of Morris v. New York State Dept. of Taxation and Fin.*, 82 NY2d 135, 141 (1993). Here, the plaintiff has alleged facts, both through its pleadings and through an affirmation in opposition, which satisfy the requisite elements for piercing Maskil's corporate veil. The defendants' motion to dismiss the first three causes of action as against Lefkowitz must therefore be denied.

       As to the fourth and fifth causes of action asserting fraudulent conveyances by Maskil and Lefkowitz, no facts are alleged in any detail, as required by CPLR 3016(b). *See Wildman & Berhardt Construction, Inc. v. BPM Assocs.*, 273 AD2d 38, 39 (2nd Dept 2000); *IDC(Queens) Corp. v. Illuminating Experiences, Inc.*, 220 AD2d 337 (1st Dept 1995). The allegations, which are made "on information and belief," are entirely conclusory. To be sure, the facts which the plaintiff needs to obtain in order to establish this cause of action may well be within the sole knowledge and possession of the defendants. Nevertheless, under CPLR 3211(d), the courts have held that a party opposing a motion to dismiss based on lack of personal jurisdiction and seeking discovery of facts which bear on the issue must come forward with some tangible evidence which would constitute a "sufficient start" in showing that jurisdiction could exist,

*Busch Entertainment Corp.*, 215 AD2d 455 (2nd Dept 1995). *See also Peterson v. Spartan Indus.*, 33 NY2d 463, 467 (1974); *SNS Bank, N.V. v. Citibank, N.A.*, 7 AD3d 352, 353-354 (1st Dept 2004). In this respect, neither the complaint itself nor the plaintiff's papers in opposition to the motion to dismiss provides any basis for believing that facts in support of the allegations likely exist. Indeed, there is nothing in the complaint to indicate that it is based on anything more than mere speculation that Maskil transferred the proceeds from the sale to Lefkowitz and did so without fair consideration. The fourth and fifth causes of action must therefore be dismissed.

As to plaintiff's cross-motion, CPLR 6201(3) provides that an order of attachment may be granted in any action for a money judgment when "the defendant, with the intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts." *See also Arzu v Arzu*, 190 AD2d 87, 91 (1st Dept 1993). On a motion for attachment, the plaintiff bears the burden of establishing that this ground for attachment is present. *See CPLR 6212(a); A & M Exports, Ltd. v. Meridien Int'l Bank, Ltd.*, 207 AD2d 741, 742 (1st Dept. 1994). The moving papers must contain evidentiary facts, as opposed to conclusions, proving the intent to defraud creditors by disposing of or secreting property, or removing it from the state. *See Benedict v. Browne*, 289 AD2d 433 (2nd Dept. 2001). The plaintiff has failed to make such a showing. It has not provided any evidence that Maskil and Lefkowitz have hidden any property or removed it from this state, or that they intend to do so. *See Rosenthal v. Rochester Button Co.*, 148 AD2d at 376. Since the cross-motion is based entirely on speculation, it must be denied.

Accordingly, the defendants' motion is granted to the extent that the first three causes of action are hereby dismissed as against Lefkowitz and the fourth and fifth causes of action are dismissed in their entirety. The motion is otherwise denied. The plaintiff's cross-motion for an order of attachment is denied.

The parties shall appear before the court in Room 412, 60 Centre Street, New York, New York on April 17, 2007 at 10:30 a.m. for a preliminary conference.

ENTER ORDER

**FILED**

MAR 13 2007

NEW YORK COUNTY CLERK'S OFFICE

Dated: 3/6/07

_____
**MARYLIN G. DIAMOND, J.S.C.**

**Check one: [ ] FINAL DISPOSITION   [X] NON-FINAL DISPOSITION**