# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

SIMCHE STEINBERGER, As Executor of
the last Will and Testament and Estate of
TIBOR STEINBERGER,

        Plaintiff,

    v.

JACK LEFKOWITZ, BLUMA
LEFKOWITZ, MASKIL EL-DAL, INC.,
CARE TO CARE MANAGEMENT, LLC,
MAIMONIDES MEDICAL SERVICES,
LLC, MEDSCAN MOBILE, and JOHN
DOES 1 THROUGH 10,

        Defendants.

Case No.  13 Civ. 5737 (SJ)

ECF Case

Oral Argument Requested

## DEFENDANTS JACK LEFKOWITZ, BLUMA LEFKOWITZ, MASKIL EL-DAL, INC., MAIMONIDES MEDICAL SERVICES, LLC, AND MEDSCAN MOBILE'S <u>MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS</u>

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
(212) 468-8000

*Attorneys for Defendants Jack Lefkowitz, Bluma Lefkowitz, Maskil El-Dal, Inc., Maimonides Medical Services, LLC, and Medscan Mobile*

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 3

    A.    Simche Steinberger's Allegations ................................................................ 3

    B.    Tibor Steinberger Agreed to Arbitrate These Claims ............................... 5

    C.    Simche Steinberger's Counsel Filed a Virtually Identical Lawsuit in this Court Purporting to Assert the Same Claims on Behalf of a Different Plaintiff ......................................................................................................... 6

ARGUMENT ..................................................................................................................... 7

I.      BECAUSE THESE CLAIMS WERE NOT A PART OF TIBOR STEINBERGER'S ESTATE, SIMCHE STEINBERGER LACKS STANDING TO ASSERT THEM .......................................................................................... 7

II.     THE COMPLAINT SHOULD BE DISMISSED BECAUSE TIBOR STEINBERGER'S CLAIMS ARE SUBJECT TO A BINDING ARBITRATION AGREEMENT ............................................................................................... 9

    A.    Tibor and Lefkowitz Agreed to Arbitrate Any Disputes Between Them ............. 9

    B.    The Arbitration Agreement Encompasses Simche's Claims ............................. 10

III.    THE COMPLAINT FAILS TO STATE A CLAIM ........................................ 12

    A.    The Complaint Fails to Comply with Rule 9(b)'s Particularity Requirement ..................................................................................................... 12

          1.    The Complaint Fails to Identify Any Misstatement ............................... 13

          2.    The Complaint Fails to Plead Fraudulent Intent ..................................... 16

    B.    The Complaint Fails to State a RICO Claim ..................................................... 17

          1.    Simche Steinberger Fails to Allege a RICO Enterprise ........................... 17

          2.    Simche Steinberger Fails to Allege a Pattern of Racketeering Activity ................................................................................................. 19

    C.    The Complaint Fails to State a Breach of Fiduciary Duty Claim ....................... 20

    D.    The Complaint Fails to State an Aiding and Abetting Claim ............................. 22

    E.    The Complaint Fails to State a Claim for Conversion ....................................... 23

    F.    Simche Steinberger's Remaining Claims Fail Because He Has Not Pleaded a Fraud or a Breach of Fiduciary Duty ................................................ 23

IV.    SIMCHE STEINBERGER SHOULD NOT BE GRANTED LEAVE TO AMEND HIS DEFICIENT COMPLAINT ..................................................... 24

CONCLUSION ................................................................................................................. 24

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Aguirre v. Best Care Agency, Inc.*,
  No. 10 Civ. 5914 (MKB), 2013 WL 4446925 (E.D.N.Y. Aug. 16, 2013) .............................16

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..................................................................................................2, 12

*Baldessarre v. Monroe–Woodbury Cent. School Dist.*,
  820 F. Supp. 2d 490 (S.D.N.Y. 2011)..................................................................................6

*Bank Julius Baer & Co. Ltd. v. Waxfield Ltd.*,
  424 F.3d 278 (2d Cir. 2005)...............................................................................................9

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).........................................................................................................12

*In re Black & Geddes, Inc.*,
  35 B.R. 830 (Bankr. S.D.N.Y. 1984) ...............................................................................21

*Buckeye Check Cashing, Inc. v. Cardegna*,
  546 U.S. 440 (2006)...........................................................................................................9

*Bullmore v. Ernst & Young Cayman Islands*,
  45 A.D.3d 461 (1st Dep't 2007) ......................................................................................22

*Burry v. Madison Park Owner LLC*,
  84 A.D.3d 699 (1st Dep't 2011) ......................................................................................21

*Carlucci v. Owens–Corning Fiberglas Corp.*,
  646 F. Supp. 1486 (E.D.N.Y. 1986) ................................................................................14

*Cintas Corp. v. Unite Here*,
  601 F. Supp. 2d 571 (S.D.N.Y. 2009)..............................................................................17

*Cofacredit S.A. v. Windsor Plumbing Supply Co.*,
  187 F.3d 229 (2d Cir. 1999).............................................................................................17

*Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*,
  58 F.3d 16 (2d Cir. 1995).................................................................................................10

*Davis v. Yeroushalmi*,
  No. 12 Civ. 4167 (NG) (RML), 2013 WL 6383009 (E.D.N.Y. Dec. 2, 2013)........................19

*DiVittorio v. Equidyne Extractive Indus., Inc.*,
  822 F.2d 1242 (2d Cir. 1987)...........................................................................................14

*Eaves v. Designs for Finance, Inc.*,
   785 F. Supp. 2d 229 (S.D.N.Y. 2011)......................................................................19

*Eurycleia Partners, LP v. Seward & Kissel, LLP*,
   910 N.E.2d 976 (N.Y. 2009)...............................................................................16

*Garmon v. Cty of Rockland*,
   No. 10 Civ. 7724 (ALC) (GWG), 2013 WL 541380 (S.D.N.Y. Feb. 11, 2013) .....................8

*Goel v. Ramachandran*,
   111 A.D.3d 783 (2d Dep't 2013) ....................................................................22, 23

*Gross v. Waywell*,
   628 F. Supp. 2d 475 (S.D.N.Y. 2009)...............................................................17, 21

*H.J. Inc. v. Nw. Bell Tel. Co.*,
   492 U.S. 229 (1989)........................................................................................19

*Hines v. Overstock.com, Inc.*,
   No. 09 Civ. 991 (SJ), 2013 WL 4495667 (E.D.N.Y. Aug. 19, 2013)...............................13

*Hitchcock v. Woodside Literary Agency*,
   15 F. Supp. 2d 246 (E.D.N.Y. 1998) .................................................................18

*Kershaw v. Nautica S.A. Ltd.*,
   885 F. Supp. 617 (S.D.N.Y. 1995) ...................................................................15

*In re Koreag, Controle et Revision S.A.*,
   961 F.2d 341 (2d Cir. 1992) ...........................................................................21

*Kottler v. Deutsche Bank AG*,
   607 F. Supp. 2d 447 (S.D.N.Y 2009)................................................................18

*Kramer v. Time Warner, Inc.*,
   937 F.2d 767 (2d Cir. 1991).............................................................................6

*L.C. v. LeFrak Organization, Inc.*,
   No. 13 Civ. 2759 (DLC), 2013 WL 6569868 (S.D.N.Y. Dec. 13, 2013) ...........................7

*Lawrence v. Kennedy*,
   95 A.D.3d 955 (2d Dep't 2012) .......................................................................23

*Lerner v. Fleet Bank, N.A.*,
   459 F.3d 273 (2d Cir. 2006)............................................................................16

*In re Lublin*,
   40 Misc3d 1208(A), 2013 WL 3467426 (N.Y. Sur. Ct. Jun. 26, 2013) ...........................23

*Luce v. Edelstein*,
    802 F.2d 49 (2d Cir. 1986)............................................................................14

