# Beha Declaration Exhibit A

## OPERATING AGREEMENT

This Agreement, entered into as of November 01, 2007, by and between Barcley Dwyer Co. Inc., having a mailing address of 30 Broad Street, New York, New York 10004 and Supreme Equity, LLC., having a mailing address of C/O Mr. Tibor Steinberger 199 Lee Avenue Brooklyn, New York 11211, sometimes hereinafter referred to as a "Members".

W I T N E S S E T H:

WHEREAS, the parties hereto desire to form a limited liability company known as Maimonides Medical Services, LLC, pursuant to the Delaware Limited Liability Company Law; and

WHEREAS, the Members have acknowledged the Articles of Organization of Maimonides Medical Services, LLC to be filed with the Delaware State Secretary of State; and

WHEREAS, the parties hereto desire to establish their respective rights and obligations pursuant to the Delaware Limited Liability Company Law in connection with forming such a limited liability company;

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are acknowledged, the parties hereto agree as follows:

### ARTICLE I.  Definitions

1.1     Definitions.  In this Agreement, the following terms shall have the meanings set forth below:

(a)      "Articles of Organization" shall mean the Articles of Organization of the Company filed or to be filed with the Delaware State Secretary of State, as they may from time to time be amended.

(b)   "Capital Account" as of any date shall mean the Capital Contribution to the Company by a Member, adjusted as of such date pursuant to the terms of this Agreement.

(c)   "Capital Contribution" shall mean any contribution by a Member to the capital of the Company in cash, property or services rendered or a promissory note or other obligation to contribute cash or property or to render services.

(d)   "Code" shall mean the Internal Revenue Code of 1986, as amended, or any superseding federal revenue statute.

(e)   "Company" shall refer to Maimonides Medical Services, LLC.

(f)   "Distribution" shall mean any cash and other property paid to a Member by the Company from the operations of the Company.

(g)   "Fiscal Year" shall mean the fiscal year of the Company, which shall be the year ending December 31.

(h)   "Membership Interests" shall mean with respect to the Company the value of all Capital Contributions and with respect to any Member the ratio of the value of the Capital Contribution of such Member to the aggregate value of all Capital Contributions.

(i)   "Managers" shall mean each individual listed in the Articles of Organization or in Exhibit A to this Agreement as a manager of the Company or any other individual that succeeds him or her as such a manager pursuant to this Agreement.

(j)   "Member" shall mean each Person who executes a counterpart of this Agreement as a Member and each Person who may hereafter become a party to this Agreement.

(k)   "Net Losses" shall mean the losses of the Company, if any, determined in accordance with generally accepted accounting principles employed under the cash method of accounting.

(k)      "<u>Net Losses</u>" shall mean the losses of the Company, if any, determined in accordance with generally accepted accounting principles employed under the cash method of accounting.

(l)      "<u>Net Profits</u>" shall mean the income of the Company, if any, determined in accordance with generally accepted accounting principles employed under the cash method of accounting.

(m)      "<u>Delaware Act</u>" shall mean the Delaware Limited Liability Company Act.

(n)      "<u>Person</u>" shall mean any individual, corporation, governmental authority, limited liability company, partnership, trust, unincorporated association or other entity

(o)      "<u>Selling Member</u>" shall mean a Member desiring to sell a Membership Interest.

(p)      "<u>Treasury Regulations</u>" shall mean all proposed, temporary and final regulations promulgated under the Code as from time to time in effect.

## ARTICLE II.  Organization

2.1      <u>Formation</u>.  One or more Persons have acted or will act as an organizer or organizers to form a limited liability company by preparing, executing and filing with the Delaware Secretary of State the Articles of Organization pursuant to the Delaware Act.

2.2      <u>Name</u>.  The name of the Company is Maimonides Medical Services, LLC.

2.3      <u>Principal Place of Business</u>.  The principal place of business of the Company within the State of New York shall be in the County of New York.  The Company may establish any other places of business as the Managers may from time to time deem advisable.

2.4      <u>Registered Agent</u>.  The Company shall not have a registered agent.

2.5     Term. The term of the Company shall be perpetual, commencing on the date of filing the Articles of Organization with the Delaware Secretary of State and continuing until the Company is dissolved pursuant to this Agreement or the Delaware Act.

2.6     Purposes. The Company is formed for any lawful business purpose or purpose, including the purchase, financing, improvement, rental and sale of real estate.

### ARTICLE III.  Members

3.1     Names and Addresses.  The name and address of the Member is as set forth in Exhibit A to this Agreement.

3.2     Additional Members.  A Person may be admitted as a Member after the date of this Agreement upon the vote or written consent of a majority of Membership Interests.

3.3     Books and Records.  The Company shall keep books and records of accounts and minutes of all meetings of the Members. Such books and records shall be maintained on a cash basis in accordance with this Agreement.