*Makarova v. United States*,
    201 F.3d 110 (2d Cir. 2000)............................................................................8

*Maskaev v. Rappaport*,
    No. 12 Civ. 6008 (JG), 2013 WL 1966149 (E.D.N.Y. May 13, 2013) .................................12

*Mehler v. Terminix Int'l Co.*,
    205 F.3d 44 (2d Cir. 2000)............................................................................10

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young*,
    No. 91 Civ. 2923 (CSH), 1994 WL 88129 (S.D.N.Y. Mar. 15, 1994) ............................14, 15

*Miller v. Edward Jones & Co.*,
    355 F. Supp. 2d 629 (D. Conn. 2005) .................................................................22

*Montoya v. Cousins Chanos Casino, LLC*,
    34 Misc.3d 1211(A), 2012 WL 118475 (N.Y. Sup. Ct. Jan. 12, 2012)..................................11

*Morris v. Zimmer*,
    No. 10 Civ. 4146 (VB), 2011 WL 5533339 (S.D.N.Y. Nov. 10, 2011) .................................20

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983)......................................................................................9

*Moy v. Terranova*,
    No. 87 Civ. 1578 (SJ), 1999 WL 118773 (E.D.N.Y. Mar. 2, 1999)......................................18

*Nasik Breeding & Research Farm Ltd. v. Merck & Co.*,
    165 F. Supp. 2d 514 (S.D.N.Y. 2001)..................................................................17

*Old Republic Ins. Co. v. Hansa World Cargo Serv., Inc.*,
    170 F.R.D. 361 (S.D.N.Y. 1997) ......................................................................15

*Oster v. Kirschner*,
    77 A.D.3d 51 (1st Dep't 2010) ........................................................................22

*Palese v. Tanner Bolt & Nut, Inc.*,
    No. 12 Civ. 5853 (FB), 2013 WL 6321692 (E.D.N.Y. Dec. 5, 2013)....................................10

*Pelt v. City of N.Y.*,
    No. 11 Civ. 5633, 2013 WL 4647500 (E.D.N.Y. Aug. 28, 2013)........................................24

*Pension Ben. Guar. Corp. v. Morgan Stanley Inv. Mgmt., Inc.*,
    712 F.3d 705 (2d Cir. 2013)...........................................................................13

*Perry v. Thomas*,
      482 U.S. 483 (1987)...........................................................................................9

*Polansky v. Pfizer, Inc.*,
      No. 04 Civ. 0704 (ERK), 2009 WL 1456582 (E.D.N.Y. May 22, 2009)................................12

*Prichard v. 164 Ludlow Corp.*,
      14 Misc.3d 1202(A), 2006 WL 3626306 (N.Y. Sup. Ct. Dec. 12, 2006).............................11

*Raines v. Byrd*,
      521 U.S. 811 (1997)...........................................................................................7

*In re Refco Inc. Sec. Litig.*,
      826 F. Supp. 2d 478 (S.D.N.Y. 2011)................................................................21

*Robbins v. Oklahoma*,
      519 F.3d 1242 (10th Cir. 2008) ......................................................................15

*Rombach v. Chang*,
      355 F.3d 164 (2d Cir. 2004)...........................................................................12

*Rosenson v. Mordowitz*,
      No. 11 Civ. 6145 (JPO), 2012 WL 3631308 (S.D.N.Y. Aug 23, 2012)................................20

*Ross v. Bank of America, N.A. (USA)*,
      524 F.3d 217 (2d Cir. 2008).............................................................................7

*Schindler v. French*,
      232 Fed. App'x 17 (2d Cir. 2007)....................................................................24

*Schlaifer Nance & Co. v. Estate of Warhol*,
      119 F.3d 91 (2d Cir. 1997).............................................................................20

*Schmidt v. Fleet Bank*,
      No. 96 Civ. 5030 (AGS), 1998 WL 47827 (S.D.N.Y. Feb. 4, 1998) ...............................14, 19

*Shields v. Citytrust Bancorp, Inc.*,
      25 F.3d 1124 (2d Cir. 1994)...........................................................................16

*Shipping Fin. Servs. Corp. v. Drakos*,
      140 F.3d 129 (2d Cir. 1998)..............................................................................8

*Silverman Partners, L.P. v. First Bank*,
      687 F. Supp. 2d 269 (E.D.N.Y. 2010) .............................................................23

*Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*,
      198 F.3d 88 (2d Cir. 1999)...........................................................................10, 11

*Spool v. World Child Int'l Adoption Agency*,
   520 F.3d 178 (2d Cir. 2008)...............................................................19, 20

*Tate & Lyle Ingredients Ams., Inc. v. Whitefox Tech. USA, Inc.*,
   98 A.D.3d 401 (1st Dep't 2012) ..................................................................10

*Triple Z Postal Servs., Inc. v. United Parcel Servs., Inc.*,
   13 Misc.3d 1241(A), 2006 WL 3393259 (N.Y. Sup. Nov. 24, 2006) ....................................11

*United States v. Turkette*,
   452 U.S. 576 (1981).....................................................................................17

*Wexner v. First Manhattan Co.*,
   902 F.2d 169 (2d Cir. 1990)........................................................................13

*Whitman Realty Grp., Inc. v. Galano*,
   41 A.D.3d 590 (2d Dep't 2007) ................................................................23

## STATUTES & RULES

9 U.S.C. § 2 ...................................................................................................9

18 U.S.C. § 1961 .........................................................................................17

Fed. R. Civ. P. 8 .........................................................................................15

Fed. R. Civ. P. 9 ................................................................................... passim

Fed. R. Civ. P. 12 .........................................................................................6

## OTHER AUTHORITIES

Black's Law Dictionary (9th ed. 2009)........................................................6

## INTRODUCTION

This complaint is now the *third* time that a person purporting to stand in the late Tibor Steinberger's shoes has tried to assert claims arising out of an alleged investment Mr. Steinberger made in November 2007.[1]  In each of these three complaints, the plaintiff brought nearly identical claims, alleged nearly identical — albeit insufficient — facts, and was represented by the same counsel.  What has changed is the theory under which the plaintiffs assert standing to press Tibor Steinberger's claims.  They are now 0 for 3.

*First*, David Kretzmer filed a complaint against on May 24, 2013 the same defendants named here, purporting to act as "Assignee of the Attorneys-in-Fact of Tibor Steinberger" and seeking to "recover damages to be held by him in trust pursuant to [Tibor Steinberger's] Last Will and Testament."  In response, the defendants filed a pre-motion letter making the principal substantive arguments addressed below — that the claims here are subject to arbitration and the complaint fails to state a claim — and pointing out Kretzmer's failure to allege standing.

*Second*, Kretzmer filed an amended complaint on August 9, 2013, in an attempt to respond to the arguments made in the pre-motion letter referred to above.  This time, he sued "as Assignee of Tibor Steinberger."  Kretzmer attached to his complaint a copy of an assignment dated July 2, 2013 purportedly demonstrating that Tibor had assigned his claims to Kretzmer before he died.  The defendants again filed a pre-motion letter outlining the arguments that would be included in a motion to dismiss Kretzmer's amended complaint.  Kretzmer voluntarily dismissed his amended complaint on September 13, 2013.

---

[1] According to the complaint, Tibor Steinberger died on October 3, 2012.  (*See* Compl. ¶ 7.) Tibor's son, Simche Steinberger, purports to bring this action as executor of his father's estate. (*Id.* ¶ 1.)  In this memorandum, we refer to the late Mr. Steinberger as "Tibor" or "Tibor Steinberger" and to the plaintiff Simche Steinberger as "Simche" or "Simche Steinberger."