3.4     Information.  Each Member may inspect during ordinary business hours and at the principal place of business of the Company the Articles of Organization, the Operating Agreement, the minutes of any meeting of the Members and any income tax returns of the Company for the immediately preceding three Fiscal Years.

3.5     Limitation of Liability.  Each Member's liability shall be limited as set forth in this Agreement, the Delaware Act and other applicable law.  A Member shall not be personally liable for any indebtedness, liability or obligation of the Company, except that such Member shall remain personally liable for the payment of his or her Capital Contribution of such Member and as otherwise set forth in this Agreement, the Delaware Act and any other applicable law.

3.6     <u>Sale of All Assets</u>.  The Members shall have the right, by the vote or written consent of at least two-thirds of all Membership Interests, to approve the sale, lease, exchange or other disposition of all or substantially all of the assets of the Company.

3.7     <u>Priority and Return of Capital</u>.  No Member shall have priority over any other Member, whether for the return of a Capital Contribution or for Net Profits, Net Losses or a Distribution; provided, however, that this Section shall not apply to a loan or other indebtedness (as distinguished from a Capital Contribution) made by a Member to the Company.

3.8     <u>Liability of a Member to the Company</u>.  A Member who rightfully receives the return of any portion of a Capital Contribution is liable to the Company only to the extent now or hereafter provided by the Delaware Act.  A Member who receives a Distribution made by the Company in violation of this Agreement or made when the Company's liabilities exceed its assets (after giving effect to such Distribution) shall be liable to the Company for the amount of such Distribution.

3.9     <u>Financial Adjustments</u>.  No Members admitted after the date of this Agreement shall be entitled to any retroactive allocation of losses, income or expense deductions incurred by the Company.  The Manager may, at the discretion of the Manager, at the time a Member is admitted, close the books and records of the Company (as though the Fiscal Year had ended) or make pro rata allocations of loss, income and expense deductions to such Member for that portion of the Fiscal Year in which such Member was admitted in accordance with the Code.

### ARTICLE IV.  Management

4.1     <u>Management</u>.  Management of the Company shall be vested in the Managers whose names are set forth on Exhibit A.

4.2     <u>Number, Tenure and Qualifications of Managers</u>.  The Company shall initially have the same number of Managers as the number of individuals listed on Exhibit A to this Agreement who shall serve as the Managers.  The number of Managers of the Company may be amended from time to time by the vote or written consent of at least two-thirds of all Membership Interests.  Each Manager shall hold office until the next annual meeting of Members or until a successor shall have been elected and qualified.  Managers shall be elected by the vote or written consent of at least a majority of all Membership Interests and need not be residents of the State of Delaware or Members of the Company.

4.3     <u>Powers of Managers</u>.  Except as set forth in this Agreement, the Managers shall have the power and authority, on behalf of the Company to (a) purchase, lease or otherwise acquire from, or sell, lease or otherwise dispose of to, any Person any property, (b) open bank accounts and otherwise invest the funds of the Company, (c) purchase insurance on the business and assets of the Company, (d) commence lawsuits and other proceedings, (e) enter into any agreement, instrument or other writing, (f) retain accountants, attorneys or other agents and (g) take any other lawful action that the Managers consider necessary, convenient or advisable in connection with any business of the Company.

4.4     <u>Binding Authority</u>.  Unless authorized to do so by this Agreement or the Managers, no Person shall have any power or authority to bind the Company.   No Person shall have any power or authority to bind the Company unless such Person has been authorized by the Managers to act on behalf of the Company in accordance with the immediately preceding sentence.

4.5     <u>Liability for Certain Acts</u>.  The Managers shall perform their duties in good faith, in a manner he or she reasonably believes to be in the best interests of the Company and with

such care as an ordinarily prudent person in a similar position would use under similar circumstances. A Manager who so performs such duties shall not have any liability by reason of being or having been a Manager. The Manager shall not be liable to the Company or any Member for any loss or damage sustained by the Company or any Member, unless the loss or damage shall have been the result of the gross negligence or willful misconduct of such Manager. Without limiting the generality of the preceding sentence, a Manager does not in any way guaranty the return of any Capital Contribution to a Member or a profit for the Members from the operations of the Company.

4.6    <u>No Exclusive Duty to Company</u>.  The Managers shall not be required to manage the Company as their sole and exclusive function and they may have other business interests and may engage in other activities in addition to those relating to the Company. Neither the Company nor any Member shall have any right pursuant to this Agreement to share or participate in such other business interests or activities or to the income or proceeds derived therefrom. The Manager shall incur no liability to the Company or any Member as a result of engaging in any other business interests or activities.

4.7    <u>Indemnification</u>.  The Company shall indemnify and hold harmless the Manager from and against all claims and demands to the maximum extent permitted under the Delaware Act.