Finally, Tibor's son Simche Steinberger now seeks to assert the same claims, as executor of Tibor Steinberger's estate (notwithstanding Kretzmer's allegation — and documentary evidence — that Tibor had assigned these claims to someone else before his death).  Simche attaches to his complaint a UK probate court order appointing him executor of his father's estate.  That order says the gross value of Tibor's entire estate (including these claims if Tibor held them at his death) is £555,328.  In this case, Simche asserts that the claims that were probated to him are worth "not less than" $12 million.

Like its predecessors, the new complaint should be dismissed.

- *First*, the complaint appears to be centered on an alleged investment that Tibor is said to have made in a company called Maimonides Medical Services, LLC ("Maimonides Medical").[2]  Tibor Steinberger signed an LLC operating agreement relating to Maimonides Medical. In that operating agreement, the LLC members broadly agreed to arbitrate all disputes or disagreements between them related to Maimonides Medical, including with respect to Tibor's investment.  As a result, Simche Steinberger's claims as alleged are subject to arbitration.  *See infra* pp. 9-12.

- *Second*, Simche Steinberger's factual allegations do not comply with Rule 9(b)'s pleading requirements.  He fails to plead any factual particulars supporting his claims, as Rule 9(b) requires.  And he fails to plead any facts supporting a strong inference of fraudulent intent, as Rule 9(b) also requires.  Simche Steinberger's conclusory assertions of fraud or intentional misconduct do not suffice in the absence of these required specific factual allegations.  *See infra* pp. 12-17.

- *Third*, Simche Steinberger's RICO claims are an impermissible attempt to transform a run-of-the-mill common law claim into a racketeering enterprise.  Because Simche does not allege with particularity either a RICO enterprise or a pattern of predicate acts demonstrating a RICO violation, his RICO claims must be dismissed.  *See infra* pp. 17-21.

- *Fourth*, Simche Steinberger's breach of fiduciary duty claims fail because he has not pleaded facts suggesting that any defendant did anything wrong or owed Tibor a fiduciary duty.  *See infra* pp. 21-22.

---

[2] The complaint is almost entirely a work of fiction.  It misstates the real facts and omits to include a number of relevant facts.  The defendants do not admit any of the facts alleged in the complaint.  Indeed, they emphatically deny many of them.  For purposes of this motion directed at the complaints' legal sufficiency only, however, the defendants accept the truth of all properly-pleaded allegations.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

- *Fifth*, because Simche Steinberger fails to plead particular facts demonstrating underlying intentional misconduct by any of the defendants, his remaining claims must be dismissed, as well.  *See infra* pp. 22-24.

For these reasons, the Court should dismiss Simche Steinberger's complaint with prejudice.

## BACKGROUND

### A.    Simche Steinberger's Allegations

According to the complaint, Tibor Steinberger and Jack Lefkowitz were old friends and members of the same "exceptionally close-knit religious community."  (Compl. ¶ 3.)  Over the years, they had developed a relationship of "unreserved, unconditional trust."  (*Id.*)  And, according to the complaint, sometime in November 2007, a company called "178 Franklin Holding Corp." ("178 Franklin") sold a property in Brooklyn for about $3,590,000.  (*Id.* ¶ 30.)  According to the complaint, Tibor was 178 Franklin's "sole stockholder and beneficial owner."  (*Id.*)  But the complaint does not say how Tibor became entitled to the proceeds of 178 Franklin's real estate transaction or allege that his estate has any current interest in 178 Franklin.

At Tibor's direction, 178 Franklin's attorney, Bernard Schafran, retained the proceeds from 178 Franklin's real estate transaction in a client escrow account.  (*Id.*)  "[S]ometime" later, Jack Lefkowitz allegedly "proposed" that Tibor invest in Care to Care Management LLC ("Care to Care"), Maimonides Medical, and Medscan Mobile, three companies that Mr. Lefkowitz allegedly controlled.  (*Id.* ¶¶ 31, 35, 37, 39.)

"Pending discussion," Tibor allegedly directed that his money be transferred to Maskil-El Dal, Inc. ("Maskil"), another company Mr. Lefkowitz (and his wife Bluma Lefkowitz) allegedly controlled.  (*Id.* ¶ 32.)  On November 11, 2007, Maskil wrote Tibor a letter, saying that "all monies transferred in to our account as per instruction of Mr. Tibor Steinberger sh[a]ll be held in trust for your benefit.  Upon written request from yourself monies will be released to you promptly as per your instruction and direction."  (*Id.* ¶ 34; Ex. B.)  The letter also disclosed that

"Maskil El-Dal may commingle the Steinberger funds in its account without any further liability to Mr. Steinberger."  (*Id.* Ex. B.)  Lefkowitz signed the letter "JACK LEFKOWITZ Trustee." (*Id.* ¶ 34; Ex. B.)  The Complaint does not allege that any "monies" were in fact "transferred" to Maskil['s] … account."  Instead, it is alleged that attorney Schafran wired the money into four other bank accounts that the Complaint alleges Mr. and Mrs. Lefkowitz controlled.  (*Id.* ¶ 42.) The Complaint also alleges, that at some point, "the Defendants . . . represented to [Tibor] that the Defendants had transferred his monies into" Care to Care, Medscan Mobile, and Maimonides Medical.  (*Id.* ¶¶ 35, 36, 37, 39.)

Next, according to the complaint, Tibor's "agent fortuitously discovered that the funds were neither held in trust nor reinvested as had been represented."  (*Id.* ¶ 46.)  Simche does not say who supposedly "discovered" this or how.  After "having been apprised of his agent's findings, steps were taken by [Tibor] to have [Lefkowitz] return his monies."  (*Id.* ¶ 47.) Specifically, Tibor allegedly enlisted his son-in-law, Chaim Saks, and "various rabbis" to "settle any differences between the parties."  (*Id.*)

Mr. Saks and the various rabbis allegedly engaged in "extended efforts . . . including numerous telephone conversations" to "amicably settle the differences between" Tibor and Mr. Lefkowitz.  (*Id.* ¶ 48.)  Those "efforts" are ***not*** alleged to have included (1) any written instruction from Tibor requesting that his funds be returned; (2) any direct communications at all between Tibor and his trusted old friend Lefkowitz; or (3) any request of any kind to return the money.  According to the complaint, after Tibor died, Tibor's son Simche filed the complaint in this action.  (*Id.* ¶ 50.)

Based on those allegations, Simche Steinberger asserts claims for (1) fraud, (2) fraud in the inducement, (3) aiding and abetting fraud, (4) breach of fiduciary duty, (5) aiding and

abetting breach of fiduciary duty, (6) imposition of an equitable lien and a constructive trust, (7) conversion, (8) unjust enrichment, (9) an accounting, (10) civil RICO violation, (11) RICO conspiracy, and (12) appointment of a receiver, against Mr. and Mrs. Lefkowitz, Maskil, Care to Care, Maimonides Medical, Medscan Mobile, and "John Does" 1 through 10 seeking to recover of at least $12 million.

According to his complaint, Simche brings this $12 million lawsuit in his capacity as executor of Tibor's estate under an appointment order from a UK probate court. (Compl. ¶ 1.) But, according to that appointment order, the "gross value" of Tibor's estate was only £555,328 — approximately $915,000. (Compl. Ex. A.)

### B.    Tibor Steinberger Agreed to Arbitrate These Claims

On November 1, 2007 — the same month that Simche Steinberger says his father agreed to invest in Maimonides Medical and transferred $3.5 million of 178 Franklin Holding Corp.'s money to Jack Lefkowitz — Tibor executed an LLC operating agreement "to form a limited liability company known as Maimonides Medical Services, LLC," which provided that Tibor Steinberger would invest $3.1 million in Maimonides Medical. (*See* Beha Dec., Ex. A.)[3] Under the agreement, Maimonides Medical's members were Supreme Equity, LLC and Barcley Dwyer Co Inc. (*Id.* at 28.) Tibor signed the agreement as "authorized agent" for Supreme Equity, LLC. (*Id.* at 27.)