4.8    <u>Resignation</u>.  Any Manager may resign at any time by giving written notice to the Company. The resignation of any Manager shall take effect upon receipt of such notice or at any later time specified in such notice. Unless otherwise specified in such notice, the acceptance of the resignation shall not be necessary to make it effective. The resignation of the Manager who

is also a Member shall not affect the Manager's rights as a Member and shall not constitute a withdrawal of a Member.

4.9    Removal.  Any Manager may be removed or replaced with or without cause by the vote or written consent of at least a majority of Membership Interests.  The removal of a Manager who is also a Member shall not affect the Manager's rights as a Member and shall not constitute a withdrawal of such Member.

4.10    Vacancies.  Any vacancy occurring for any reason in the number of Managers may be filled by the vote or written consent of at least a majority of the remaining Managers then in office; provided, however, that if there are no remaining Managers, each vacancy shall be filled by the vote or written consent of at least a majority of the Membership Interests.  A Manager elected to fill a vacancy shall be elected for the unexpired term of the Manager's predecessor in office and shall hold office until the expiration of such term and until the Manager's successor has been elected and qualified.  A Manager chosen to fill a position resulting from an increase in the number of Managers shall hold office until the next annual meeting of Members and until a successor has been elected and qualified.

4.11    Salaries.  The salaries and other compensation of the Managers shall be fixed from time to time by the vote or written consent of at least a majority of the Membership Interests.  No Manager shall be prevented from receiving such a salary or other compensation because such Manager is also a Member.

4.12    Officers.  The Managers may designate one or more individuals as officers of the Company, who shall have such titles and exercise and perform such powers and duties as shall be assigned to them from time to time by the Managers.  Any officer may be removed by the Managers at any time, with or without cause.  Each officer shall hold office until his or her

successor is elected and qualified.  Any number of offices may be held by the same individual. The salaries and other compensation of the officers shall be fixed by the Managers.

## ARTICLE V.  Meetings of Members

5.1     Annual Meeting.  The annual meeting of the Members shall be held on each third Tuesday in March or at such other time as shall be determined by the vote or written consent of the Membership Interests for the purpose of the transaction of any business as may come before such meeting.

5.2     Special Meetings.  Special meetings of the Members, for any purpose or purposes, may be called by any Manager or any Member holding not less than ten percent of the Membership Interests.

5.3     Place of Meetings.  Meetings of the Members may be held at any place, within or outside the State of Delaware or New York, for any meeting of the Members designated in any notice of such meeting. If no such designation is made, the place of any such meeting shall be the office of the Company.

5.4     Notice of Meetings.  Written notice stating the place, day and hour of the meeting indicating that it is being issued by or at the direction of the person or persons calling the meeting, and stating the purpose or purposes for which the meeting is called, shall be delivered no fewer than ten nor more than sixty days before the date of the meeting.

5.5     Record Date.  For the purpose of determining the Members entitled to notice of or to vote at any meeting of Members or any adjournment of such meeting, or Members entitled to receive payment of any Distribution, or to make a determination of Members for any other purpose, the date on which notice of the meeting is mailed or the date on which the resolution declaring Distribution is adopted, as the case may be, shall be the record date for making such a

determination.  When a determination of Members entitled to vote at any meeting of Members has been made pursuant to this Section, the determination shall apply to any adjournment of the meeting.

5.6     Quorum.  Members holding not less than a majority of all Membership Interests, represented in person or by proxy, shall constitute a quorum at any meeting of Members.  In the absence of a quorum at any meeting of Members, a majority of the Membership Interests so represented may adjourn the meeting from time to time for a period not to exceed sixty days without further notice.  However, if the adjournment is for more than sixty days, or if after the adjournment a new record date is fixed for the adjourned meeting, a notice of the adjourned meeting shall be given to each Member of record entitled to vote at such meeting.  At an adjourned meeting at which a quorum shall be present or represented, any business may be transacted that might have been transacted at the meeting as originally noticed. The Members present at a meeting may continue to transact business until adjournment, notwithstanding the withdrawal during the meeting of Membership Interests whose absence results in less than a quorum being present.

5.7     Manner of Acting.  If a quorum is present at any meeting, the vote or written consent of Members holding not less than a majority of Membership Interests shall be the act of the Members, unless the vote of a greater or lesser proportion or number is otherwise required by the Delaware Act, the Articles of Organization or this Agreement.

5.8     Proxies.

(a)     A Member may vote in person or by proxy executed in writing by the Member or by a duly authorized attorney-in-fact.

(b)     Every proxy must be signed by the Member or his or her attorney-in-fact. No proxy shall be valid after the expiration of eleven months from the date thereof unless otherwise provided in the proxy.  Every proxy shall be revocable at the pleasure of the Member executing it, except as otherwise provided in this Section.