In the operating agreement, Tibor agreed that "All internal membership or its agents disputes or disagreements arising out of or in connection of this operating agreement in amounts of One Hundred Thousand dollars and above sh[a]ll be arbitrated and finally settled under the rules of the religious Beth-Din of Mechon L'Hoyrioa of Monsey, New York, in accordance of

---

[3] References to "Beha Dec., Ex. __" are to the exhibits to the accompanying Declaration of James J. Beha II, dated January 31, 2014.

said Beth-Din."  (*Id.* at 11.10.)  A "Beth-Din" is a Jewish rabbinical tribunal.  *See* Black's Law Dictionary (9th ed. 2009).

    **C.**    **Simche Steinberger's Counsel Filed a Virtually Identical Lawsuit in this Court Purporting to Assert the Same Claims on Behalf of a Different Plaintiff**

    Simche Steinberger notably fails to disclose in his complaint that another plaintiff, David Kretzmer "as Assignee of the Attorneys-in-Fact of Tibor Steinberger," represented by the same attorney representing Simche here, filed an earlier complaint in this court "as assignee" of Tibor's "attorneys-in-fact," seeking to assert the same claims Simche asserts here.[4]  *See* Complaint, *Kretzmer v. Lefkowitz*, 13 Civ. 3060 (ENV) (E.D.N.Y. filed May 24, 2013) (Dkt. No. 1).  The defendants filed a pre-motion letter in that case, seeking leave to file a motion to dismiss and raising many of the same argument raised below.  *See* Defs.' Pre-Motion Ltr., *Kretzmer v. Lefkowitz*, 13 Civ. 3060 (ENV) (E.D.N.Y. filed Jun. 23, 2013) (Dkt. No. 13) (Beha Dec., Ex. B.) In response, Kretzmer filed an amended complaint, repeating virtually the same substantive allegations found in his initial complaint and in the complaint here, but providing additional allegations purportedly supporting Kretzmer's standing.  *See* Amended Complaint, *Kretzmer v. Lefkowitz*, 13 Civ. 3060 (ENV) (E.D.N.Y. filed Aug. 9, 2013) (Dkt. No. 20).

    In his amended complaint in that action, Mr. Kretzmer alleged that, before Tibor died, he appointed Kretzmer, Saks, and Barry Klein as his agents under a power of attorney.  (*Kretzmer* Am. Compl. ¶ 7.)  And Kretzmer alleged that, under the appointment, Saks and Klein assigned to Kretzmer any claims that Tibor had against any of the defendants here "in connection with a

---

[4] "[C]ourts routinely take judicial notice of documents filed in other courts, . . . not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings."  *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991).  Moreover, as discussed below, the prior litigation demonstrates that Simche Steinberger lacks standing here. The Court may consider matters outside the pleadings on a motion to dismiss for lack of standing under Rule 12(b)(1).  *See Baldessarre v. Monroe–Woodbury Cent. School Dist.*, 820 F. Supp. 2d 490, 494 n. 2 (S.D.N.Y. 2011).

certain scheme to defraud him through a sham investment scheme by which he was defrauded of the approximate sum of $3,590,000." (*Kretzmer* Am. Compl. ¶ 8.)  As a result of the alleged assignment, according to Kretzmer, "all rights of recovery . . . had vested permanently in the Plaintiff [*i.e.* Kretzmer] who then — by operation of law — became the legal owner of all claims against the Defendants during TIBOR STEINBERGER'S lifetime." (*Kretzmer* Am. Compl. ¶ 12.)  Kretzmer also alleged he was "the true, legal owner of all claims asserted against all Defendants." (*Kretzmer* Am. Compl. ¶ 13.)  Kretzmer attached the purported assignment as Exhibit B to his amended complaint.  (*See Kretzmer* Am. Compl. Ex. B; Beha Dec., Ex. C.)

The defendants filed another pre-motion letter seeking to file a motion to dismiss Kretzmer's amended complaint.  (Beha Dec. Ex. D.)  Again, the defendants' pre-motion letter raised many of the same arguments for dismissal presented in this motion.  In response, Kretzmer withdrew his amended complaint and voluntarily dismissed his action on August 27, 2013.

## ARGUMENT

### I.  BECAUSE THESE CLAIMS WERE NOT A PART OF TIBOR STEINBERGER'S ESTATE, SIMCHE STEINBERGER LACKS STANDING TO ASSERT THEM

At the threshold, the Court "has a jurisdictional obligation to address whether each plaintiff has Article III standing to bring [the] action." *L.C. v. LeFrak Organization, Inc.*, No. 13 Civ. 2759 (DLC), 2013 WL 6569868, at *2 (S.D.N.Y. Dec. 13, 2013).  The Article III standing inquiry "focuses on whether the plaintiff is the proper party to bring [the] suit." *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (citation omitted).  And "[t]he burden rests on the party asserting jurisdiction to clearly allege facts demonstrating standing." *Ross v. Bank of America, N.A. (USA)*, 524 F.3d 217, 222 (2d Cir. 2008).  Moreover, a determination of subject matter jurisdiction — including Article III standing — "is not made by drawing from the pleadings

inferences favorable to the party asserting it." *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d

129, 131 (2d Cir. 1998). Rather, the plaintiff must prove subject matter jurisdiction by a

preponderance of the evidence. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

Simche Steinberger cannot do so here.

 *First,* Simche is suing for monies allegedly held in trust for 178 Franklin Holding Corp.

by its attorney, Bernard Schafran of Frenkel, Hershkowitz & Shafran LLP. (Compl. ¶ 30.) The

complaint nowhere alleges how that corporate asset was transferred from 178 Franklin to Tibor.

Thus, Simche has no standing to assert the claim (if there is any claim) held by 178 Franklin.

 *Second*, Simche claims to be suing as executor for his father's estate. An estate's

executor has "the right to . . . pursue claims available to the decedent." *Garmon v. Cty of

Rockland*, No. 10 Civ. 7724 (ALC) (GWG), 2013 WL 541380, at *4 (S.D.N.Y. Feb. 11, 2013)

(citing N.Y. Estate Powers and Trust § 11-3.1). But, even if Tibor held these claims at some

point, the allegations in this complaint and the earlier *Kretzmer* complaints show that he did not

hold them when he died. Kretzmer — represented by the same attorney representing Simche

here — submitted to the Court documentary evidence that Tibor assigned these claims to

Kretzmer before his death. (*See Kretzmer* Am. Compl. ¶¶ 8, 12, 13.) Moreover, the order

appointing Simche as executor for his father's estate shows that the estate's "gross value" —

approximately $915,000 — is less than 1/3 of the amount that Simche alleges Tibor transferred

to the defendants and less than 10% of the amount that Simche seeks to recover through this

action. As a result, it is clear that neither the money allegedly transferred nor these claims ever

were part of Tibor's estate. At the very least, Simche has failed to carry his burden to allege

jurisdictional facts.

II.   **THE COMPLAINT SHOULD BE DISMISSED BECAUSE TIBOR STEINBERGER'S CLAIMS ARE SUBJECT TO A BINDING ARBITRATION AGREEMENT**

Section 2 of the FAA mandates that binding arbitration agreements in contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  The Supreme Court has explained that "Section 2 [of the FAA] embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006).  The FAA promotes a "liberal federal policy favoring arbitration agreements," and "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).  In short, arbitration agreements falling within the scope of the FAA "must be 'rigorously enforce[d].'" *Perry v. Thomas*, 482 U.S. 483, 490-91 (1987) (citations omitted).