(c)     The authority of the holder of a proxy to act shall not be revoked by the incompetence or death of the Member who executed the proxy unless, before the authority is exercised, written notice of an adjudication of such incompetence or of such death is received by any Manager.

(d)     Except when other provision shall have been made by written agreement between the parties, the record holder of a Membership Interest which he, she or it holds as pledgee or otherwise as security or which belongs to another, shall issue to the pledgor or to such owner of such Membership Interest, upon demand therefor and payment of necessary expenses thereof, a proxy to vote or take other action thereon.

(e)     A proxy which is entitled "irrevocable proxy" and which states that it is irrevocable, is irrevocable when it is held by (i) a pledgee, (ii) a Person who has purchased or agreed to purchase the shares, (iii) a creditor or creditors of the Company who extend or continue credit to the Company in consideration of the proxy if the proxy states that it was given in consideration of such extension or continuation of credit, the amount thereof, and the name of the person extending or continuing credit, (iv) a Person who has contracted to perform services as an officer of the Company, if a proxy is required by the contract of employment, if the proxy states that it was given in consideration of such contract of employment, the name of the employee and the period of employment contracted for, or (v) a nominee of any of the Persons described in clauses (i)-(iv) of this sentence.

(f)     Notwithstanding a provision in a proxy stating that it is irrevocable, the proxy becomes revocable after the pledge is redeemed, or the debt of the Company is paid, or the period of employment provided for in the contract of employment has terminated and, in a case provided for in Section 5.8(e)(iii) or (iv) of this Agreement, becomes revocable three years after the date of the proxy or at the end of the period, if any, specified therein, whichever period is less, unless the period of irrevocability is renewed from time to time by the execution of a new irrevocable proxy as provided in this Section.  This paragraph does not affect the duration of a proxy under paragraph (b) of this Section.

(g)     A proxy may be revoked, notwithstanding a provision making it irrevocable, by a purchaser of a Membership Interest without knowledge of the existence of such proxy.

5.9     <u>Action by Members Without a Meeting</u>.

(a)     Whenever the Members of the Company are required or permitted to take any action by vote, such action may be taken without a meeting, without prior notice and without a vote, if a consent or consents in writing, setting forth the action so taken shall be signed by the Members who hold the voting interests having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all of the Members entitled to vote therein were present and voted and shall be delivered to the office of the Company, its principal place of business or a Manager, employee or agent of the Company.  Delivery made to the office of the Company shall be by hand or by certified or registered mail, return receipt requested.

(b)     Every written consent shall bear the date of signature of each Member who signs the consent, and no written consent shall be effective to take the action referred to

therein unless, within sixty days of the earliest dated consent delivered in the manner required by this Section to the Company, written consents signed by a sufficient number of Members to take the action are delivered to the office the Company, its principal place of business or a Manager, employee or agent of the Company having custody of the records of the Company. Delivery made to such office, principal place of business of Manager, employee or agent shall be by hand or by certified or registered mail, return receipt requested.

(c)     Prompt notice of the taking of the action without a meeting by less than unanimous written consent shall be given to each Member who has not consented in writing but who would have been entitled to vote thereon had such action been taken at a meeting.

5.10     Waiver of Notice.  Notice of a meeting need not be given to any Member who submits a signed waiver of notice, in person or by proxy, whether before or after the meeting. The attendance of any Member at a meeting, in person or by proxy, without protesting prior to the conclusion of the meeting the lack of notice of such meeting, shall constitute a waiver of notice by him or her.

5.11     Voting Agreements.  An agreement between two or more Members, if in writing and signed by the parties thereto, may provide that in exercising any voting rights, the Membership Interests held by them shall be voted as therein provided, or as they may agree, or as determined in accordance with a procedure agreed upon by them.

### ARTICLE VI.  Capital Contributions

6.1     Capital Contributions.  Each Member shall contribute the amount set forth in Exhibit B to this Agreement as the Capital Contribution to be made by him, her or it.

6.2     Additional Contributions.  Except as set forth in Section 6.1 of this Agreement, no Member shall be required to make any Capital Contribution.

6.3     Capital Accounts.  A Capital Account shall be maintained for each Member. Each Member's Capital Account shall be increased by the value of each Capital Contribution made by the Member, allocations to such Member of the Net Profits and any other allocations to such Member of income pursuant to the Code.  Each Member's Capital Account will be decreased by the value of each Distribution made to the Member by the Company, allocations to such Member of Net Losses and other allocations to such Member pursuant to the Code.

6.4     Transfers.  Upon a permitted sale or other transfer of a Membership Interest in the Company, the Capital Account of the Member transferring his, her or its Membership Interests shall become the Capital Account of the Person to which or whom such Membership Interest is sold or transferred in accordance with Section 1.704-l(b) (2)(iv) of the Treasury Regulations.