When deciding if a dispute is arbitrable, the Court "must answer two questions: (1) 'whether the parties agreed to arbitrate,' and, if so, (2) 'whether the scope of [that] agreement encompasses the claims' at issue." *Bank Julius Baer & Co. Ltd. v. Waxfield Ltd.*, 424 F.3d 278, 281 (2d Cir. 2005) (quoting *Campaniello Imports, Ltd. v. Saporiti Italia S.p.A.*, 117 F.3d 655, 666 (2d Cir. 1997)).  In this case, the answer to both of those questions is "yes."

A.   **Tibor and Lefkowitz Agreed to Arbitrate Any Disputes Between Them**

The complaint appears to be premised on an alleged investment that Tibor was seeking to make in, among other companies, Maimonides Medical.[5]  Maimonides Medical's operating

---

[5] Again, this motion accepts the allegations as pleaded, though they are, in fact, riddled with inaccuracies and material omissions.

agreement expressly provides that all disputes arising under the operating agreement "sh[a]ll be arbitrated."[6]  There thus can be no doubt that a relevant arbitration agreement exists.

### B.    The Arbitration Agreement Encompasses Simche's Claims

When determining whether a dispute is within the scope of an arbitration clause, the Court "should decide at the outset whether the arbitration agreement is broad or narrow." *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 23 (2d Cir. 1995).  The clause here — applying to "[a]ll . . . disputes or disagreement arising out of or in connection" to the operating agreement (Beha Dec., Ex. A at § 11.10) — is similar to language the Second Circuit has called "classically broad."  *Mehler v. Terminix Int'l Co.*, 205 F.3d 44, 49 (2d Cir. 2000) (agreement to arbitrate "any controversy or claim . . . arising out of or relating to" the agreement was "classically broad"); *see also Palese v. Tanner Bolt & Nut, Inc.*, No. 12 Civ. 5853 (FB), 2013 WL 6321692, at *3 (E.D.N.Y. Dec. 5, 2013) (applying presumption of arbitrability because an arbitration clause applying to "all claims" was "classically broad").

Because the clause here is broad, "there is a presumption that the claims are arbitrable." *Collins*, 58 F.3d at 20.  Indeed, because the clause is broad, "the court **must compel arbitration** unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."  *Mehler*, 205 F.3d at 49 (emphasis added).

---

[6] While Tibor and Lefkowitz signed the Agreement as "authorized agents" to the parties to the agreement, "non-signatories to an arbitration agreement may nevertheless be bound according to ordinary principles of . . . agency."  *Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 97 (2d Cir. 1999) (internal citation and quotation mark omitted).  Under New York law, a contractual forum provision, such as an arbitration provision, will be applied against a nonparty if enforcement is "foreseeable by virtue of the relationship between the nonparty and the party."  *Tate & Lyle Ingredients Ams., Inc. v. Whitefox Tech. USA, Inc.*, 98 A.D.3d 401, 402 (1st Dep't 2012) (internal citation and quotation mark omitted).  Tibor signed the Agreement as the "authorized agent" for Supreme Equity LLC and the arbitration clause expressly applied to Supreme Equity and "its agents."  (Beha Dec. Ex. A at § 11.10.)  It was, therefore, foreseeable that Tibor would be bound by the arbitration clause.

Moreover, under New York law, tort claims — like Simche's claims here — are frequently found to "arise from" an underlying contract.  *See Triple Z Postal Servs., Inc. v. United Parcel Servs., Inc.*, 13 Misc.3d 1241(A), 2006 WL 3393259, at *7-8 (N.Y. Sup. Nov. 24, 2006)) (tort and statutory claims arose from contract).  In determining whether claims arise from a contract, the Court should "focus on the factual allegations in the complaint rather than the legal causes of action asserted.  If the allegations underlying the claims 'touch matters' covered by the parties' . . . agreements, then those claims [arise under the agreement], whatever the legal labels attached to them."  *Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 99 (2d Cir. 1999) (quotation omitted).

Based on the complaint's factual allegations, Simche Steinberger's claims "touch matters" covered by the operating agreement.  The operating agreement governs Tibor's contemplated investment in Maimonides Medical.  Maimonides Medical is a defendant in this case and Simche's claims — such as they are — are alleged to arise from Tibor's supposed decision to invest in Maimonides Medical and two other businesses Lefkowitz  allegedly controlled.  (*See, e.g.,* Compl. ¶¶ 31, 37-38.)  Among other things, Simche asserts that Lefkowitz fraudulently induced his father to agree to invest in Maimonides.  (*See* Compl. ¶¶ 66-72.)  New York courts have frequently held that such claims arise from the contract.  *See Montoya v. Cousins Chanos Casino, LLC*, 34 Misc.3d 1211(A), 2012 WL 118475 (N.Y. Sup. Ct. Jan. 12, 2012); *Prichard v. 164 Ludlow Corp.*, 14 Misc.3d 1202(A), 2006 WL 3626306, at *7 (N.Y. Sup. Ct. Dec. 12, 2006) (claims for "fraud collateral to a contract, fraudulent inducement of credit, or promissory estoppel . . . arose in connection with the Agreement").

11

Where, as here, all of the claims in an action are subject to arbitration, the court should

dismiss the action.  *See Maskaev v. Rappaport*, No. 12 Civ. 6008 (JG), 2013 WL 1966149, at \*2

(E.D.N.Y. May 13, 2013).

## III.   THE COMPLAINT FAILS TO STATE A CLAIM

### A.   The Complaint Fails to Comply with Rule 9(b)'s Particularity Requirement

To survive a motion to dismiss, the complaint must plead "enough facts to state a claim

to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"Although for the purpose of a motion to dismiss," the Court "must take all of the factual

allegations in the complaint as true, [it is] 'not bound to accept as true a legal conclusion couched

as a factual allegation.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550

U.S. at 555).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further

factual enhancement.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

In addition, because he asserts fraud claims, Simche Steinberger's complaint must meet

Rule 9(b)'s heightened pleading requirement, requiring that any fraud be pled with particularity.

*See* Fed. R. Civ. P. 9(b); *see also Rombach v. Chang*, 355 F.3d 164, 170–71 (2d Cir. 2004) (Rule

9(b) applies to any claims that "sounds in fraud").

Rather than plead specific facts "set[ting] forth the ***who, what, when, where and how*** of

the alleged fraud," Simche Steinberger just states legal conclusions masquerading as factual

allegations.  *Polansky v. Pfizer, Inc.*, No. 04 Civ. 0704 (ERK), 2009 WL 1456582, at \*4

(E.D.N.Y. May 22, 2009) (citation and internal quotation marks omitted, emphasis added).  So,

for example, the complaint baldly asserts that the defendants "stole," "embezzled," "purloined,"

"misappropriated," or "illegally diverted" Tibor's money.  (*See, e.g.,* Compl. ¶¶ 2, 5, 16, 26, 58,

86, 122.)  It makes these allegations repeatedly—indeed, the complaint uses the word "fraud"

and its variants at least sixty-five times.  But such "unadorned, the-defendant-unlawfully-

12

harmed-me accusation[s]" are not sufficient. *Pension Ben. Guar. Corp. v. Morgan Stanley Inv. Mgmt., Inc.*, 712 F.3d 705, 717 (2d Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). Rather, Simche Steinberger must "adduce specific facts supporting a strong inference of fraud." *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990). Because he has failed to do so, his complaint must be dismissed.