6.5     Modifications.  The manner in which Capital Accounts are to be maintained pursuant to this Section is intended to comply with the requirements of Section 704(b) of the Code.  If in the opinion of the Managers the manner in which Capital Accounts are to be maintained pursuant to this Agreement should be modified to comply with Section 704(b) of the Code, then the method in which Capital Accounts are maintained shall be so modified; provided, however, that any change in the manner of maintaining Capital Accounts shall not materially alter the economic agreement between or among the Members.

6.6     Deficit Capital Account.  Except as otherwise required in the Delaware Act or this Agreement, no Member shall have any liability to restore all or any portion of a deficit balance in a Capital Account.

6.7     Withdrawal or Reduction of Capital Contributions.  A Member shall not receive from the Company any portion of a Capital Contribution until all indebtedness, liabilities of the Company, except any indebtedness, liabilities and obligations to Members on account of their

Capital Contributions, have been paid or there remains property of the Company, in the sole discretion of the Managers, sufficient to pay them. A Member, irrespective of the nature of the Capital Contribution of such Member, has only the right to demand and receive cash in return for such Capital Contribution.

## ARTICLE VII.  Allocations and Distributions

7.1     Allocations of Profits and Losses.  The Net Profits and the Net Losses for each Fiscal Year shall be allocated to each Member in accordance with the ratio of the value of his, her or its Capital Account to the value of all Capital Accounts in the aggregate.

7.2     Distributions.  The Managers may from time to time, in the discretion of the Managers, make Distributions to the Members.  All Distributions shall be made to the Members pro rata in proportion to their Membership Interests as of the record date set for such Distribution.

7.3     Offset.  The Company may offset all amounts owing to the Company by a Member against any Distribution to be made to such Member.

7.4     Limitation Upon Distributions.  No Distribution shall be declared and paid unless, after such Distribution is made, the assets of the Company are in excess of all liabilities of the Company .

7.5     Interest on and Return of Capital Contributions.  No Member shall be entitled to interest on his, her or its Capital Contribution or to a return of his, her or its Capital Contribution, except as specifically set forth in this Agreement.

7.6     Accounting Period.  The accounting period of the Company shall be the Fiscal Year.

## ARTICLE VIII.  Taxes

8.1     Tax Returns.  Supreme Equity, LLC by its agent shall cause to be prepared and filed all necessary federal and state income tax returns for the Company.  Each member shall furnish to to Supreme Equity, LLC all pertinent information in its possession relating to Company operations that is necessary to enable the Company's income tax returns to be prepared and filed.

8.2     Tax Elections.  The Company shall make the following elections on the appropriate tax returns:

(a)     To adopt the calendar year as the Fiscal Year;

(b)     To adopt the cash method of accounting and keep the Company's books and records on the income tax method;

(c)     If a Distribution as described in Section 734 of the Code occurs or if a transfer of a Membership Interest described in Section 743 of the Code occurs, upon the written request of any Member, to elect to adjust the basis of the property of the Company pursuant to Section 754 of the Code;

(d)     To elect to amortize the organizational expenses of the Company and the start-up expenditures of the Company under Section 195 of the Code ratably over a period of sixty months as permitted by Section 709(b) of the Code; and

(e)     Any other election that the Managers may deem appropriate and in the best interests of the Members.

Neither the Company nor any Member may make an election for the Company to be excluded from the application of Subchapter K of Chapter 1 of Subtitle A of the Code or any similar provisions of applicable state law, and no provisions of this Agreement shall be interpreted to authorize any such election.

8.3     Tax Matters Partners.  Supreme Equity, LLC by its agent shall designate one Manager to be the "tax matters partner" of the Company pursuant to Section 6231(a)(7) of the Code.  Any Manager who is designated "tax matters partner" shall take any action as may be necessary to cause each other Member to become a "notice partner" within the meaning of Section 6223 of the Code.

## ARTICLE IX.  Transferability

9.1     Restrictions on Transfer.

(a)     Except as provided in subparagraph B and C of this Paragraph (and except for any transfers by a Member to descendants of a Member or to another Member for estate planning purposes), no Member shall hereinafter sell, assign, transfer, bequeath, pledge, mortgage, hypothecate or create any security interest in, or in any manner encumber or dispose of or permit or suffer the encumbrance or disposition (hereinafter sometimes collectively referred to as "Transfer") of his Membership Interest, or the distributions thereto appertaining, which he or she may now or hereafter own, in whole or in part.  Any attempted Transfer in violation hereof shall be void ab initio.  Except as hereinafter expressly provided, neither the death or incompetency of any Member nor the Transfer of all or any portion of his or her Membership Interest, as hereinafter permitted, shall in any way abrogate or terminate the provisions of this Agreement, and this Agreement shall continue to govern the respective rights and obligations of the Members and their successors and assigns.