### 1. The Complaint Fails to Identify Any Misstatement

"In order to satisfy Rule 9(b), the plaintiff must: '(1) specify the statement that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Hines v. Overstock.com, Inc.*, No. 09 Civ. 991 (SJ), 2013 WL 4495667, at *2 (E.D.N.Y. Aug. 19, 2013) (quoting *Rombach v. Chang*, 355 F.3d at 170). Simche Steinberger's complaint does not identify any alleged misstatement — certainly none with the particularity Rule 9(b) requires. Indeed, the *only* statements of any kind that Simche identifies with particularity are in Maskil's alleged letter to Tibor on November 11, 2007. (*See* Compl. ¶ 34.) In that letter, Lefkowitz allegedly told Tibor that he would hold in trust any funds that Tibor transferred to Maskil and "[u]pon written request from yourself moneys will be released to you promptly as per your instructions and directions." (*Id.*) But Simche does not explain why that statement was false.

Simche does not allege either (1) that Lefkowitz failed to hold the funds for Tibor Steinberger as promised or (2) ever refused to return the funds upon a written request to release them. In fact, the complaint itself alleges extremely clearly that Tibor did not deposit *any* money at all in Maskil's account. While Simche Steinberger asserts that Lefkowitz "refus[ed] to return the [funds] after due demand [had] been made" (Compl. ¶ 106), he studiously avoids alleging any actual *facts* supporting this assertion. He certainly does not allege that Maskil was involved in any "due demand" or that it was in writing. Rather, Simche just alleges that Tibor "requested

that his son-in-law take steps to amicably settle the matter" and that the son-in-law "extended efforts" — including "numerous telephone conversations" with Lefkowitz and a Rabbi acting as an intermediary — to "amicably settle the differences between" Tibor and Lefkowitz.  (Compl. ¶¶ 48-49.)  These vague allegations are not sufficient to support a fraud claim.

In addition, Simche repeatedly alleges that "the Defendants" made various, unspecified false representations.  (*See, e.g.,* Compl. ¶¶ 35-40.)  Because those allegations impermissibly fail to "specify the time, place, speaker, and . . . content of the alleged misrepresentations, [they] lack the 'particulars' required by Rule 9(b)."  *Luce v. Edelstein*, 802 F.2d 49, 54 (2d Cir. 1986).

*First*, other than the insufficient allegation about Maskil's letter, the complaint "fail[s] to . . . provide any specifics as to the time or place at which the supposed misrepresentations were made."  *Carlucci v. Owens–Corning Fiberglas Corp.*, 646 F. Supp. 1486, 1490 (E.D.N.Y. 1986) (dismissing fraud complaint under Rule 9(b)).

*Second*, the complaint fails to "connect[ ] particular representations to particular defendants."  *Luce*, 802 F.2d at 54.  "In cases with multiple defendants," however, "Rule 9(b) requires that the complaint allege facts that specify each defendant's connection to the fraud." *Schmidt v. Fleet Bank*, No. 96 Civ. 5030 (AGS), 1998 WL 47827, at *5 (S.D.N.Y. Feb. 4, 1998); *see also DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987) ("[w]here multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud").  Simche Steinberger's "impermissible failure to distinguish between . . . Defendants" fails to comply with Rule 9(b) and "mandates dismissal."  *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young*, No. 91 Civ. 2923 (CSH), 1994 WL 88129, at *20 (S.D.N.Y. Mar. 15, 1994).  Indeed, such collective-style pleading does not even satisfy Rule 8(a)'s more liberal notice pleading standard.  *See Old*

*Republic Ins. Co. v. Hansa World Cargo Serv., Inc.*, 170 F.R.D. 361, 375 (S.D.N.Y. 1997) (dismissing claim under Rule 8 because the plaintiff "merely assert[ed] that an undifferentiated group of 'defendants' conspired to defraud [the plaintiff]"); *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) (Rule 8 is not satisfied where a complaint merely uses either "the collective term 'Defendants' or a list of the defendants named individually but with no distinction as to what acts are attributable to whom . . . .").

In particular, the complaint's group pleading fails to provide Bluma Lefkowitz, Care to Care, Maskil, Maimonides Medical, or Medscan Mobile — against whom not a single specific factual allegation is made — with notice of the claims against them. As the court explained in *Merrill Lynch*, "[t]he vice of group pleading in fraud cases is that no single defendant is sufficiently advised of which fraudulent act he is alleged to have committed, where, when, by what means and its specific form and content." *Merrill Lynch*, 1994 WL 88129, at *20.

*Third*, Simche makes numerous allegations "upon information and belief," including his conclusory allegations that Maskil, Care to Care, Maimonides Medical, and Medscan Mobile were "used for the specific purpose of deceiving and defrauding the Plaintiff in order to obtain his monies." (Compl. ¶¶ 21, 23-25.) But Rule 9(b) pleadings "cannot be based on 'information and belief.'" *Kershaw v. Nautica S.A. Ltd.*, 885 F. Supp. 617, 620 (S.D.N.Y. 1995) (citing *Segal v. Gordon*, 467 F.2d 602, 608 (2d Cir. 1972)). While the rule may be relaxed for facts distinctly in the adverse parties' control, even then, "each allegation made on information and belief must include . . . the source of the information and the reasons upon which the belief is founded." *Kershaw*, 885 F. Supp. at 621 (internal quotation and citation omitted). Because Simche Steinberger fails to identify the basis for his belief, the Court should disregard Simche

15

Steinberger's allegations made "upon information and belief."  (*See* Compl. ¶¶ 9, 10, 19, 20, 21, 23-25.)

### 2.  The Complaint Fails to Plead Fraudulent Intent

Simche Steinberger also fails to allege that the defendants (or any one of them) acted with fraudulent intent, as he must to state a fraud claim under New York law.  *See Eurycleia Partners, LP v. Seward & Kissel, LLP*, 910 N.E.2d 976, 979 (N.Y. 2009).  While Rule 9(b)'s particularity requirement does not apply to allegations about the defendants' state of mind, the Second Circuit has cautioned that courts "must not mistake the relaxation of Rule 9(b)'s specificity requirement regarding condition of mind for a license to base claims of fraud on speculation and conclusory allegations."  *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006).  Rather, plaintiffs must still allege facts that "give rise to a strong inference of fraudulent intent."  *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994).

To plead fraudulent intent, "the plaintiff must allege either: (1) facts which demonstrate that the defendant had both the motive and a clear opportunity to commit the fraud, or (2) facts which show strong circumstantial evidence of conscious behavior or recklessness by the defendants."  *Aguirre v. Best Care Agency, Inc.*, No. 10 Civ. 5914 (MKB), 2013 WL 4446925, at *17 (E.D.N.Y. Aug. 16, 2013) (quoting *Alnwick v. European Micro Holdings, Inc.*, 281 F. Supp. 2d 629, 641 (E.D.N.Y. 2003) (alteration in original).  Once again, Simche Steinberger's complaint includes frequent conclusory allegations about knowledge or intent.  (*See, e.g.,* Compl ¶ 68 ("Defendants' statements were knowingly reckless"); 70 ("The actions of the Defendants were intentional"); 76 ("all Defendants knowingly participated"); 79 ("the Defendants made untruthful representations to Plaintiff's Decedent that were knowingly false").)  But the complaint does not allege any actual facts suggesting fraudulent intent.

### B.      The Complaint Fails to State a RICO Claim

To state a civil RICO claim, Simche Steinberger must allege: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Cintas Corp. v. Unite Here,* 601 F. Supp. 2d 571, 577 (S.D.N.Y. 2009) (citing *Sedima S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). "Mere common-law fraud does not constitute racketeering activity for RICO purposes." *Cofacredit S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir. 1999).  Simche Steinberger's RICO claims are nothing more than an improper attempt to "transform [a] garden-variety common law action[ ] into [a] federal case" and, therefore, should be dismissed.  *Gross v. Waywell*, 628 F. Supp. 2d 475, 493 (S.D.N.Y. 2009).