(b)     If any Member shall have received a bona fide offer in writing to purchase his or her entire Membership Interest (but not less than his entire interest), such Member (the "Selling Member") shall, if he or she wishes to accept such offer, first offer, by notice in writing ("Proposal"), to sell his or her entire Membership Interest to the other Members ("Remaining Members") for the same price and on the same terms and conditions of sale set forth in the bona fide offer and in the manner hereinafter set forth.

The Selling Member shall mail the Proposal to each of the Remaining Members.

The Remaining Members shall have the first right to accept the Proposal as to all or a part of the Selling Member's Membership Interest, as hereinafter provided.  An acceptance of a Proposal ("Acceptance") shall be in writing and shall be pro rata to the Remaining Member's Membership Interests for those Remaining Members accepting the Proposal, unless the Remaining Members agree otherwise.  The Remaining Member shall have a period of fifteen (15) days after the date of sending of the Proposal to send an Acceptance to the Selling Member.

The Proposal shall set forth the name, residence and business address of the offeror and sufficient facts concerning the bona fide offeror to enable the Remaining Members to arrive at an informed judgment as to the bona fides of such offer and the representations and warranties requested of the Selling Members and all items affecting the price.

If the Proposal of the Selling Member is duly accepted as to his or her entire Membership Interest, the closing of the sale shall be held no less than thirty (30) days and no more than one hundred and twenty (120) days after the date of sending of the Acceptance, at a date, time and place mutually agreed upon by the Selling Member and the Remaining Members sending an Acceptance as provided above.  At the closing, the Members shall execute and deliver such instruments of transfer as counsel for the parties may reasonably request.

If the Proposal of the Selling Member is not accepted in full as aforesaid, all acceptances and offers relating to such Membership Interest shall be deemed void as of the end of said thirty (30) day period after sending of the Proposal, and the Selling Member may, within 120 days after the date of the sending of the Proposal, sell his or her entire Membership Interest, but not less than his or her entire Membership Interest, to the bona fide offeror, who shall become a Member in the Company in the place and stead of the Selling Member, provided that the Remaining Members shall have elected to continue the business of the Company.  In the

event the bona fide offeror becomes a Member, this Agreement shall be binding upon him or her in all respects as though he or she were originally a party thereto.  All of the Members and the bona fide offeror (as a condition to the Transfer) shall execute and deliver any documents which the Members may reasonably request, to evidence the foregoing agreements.  If such sale to the bona fide offeror is not completed, as aforesaid, within such period, the Selling Member shall not sell his or her Membership Interest without again offering the same for sale as herein provided.

(c)     Upon the death of a Member, if requested by the legal representative of the estate of the deceased Member within six (6) months of the date of death of the deceased Member, the Remaining Members, or the Company, as described in the following paragraphs, shall purchase the interest of such deceased Member.  If the legal representative of the estate of the deceased Member does not make such request, the deceased Member's interest shall pass under the deceased Member's Will or by intestacy, as the case may be. The deceased Member shall be paid the full value of his or her interest in the Company as of the Valuation Date used to determine the value of his or her interest.  Such "Valuation Date" shall be the date of a deceased Member's death.

Upon the death of a Member, the Company's assets and liabilities shall be valued as of the Valuation Date.  All assets and liabilities of the Company shall be valued as described below, except for Company assets and liabilities which are readily valued (bank accounts, marketable securities, mortgage debts, etc.).  Upon determining the value of all Company assets such value, reduced by all liabilities of the Company, and further reduced by the amount of any expenses directly and reasonably related to the purchase by the Company or the Remaining Members of the deceased Member's Interest (appraisal expenses, recording fees, etc.) shall be

the value of the Company as of the Valuation Date.  The value of the Company shall then be multiplied by the percentage of the deceased Member's Interest in the Company.

The Remaining Members shall have the right of first refusal to purchase the interest of a deceased Member; and in such event, the Remaining Members shall pay the amount of the purchase price in a manner agreed to by the Remaining Member and the legal representative of the deceased Member.  If the Remaining Members do not desire to purchase the interest of the deceased Member, the Company shall purchase the interest of the deceased Member. If the Company is the purchaser of the deceased Member's interest, the purchase price shall be paid in cash within six (6) months of the deceased Member's death.

In the event that any asset or liability of the Company cannot be readily valued (for example, real estate, contingent claims or liabilities, etc.), the method of valuing such asset or liability shall be as follows:

(1)     The Company (by vote of the majority of the voting shares) and the legal representatives of the deceased Member shall each appoint an appraiser.  Such appraiser must have at least ten years experience in appraising commercial real estate in the city or town in which the property is located, and whose appraisals are acceptable to savings banks and commercial banks doing business in the city or town.  Each such appraiser shall be appointed within thirty (30) days of the Valuation Date.  If either party shall fail to appoint an appraiser meeting the foregoing qualifications within such thirty day period, such party's appraiser shall be appointed by the American Arbitration Association upon the request of the party who has appointed a qualified appraiser.  Each such appraiser shall prepare and submit a written appraisal to both the Company and the legal representative of the deceased Member within thirty (30) days of such appointment.