### 1.      Simche Steinberger Fails to Allege a RICO Enterprise

A RICO "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).  As the Supreme Court has explained, "[t]he 'enterprise' is not the 'pattern of racketeering activity'; it is an entity separate and apart from the pattern of activity in which it engages. The existence of an enterprise at all times remains a separate element which must be proved." *United States v. Turkette*, 452 U.S. 576, 583 (1981).

Simche alleges that the Defendants "were members of an illegal 'enterprise' specifically formed for the purpose of committing a theft of the subject monies from the Plaintiff's Decedent." (Compl. ¶ 127.)  Once again, these conclusory allegations will not suffice.  Simche was required to plead actual facts establishing the enterprise, such as "specific details of any hierarchy, organization, or unity among the various alleged conspirators." *Nasik Breeding & Research Farm Ltd. v. Merck & Co.*, 165 F. Supp. 2d 514, 539 (S.D.N.Y. 2001).  The complaint here is devoid of any specific facts about any hierarchy, organization, or unity among the defendants.

Nor are Simche's repeated and conclusory allegations that Lefkowitz "controlled," "utilized," or "used" various other defendants sufficient to allege an enterprise. (*See, e.g.,* Compl. ¶¶ 23-25, 33, 37, 39, 133.) These are labels and conclusions — not well-pleaded factual allegations — and they do not "suggest[ ] that the constituent members of the alleged enterprise functioned as a unit." *Eaves v. Designs for Finance, Inc.*, 785 F. Supp. 2d 229, 263 (S.D.N.Y. 2011). Moreover, even if they had been well-pleaded, these allegations simply demonstrate that there is no enterprise here because Maskil, Care to Care, Maimonides, and Medscan are not alleged to be "distinct" from Lefkowitz. *See Moy v. Terranova*, No. 87 Civ. 1578 (SJ), 1999 WL 118773, at *5 (E.D.N.Y. Mar. 2, 1999). As this Court explained in *Terranova*, "since a corporation only functions through its employees and agents, 'this distinctiveness requirement may not be circumvented by alleging a conspiracy between the defendant [corporation] and its own employees or agents carrying on the regular affairs of the defendant.'" *Id* at *3. (quoting *China Trust Bank of New York v. Standard Chartered Bank, PLC*, 981 F. Supp. 282, 286 (S.D.N.Y. 1997); *see also Hitchcock v. Woodside Literary Agency*, 15 F. Supp. 2d 246, 250 (E.D.N.Y. 1998) (corporation and its owner-operators could not form enterprise).

Finally, Simche's allegation that the enterprise was formed for the purpose of defrauding Tibor Steinberger makes clear that Simche fails to allege an "entity separate and apart" from the alleged fraud. Courts consistently dismiss civil RICO claims where the plaintiff conflates the enterprise and the alleged pattern of activity. For example, in *Kottler v. Deutsche Bank AG*, the plaintiff asserted civil RICO claims based on the defendants' alleged sales of illegal tax shelters. 607 F. Supp. 2d 447, 459 (S.D.N.Y. 2009). The plaintiff attempted to establish the RICO enterprise based on an allegation that the defendants "entered into a formal operating agreement with respect to the sale and promotion of unlawful tax shelters." *Id.* The court dismissed the

RICO claim because "[t]he enterprise and the pattern in this case are one and the same; Defendants and co-conspirators joined forces for the purpose of creating these allegedly fraudulent tax shelters." *Id.* Simche's allegations compel the same result.

### 2. Simche Steinberger Fails to Allege a Pattern of Racketeering Activity

To state a civil RICO claim, Simche Steinberger must also plead facts amounting to "a pattern of racketeering activity." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008) (quoting 18 U.S.C. § 1962). And, to do so, Simche must allege two or more related predicate acts of racketeering that "amount to, or . . . otherwise constitute a threat of, continuing racketeering activity." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240 (1989). Rule 9(b)'s particularity requirement applies to RICO predicate acts sounding in fraud. *See Davis v. Yeroushalmi*, No. 12 Civ. 4167 (NG) (RML), 2013 WL 6383009, at *7 (E.D.N.Y. Dec. 2, 2013). Indeed, "Rule 9(b)'s particularity requirements have 'even greater urgency' in civil RICO actions." *Schmidt*, 1998 WL 47827, at *5 (quoting *Morin v. Trupin*, 778 F. Supp. 711, 716 (S.D.N.Y. 1991)).

Thus, for each alleged predicate act, Simche Steinberger must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent" and "must also allege facts that give rise to a *strong* inference of fraudulent intent." *Id.* (internal quotes omitted; emphasis in original). The Second Circuit has directed district courts to "take care to ensure that the plaintiff is not artificially fragmenting a singular act into multiple acts simply to invoke RICO." *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 98 (2d Cir. 1997).

According to the complaint, the two predicate racketeering acts were (1) allegedly transferring Tibor's money into Mr. and Mrs. Lefkowitz's offshore bank accounts and (2) "further use of the mails and telephone on various dates in contacting the Decedent as well as the

various banks," both of which Simche characterizes as federal wire frauds.  (Compl. ¶ 128.)  As discussed above, these supposedly fraudulent acts are not alleged adequately under Rule 9(b).  *See supra* pp. 12-17.  In particular, a vague reference to "use of the mails and telephone on various dates" cannot possible plead misconduct under 9(b).

More fundamentally, however, these acts hardly constitute the "complex, multifaceted conspiracy" required to plead a RICO violation.  *Spool*, 520 F.3d at 184.  Rather, the acts "all flow from [the] main [alleged] fraud."  *Morris v. Zimmer*, No. 10 Civ. 4146 (VB), 2011 WL 5533339, at *11 (S.D.N.Y. Nov. 10, 2011).  As the court explained in *Zimmer*, a plaintiff cannot plead a RICO claim based on "'a single scheme promulgated for the limited purpose of defrauding a single victim.'"  *Id.* (*quoting Dempsey v. Sanders*, 132 F. Supp. 2d 222, 228 (S.D.N.Y. 2001)).  The courts are particularly skeptical of civil RICO claims where, as here, "the predicate acts are mail and wire fraud, and where the use of mail or wires to communicate is not in and of itself illegal, unlike other predicate acts such as murder or extortion."  *Rosenson v. Mordowitz*, No. 11 Civ. 6145 (JPO), 2012 WL 3631308, at *5 n.3 (S.D.N.Y. Aug 23, 2012).

Sustaining a RICO claim here, based on allegations that "rely on nothing more than incidental use of mails or wires in furtherance of a simple fraudulent scheme with few victims and narrow impacts, would threaten to federalize garden-variety state common law claims, and offer a remedy grossly out of proportion to any public harm or larger societal interests associated with localized wrongful conduct ordinarily involved in such actions."  *Gross*, 628 F. Supp. 2d at 482.

### C.    The Complaint Fails to State a Breach of Fiduciary Duty Claim

The complaint likewise fails to state a claim for breach of fiduciary duty.  To state a claim for breach of fiduciary duty, Simche Steinberger must allege that (1) each defendant owed Tibor Steinberger a fiduciary duty, (2) each defendant committed misconduct, and (3) Tibor

20

suffered damages caused by that misconduct.  *See Burry v. Madison Park Owner LLC*, 84

A.D.3d 699, 699–700 (1st Dep't 2011).  And, because the claim sounds in fraud, it too must

meet Rule 9(b)'s pleading requirement.  *See In re Refco Inc. Sec. Litig.*, 826 F. Supp. 2d 478,

512, n.22 (S.D.N.Y. 2011) ("Notably, the fiduciary duty claims against [the defendant] are all

grounded in fraud and so subject to the heightened particularity requirements of Rule 9(b).").