(2)      Upon receipt of the two appraisals, the Company shall determine whether or not the higher of the two appraisals is more than 105% of the amount of the lower appraisal.  If such higher appraisal is not more than 105% of the amount of the lower appraisal, the two appraisals shall be averaged, and such average shall be the value of that asset or liability for all purposes of this Agreement.

(3)      If the higher of the two appraisals is more than 105% of the amount of the lower appraisal, but less than 110% of the amount of the lower appraisal, the two appraisers shall select a third appraiser by mutual consent.  If the third appraiser cannot be agreed to by the original two appraisers within 10 business days after being notified by the Managers that a third appraisal is necessary a third appraiser shall be appointed by the American Arbitration Association.  Upon receipt of such third appraisal, the three appraisals shall be averaged, and such average shall be the value of that asset or liability for all purposes of this Agreement.

(4)      If the higher of the two appraisals described in paragraph "2" above is more than 110% of the amount of the lower appraisal, neither of such appraisals shall be used to value the deceased Member's Interest.  In such event, the Managers, within ten business days after receipt of the two appraisals described in paragraph "2" above, shall request that three (3) appraisers who meet the qualifications contained in paragraph "1" above be appointed by the American Arbitration Association.  The three such appointed appraisers shall each submit a separate appraisal, and the three such appraisals shall be averaged, and such average shall be the value of that asset or liability for all purposes of this Agreement.  The three such appraisals shall be submitted to the Company and the legal representative of the deceased

Member within ninety (90) days of the appointment of the appraiser by the American Arbitration Association.

(5)     If for any reason whatsoever the three appraisals referred to in paragraph "4" are not submitted to the Company and the legal representative of the deceased Member within the ninety (90) day period described therein, then, at any time prior to the actual receipt of such three appraisals by the Company or the legal representative of the deceased Member, either party may apply to the Supreme Court of the State of Delaware or to any other court having appropriate jurisdiction, by an action, proceeding or otherwise (but not by a new arbitration proceeding) to determine the issue in dispute consistently with the provisions of this Agreement.

(d)     The Members acknowledge that their Membership Interests are unique and that they could be compensated by money damages for any violation of the provisions of this Paragraph.  Accordingly, the Members agree that in addition to all other rights and remedies available to any Member at law or in equity, a Member shall have the right to require specific performance of another Member's obligations hereunder.

## ARTICLE X.  Dissolution

10.1    <u>Dissolution</u>.  The Company shall be dissolved and its affairs shall be wound up upon the first to occur of the following:

(a)     The latest date on which the Company is to dissolve, if any, as set forth in the Articles of Organization;

(b)     The vote or written consent of at least two-thirds in interest of all Members; or

(c)     The bankruptcy, death, dissolutions, expulsion, incapacity or withdrawal of any Member or the occurrence of any other event that terminates the continued membership of any Member, unless within one hundred and eighty days after such event the Company is continued by the vote or written consent of a majority in interest of all of the remaining Members.

10.2   Winding Up. Upon the dissolution of the Company the Managers may, in the name of and for an on behalf of the Company, prosecute and defend suits, whether civil, criminal or administrative, sell and close the Company's business, dispose of and convey the Company's property, discharge the Company's liabilities and distribute to the Members any remaining assets of the Company, all without affecting the liability of Members.  Upon winding up of the Company, the assets shall be distributed as follows:

(a)     To creditors, including any Member who is a creditor, to the extent permitted by law, in satisfaction of the liabilities of the Company, whether by payment or by establishment of adequate reserves, other than liabilities for distributions to Members under Section 507 or Section 509 of the Delaware Act;

(b)     To Members and former Members in satisfaction of liabilities for Distributions under Section 507 or Section 509 of the Delaware Act; and

(c)     To Members first for the return of their Capital Contributions, to the extent not previously returned, and second respecting their Membership Interests, in the proportions in which the Members share in Distributions in accordance with this Agreement.

10.3   Articles of Dissolution. Within ninety days following the dissolution and the commencement of winding up of the Company, or at any other time there are no Members,

articles of dissolution shall be filed with the Delaware Secretary of State pursuant to the Delaware Act.

  10.4 <u>Deficit Capital Account</u>.  Upon a liquidation of the Company within the meaning of Section 1.704-I(b)(2)(ii)(g) of the Treasury Regulations, if any Member has a Deficit Capital Account (after giving effect to all contributions, distributions, allocations and other adjustments for all Fiscal Years, including the Fiscal Year in which such liquidation occurs), the Member shall have no obligation to make any Capital Contribution, and the negative balance of any Capital Account shall not be considered a debt owed by the Member to the Company or to any other Person for any purpose.