 As a threshold matter, the complaint does not event attempt to allege any facts suggesting

that Bluma Lefkowitz, Maskil, Care to Care, Maimonides Medical or Medscan owed Tibor

Steinberger a fiduciary duty.  And the central allegation about Tibor's relationship with Jack

Lefkowitz — that Tibor intended to invest in Maimonides, Medscan, and Care to Care (*see, e.g.,*

Compl. ¶ 31) — suggests nothing more than an "ordinary, arms-length commercial relationship"

that "do[es] not give rise to a fiduciary relationship."  *In re Koreag, Controle et Revision S.A.*,

961 F.2d 341, 353 (2d Cir. 1992).  Simche suggests that Jack Lefkowitz owed Tibor a fiduciary

duty because Maskil's letter said that money transferred into its accounts would be held in trust.

(*See* Compl. ¶ 18.)  But that letter referred only to "monies transferred in to our account as per

instruction of Mr. Tibor Steinberger."  (Compl. Ex. B.)  Simche does not allege that Tibor ever

instructed that any money be transferred into Maskil's account or that any money was transferred

into Maskil's account.  Moreover, the letter also states that "Maskil El-Dal may commingle the

Steinberger funds . . . without any further liability."  (*Id.*)  "It is a firmly established principle

that if a recipient of funds is not prohibited from using them as his own and commingling them

with his own monies, a debtor-creditor, not a trust, relationship exists."  *In re Black & Geddes,*

*Inc.*, 35 B.R. 830, 836 (Bankr. S.D.N.Y. 1984) (collecting cases).

 In addition, as discussed above, the complaint does not adequately allege misconduct.

*See Burry*, 84 A.D.3d at 700 (dismissing breach of fiduciary duty claim because "plaintiffs'

allegations of 'misconduct' on the part of defendant are in essence claims of fraud that have not been pleaded with particularity").

### D.    The Complaint Fails to State an Aiding and Abetting Claim

Simche also asserts claims for aiding and abetting fraud and breach of fiduciary duty. Those claims fail, as well.  To state a claim for aiding and abetting fraud, Simche Steinberger must allege "the existence of the underlying fraud, actual knowledge, and substantial assistance." *Oster v. Kirschner*, 77 A.D.3d 51, 55 (1st Dep't 2010).  Similarly, to state a claim for aiding and abetting a breach of fiduciary duty, Simche Steinberger must allege "a breach of fiduciary duty [and] that the defendant knowingly induced or participated in the breach."  *Bullmore v. Ernst & Young Cayman Islands*, 45 A.D.3d 461, 464 (1st Dep't 2007).  Even if the complaint had adequately pleaded underlying fraud and breach of fiduciary duty claims — and it has not — an aiding and abetting claim "is not made out simply by allegations which would be sufficient to state a claim against the principal participants . . . combined with conclusory allegations that the aider and abettor had actual knowledge."  *Goel v. Ramachandran*, 111 A.D.3d 783, 792 (2d Dep't 2013).

Simche Steinberger has not alleged that any other party had actual knowledge of or actively participated in the alleged fraud or breaches.  Once again, he alleges the legal conclusion without providing any factual particulars.  So, for example, we are told that "the Defendants, and each of them, affirmatively assisted, help conceal, and enabled the fraud to be successfully carried out" (Compl. ¶ 74), but we are not provided with any factual detail supporting this conclusion.

In addition, Simche's failure to differentiate between defendants is fatal to his aiding and abetting claims.  He apparently seeks to base the underlying claims and the derivative aiding and abetting claims on the same acts by the same undifferentiated "defendants."  But, of course, "one

cannot aid or abet oneself." *Miller v. Edward Jones & Co.*, 355 F. Supp. 2d 629, 644 (D. Conn. 2005) (internal quotation omitted).

###### E.     The Complaint Fails to State a Claim for Conversion

Simche also fails to state a claim for conversion because he has failed to allege that any defendant exercised "an unauthorized dominion over [Tibor's] funds to the exclusion [of] [Tibor's] rights." *See Whitman Realty Grp., Inc. v. Galano*, 41 A.D.3d 590, 592 (2d Dep't 2007). And he must do so with the factual particularity Rule 9(b) requires. *See Silverman Partners, L.P. v. First Bank*, 687 F. Supp. 2d 269, 288 (E.D.N.Y. 2010) (applying Rule 9(b) to conversion claims sounding in fraud). Simche separately alleges that (1) his father willingly transferred funds to Lefkowitz and (2) Maskil agreed to return upon written instruction any funds that were transferred to it. But the complaint does not allege that Simche actually transferred any money to Maskil. And it does not allege that Tibor or anyone else ever instructed or asked Lefkowitz or anyone else — in writing or otherwise — to return the money. Instead, Simche vaguely alleges that Tibor's "agents" endeavored unsuccessfully to reach an "amicable" agreement. (*See* Compl. ¶¶ 47-49.) Those allegations are not sufficient to allege conversion.

###### F.     Simche Steinberger's Remaining Claims Fail Because He Has Not Pleaded a Fraud or a Breach of Fiduciary Duty

Simche Steinberger's remaining claims — for an accounting, for unjust enrichment, and for imposition of a constructive trust — all require a showing of some underlying wrongdoing. *See, e.g. Lawrence v. Kennedy*, 95 A.D.3d 955, 958 (2d Dep't 2012) ("The right to an accounting is premised [on] a confidential or fiduciary relationship and a breach of the duty imposed by that relationship"); *Goel*, 111 A.D.3d at 791 (to state a claim for unjust enrichment, a plaintiff must allege that "the defendant's conduct was tortious or fraudulent"); *In re Lublin*, 40 Misc3d 1208(A), 2013 WL 3467426, at *2 (N.Y. Sur. Ct. Jun. 26, 2013) ("A constructive trust is a

23

'fraud-rectifying' remedy").  Because Simche Steinberger has not pleaded any underlying wrongdoing with particularity, his remaining claims fail, as well.

## IV.    SIMCHE STEINBERGER SHOULD NOT BE GRANTED LEAVE TO AMEND HIS DEFICIENT COMPLAINT

In the event the Court finds that Simche's claims are not subject to arbitration, but dismisses them for failure to state a claim, the complaint should be dismissed with prejudice.  Of course, it is "the usual practice . . . to allow leave to replead."  *Schindler v. French*, 232 Fed. App'x 17, 19 (2d Cir. 2007).  But Simche Steinberger's counsel has been on notice of the complaint's pleading deficiencies since the defendants filed their first pre-motion letter in the *Kretzmer* action on June 23, 2013.  (*See* Beha Dec. Ex. B.)  Since then, Kretzmer has filed — and then withdrawn — an amended complaint and now Simche has "yet again crafted a deficient pleading."  *Pelt v. City of N.Y.*, No. 11 Civ. 5633, 2013 WL 4647500, at *19 (E.D.N.Y. Aug. 28, 2013).  Given Simche's counsel's two previous, nearly-identical complaints, "even assuming . . . that [Simche] could have alleged additional facts sufficient to surmount a motion to dismiss, he could have and should have done so" in his initial complaint.  *Id.*  Three bites at the apple are enough.

## CONCLUSION

Simche Steinberger seeks to assert claims that his late father agreed to arbitrate.  And even if the claims were not subject to arbitration, the complaint fails to plead the required factual particulars to state any of its claims.  As a result, the complaint should be dismissed in its entirety with prejudice.

Dated:  January 31, 2013          __s/ James J. Beha II_____
        New York, New York        James J. Beha II

                                  MORRISON & FOERSTER LLP

                                  Michael B. Miller
                                  James J. Beha II
                                  1290 Avenue of the Americas
                                  New York, New York 10104
                                  (212) 468-8000

                                  *Attorneys for Defendants Jack Lefkowitz, Bluma Lefkowitz,*
                                  *Maskil El-Dal, Inc., Maimonides Medical Services, LLC,*
                                  *and Medscan Mobile*