  10.5 <u>Nonrecourse to Other Members</u>.  Except as provided by applicable law or as expressly provided in this Agreement, upon dissolution, each Member shall receive a return of his, her or its Capital Contribution solely from the assets of the Company.  If the assets of the Company remaining after the payment or discharge of the debts and liabilities of the Company is insufficient to return any Capital Contribution of any Member, such Member shall have no recourse against any other Member.

  10.6 <u>Termination</u>.  Upon completion of the dissolution, winding up, liquidation, and distribution of the assets of the Company, the Company shall be deemed terminated.

## ARTICLE XI.  General Provisions

  11.1 <u>Notices</u>.  Any notice, demand or other communication required or permitted to be given pursuant to this Agreement shall have been sufficiently given for all purposes if (a) delivered personally to the party or to an executive officer of the party to whom such notice, demand or other communication is directed or (b) sent by registered or certified mail, postage prepaid, addressed to the Member or the Company at his, her or its address set forth in this

Agreement.  Except as otherwise provided in this Agreement, any such notice shall be deemed to be given three business days after the date on which it was deposited in a regularly maintained receptacle for the deposit of United States mail, addressed and sent as set forth in this Section.

11.2    Amendments.  This Agreement contains the entire agreement among the Members with respect to the subject matter of this Agreement, and supersedes each course of conduct previously pursued or acquiesced in, and each oral agreement and representation previously made by the Members with respect thereto, whether or not relied or acted upon.  No course of performance or other conduct subsequently pursued or acquiesced in, and no oral agreement or representation subsequently made by the Members, whether or not relied or acted upon, and no usage of trade, whether or not relied or acted upon, shall amend this Agreement or impair or otherwise affect any Member's obligations pursuant to this Agreement or any rights and remedies of a Member pursuant to this Agreement.  No amendment to this Agreement shall be effective unless made in a writing duly executed by all Members.

11.3    Construction.  Whenever the singular number is used in this Agreement and when required by the context, the same shall include the plural and vice versa, and the masculine gender shall include the feminine and neuter genders and vice versa.

11.4    Headings.  The headings in this Agreement are for convenience only and shall not be used to interpret or construe any provision of this Agreement.

11.5    Waiver.  No failure of a Member to exercise, and no delay by a Member in exercising, any right or remedy under this Agreement shall constitute a waiver of such right or remedy.  No waiver by a Member of any such right or remedy under this Agreement shall be effective unless made in a writing duly executed by all Members and specifically referring to each such right or remedy being waived.

11.6   <u>Severability</u>.  Whenever possible, each provision of this Agreement shall be interpreted in such a manner as to be effective and valid under applicable law.  However, if any provision of this Agreement shall be prohibited by or invalid under such law, it shall be deemed modified to conform to the minimum requirements of such law or, if for any reason it is not deemed so modified, it shall be prohibited or invalid only to the extent of such prohibition or invalidity without the remainder thereof or any other such provision being prohibited or invalid.

11.7   <u>Binding</u>.  This Agreement shall be binding upon and inure to the benefit of all Members, and each of the successors and assignees or the Members, except that no right or obligation of a Member under this Agreement may be assigned by such Member to another Person without first obtaining the written consent of all other Members.

11.8   <u>Counterparts</u>. This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which shall constitute one and the same instrument.

11.9   <u>Governing Law</u>. This Agreement shall be governed by, and interpreted and construed in accordance with, the laws of the State of Delaware, without regard to principles of conflict of laws.

11.10   <u>Disputes.</u>  All internal membership or its agents disputes or disagreements  arising out of or in connection of this operating agreement in amounts of One Hundred Thousand dollars and above shell be arbitrated and finally settled under the rules of the religious Beth-Din of Mechon L'Hoyrioa of Monsey, New York, in accordance of said Beth-Din .

# ARTICLE XII.

IN WITNESS WHEREOF, the individuals signing this Agreement below conclusively evidence their agreement to the terms and conditions of this Agreement by so signing this Agreement.

_____

Supreme Equity, LLC
By: It's authorized agent

_____

Barcley Dwyer Co. Inc.
By: It's authorized agent

**EXHIBIT A**
**Members**

| Name | Address | Capital Contribution | Percentage of Ownership |
|------|---------|---------------------|------------------------|
| Barcley-Dwyer Co. Inc | 30 Broad Street<br>New York, New York 10004 | $1,000,000 | 75% |
| Supreme Equity, LLC | C/O Mr. Tibor Steinberger<br>199 Lee Avenue<br>Brooklyn, New York 11211 | $ 3,100,000 | 25% |