```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
SIMCHE STEINBERGER, as Executor of the last
Will and Testament and Estate of TIBOR
STEINBERGER,
                                                                    13 CV 5737(SJ)(VVP)

                    Plaintiff,
                                                                    **MEMORANDUM**
        -against-                                                   **AND ORDER**

JACK LEFKOWITZ, BLUMA LEFKOWITZ,
MASKIL EL-DAL, INC., CARE TO CARE
MANAGEMENT, LLC, MAIMONIDES
MEDICAL SERVICES, LLC, MEDSCAN MOBILE,
and "JOHN DOES" 1 through 10,

                    Defendants.
----------------------------------------------------------------X
```

A P P E A R A N C E S:

SOLOMON E. ANTAR, ESQ.
26 Court St., Suite 1200
Brooklyn, NY 11242
Attorney for Plaintiff

MORRISON & FOERSTER, LLP
250 W. 55th Street
New York, New York 10019
By:     Michael B. Miller, Esq.
        James J. Beha, II, Esq.
Attorneys for Defendants Jack Lefkowitz,
Bluma Lefkowitz, Maskil El-Dal, Inc.,
Maimonides Medical Services, LLC, and
Medscan Mobile

GARFUNKEL WILD, P.C.
111 Great Neck Road, Suite 503
Great Neck, NY 11021
By:     Roy W. Breitenbach, Esq.

Michael J. Keane, Jr., Esq.
Attorneys for Defendant Care to Care
Management, LLC

JOHNSON, Senior District Judge:

Simche Steinberger ("Plaintiff" or "Simche"), as the executor of the estate of his late father, Tibor Steinberger ("Tibor"), brings this suit against Jack and Bluma Lefkowitz and six of their companies alleging a number of causes of action for violations of the Federal Racketeer Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–68 (1988); fraud; breach of fiduciary duty; unjust enrichment; and conversion. Pending before the Court are Defendants' motions to dismiss the action. Defendant Care to Care Management, LLC ("Care to Care") moves to dismiss the action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The remaining defendants move to dismiss the action pursuant to Rules 12(b)(1) and 12(b)(6). For the reason stated below, the motions are GRANTED.

**I.  Background**

The following is a summary of the actions alleged in the Complaint. Plaintiff seeks to recover monies from Defendants, which Plaintiff alleges were owed to Tibor. Plaintiff is a citizen of the United Kingdom. Tibor was also from the United Kingdom.

Tibor was the sole stockholder and owner of 178 Franklin Holding Corporation ("Franklin Holding"), a company registered in New York. In November 2007, Franklin Holding entered into a real estate transaction in Brooklyn, New York, the proceeds from which amounted to $3,590,000.00. Non-party Bernard Shafran ("Shafran") represented Franklin Holding in that transaction, and deposited the proceeds into a client escrow account.

Plaintiff alleges that, subsequent to the real estate transaction, Defendant Jack Lefkowitz ("Lefkowitz"), an old friend of Tibor's, proposed that Tibor invest Franklin Holding's proceeds in Care to Care, Maimonides Medical, and Medscan Mobile, three companies controlled by Lefkowitz. Pending discussions, however, Tibor directed that the proceeds be transferred out of the escrow account and into Maskil El-Dal, Inc. ("Maskil"), another company controlled by Lefkowitz and his wife, Bluma. In a letter dated November 11, 2007, Maskil promised to hold the proceeds in trust and to release the funds at Tibor's direction. The letter was signed by Lefkowitz, as the Trustee of Maskil. At Lefkowitz's direction, Shafran instead transferred Franklin Holding's funds into four separate offshore bank accounts owned by Lefkowitz and Bluma, three of which are in Switzerland and one of which is in Israel.

In early 2011, Tibor was made aware that the monies were never invested as agreed upon, and were fraudulently deposited into the private bank accounts of

3

Lefkowitz and his wife. Due to illness, Tibor enlisted the aid of his son-in-law, Chaim Saks ("Saks"), as well as various rabbis, to amicably resolve the matter and seek the return of the monies.[1] The matter was unable to be resolved.

In light of Tibor's ailing health, on April 4, 2012, Tibor executed an Irrevocable Power of Attorney as Principal, appointing Saks, David Kretzmer ("Kretzmer"), and Barry Klein ("Klein") to act as Tibor's agents. On July 2, 2012, Klein and Saks assigned to Kretzmer "all claims, demands and cause[s] of actions . . . that Tibor Steinberger has had, now has, or may have" against Lefkowitz, Bluma, Maskil, Care to Care, Maimonides Medical, and Medscan Mobile in connection with the $3,590,000 in proceeds derived from Franklin Holding's real estate transaction. Tibor died on October 3, 2012, in England. On October 9, 2013, Simche was appointed the Executor of Tibor's estate by order of the probate court in England.

## II. The Legal Proceedings

Prior to the instant action, on May 24, 2013, Kretzmer, "as Assignee of the Attorneys-in-Fact of Tibor Steinberger," brought a suit against the same Defendants and under similar facts. See Kretzmer v. Lefkowitz, et al., 13-CV-3060

---

[1] At this time, Tibor was in England and seriously ill. He was on a strict regimen of dialysis treatments for renal failure and was unable to travel or handle his own affairs.

(ENV)(LB). Kretzmer asserted claims for, <u>inter alia</u>, civil RICO violations, fraud, unjust enrichment, and breach of fiduciary duty. The Defendants challenged the matter, arguing that the complaint failed to plausibly establish that Kretzmer had standing to sue. In response, on August 9, 2013, Kretzmer filed an amended complaint, alleging additional facts in support of his standing and supplying the assignment documentation signed by Klein and Saks. On August 23, 2013, Defendants filed a letter requesting a pre-motion conference, and alleging that the assignment was defective since it failed to transfer the entire interest of the assignor. On August 27, 2013, Kretzmer abandoned his position by discontinuing the action.

On October 18, 2013, after receiving the October 9, 2013 Order of Appointment by the English probate court, Simche filed the instant action against the same Defendants and under similar facts as Kretzmer's prior lawsuit. Both cases by Kretzmer and Simch were filed by the same attorney, who states that Kretzmer's action was discontinued to avoid a protracted litigation regarding Kretzmer's standing.

Defendants now seek to dismiss the matter on the grounds that: (1) Simche lacks standing; (2) the claims are subject to a binding arbitration agreement; and (3) the complaint fails to state a cause of action. Based on the submissions by the parties and for the reasons stated below, the motions are granted.

**III.     Legal Standard**

A Federal court's jurisdiction is limited to "cases" and "controversies." See U.S. Const. art. III, § 2; see also Lujan v. Defenders of Wildlife, 504 U.S. 555, 559 (1992). The Court must satisfy itself as to its jurisdiction, including Plaintiff's Article III standing to sue, regardless of whether the litigants have raised the issue of standing. See Denney v. Deustche Bank AG, 443 F.3d 253, 263 (2d Cir. 2006). The burden rests on the Plaintiff to establish standing. See Lujan, 504 U.S. at 561.

An actual case or controversy exists when the Plaintiff has a "personal stake in the outcome" of the claims asserted. See Baker v. Carr, 369 U.S. 186, 204 (1962). To satisfy the personal stake requirement, the Plaintiff must pass a tripartite test, demonstrating that: (1) Plaintiff suffered an actual or threatened injury in fact; (2) Plaintiff's injuries are causally connected to the challenged conduct; and (3) Plaintiff's injuries can be redressed by a favorable decision. See Lujan, 504 U.S. at 560–61.

In addition to these constitutional prerequisites, the Plaintiff must also satisfy prudential concerns by demonstrating that his claims are premised on his own legal rights, as opposed to those of a third party, and that he is the "proper party to bring [the] suit." Raines v. Byrd, 521 U.S. 811, 818 (1997); see also Lifrak v. New York City Council, 389 F. Supp. 2d 500, 503 (S.D.N.Y. 2005).

**IV. Discussion**

Here, the loss of funds resulting from the unauthorized transfer of $3,590,000.00 from Shafran's client escrow account into the four offshore banks accounts owned by Lefkowitz and his wife presumably satisfies the injury, causation, redressability elements. However, Simche premised his rights to assert these claims on his appointment as the executor of Tibor's estate. As executor, Simche has standing to bring only those claims Tibor had when he died. See N.Y. E.P.T.L. § 11-3.1; W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP, 549 F.3d 100, 109–10 (2d Cir. 2008). Simche, like Kretzmer before him, fails to allege any facts demonstrating that Tibor possessed legal rights to assert these claims. All the facts alleged in the Complaint with regard to the ownership of disputed funds point to Franklin Holding. Franklin Holding entered into the real estate transaction in November 2007. Shafran represented Franklin Holding in the sale and held Franklin Holding's proceeds in a client escrow account. It was Franklin Holding's proceeds there were transferred into the four foreign bank accounts belonging to Lefkowitz and his wife. Tibor was only involved in the real estate transaction as Franklin Holding's "sole stockholder and beneficial owner," and presumably acted in this capacity when he directed Lefkowitz to invest Franklin Holding's funds in certain companies. Unless there was an unmentioned

7

intervening transaction transferring the monies from Franklin Holding to Tibor, the rightful owner of these funds and the resulting claims is Franklin Holding.

The facts as written lead the Court to believe that Plaintiff intended that Tibor and Franklin Holding be regarded as one. However, Franklin Holding and Tibor, as its shareholder, are distinct juridical persons and are treated as such under the law. See Henneberry v. Sumitomo Corp. of Am., 415 F. Supp. 2d 423, 438–39 (S.D.N.Y. 2006) (citing Fifty States Mgmt. Corp. v. Niagara Permanent Sav. & Loan Ass'n, 58 A.D.2d 177, 396 (App. Div. 1977). In terms of standing, this separateness has led to the tenet that actions to enforce corporate rights or redress injuries to a corporation cannot be maintained by Tibor, his estate, or assignee, in their own name. See id. This principle holds true even if Tibor was the sole owner of the Franklin Holding. See id. Although there are exceptions to this rule, Plaintiff fails to proffer any arguments addressing the matter to that extent.

Even if Plaintiff were to establish that these funds somehow belonged to Tibor, it remains unclear whether Tibor's rights to these claims were assigned prior to his death. In the earlier action, Plaintiff's attorney alleged that Tibor's rights were assigned to Kretzmer, yet in this action Plaintiff's attorney asserts that Simche maintains Tibor's rights as executor of Tibor's estate. Plaintiff's response to this quandary is to point out how hypocritical it is for Defendants to challenge both Kretzmer's and Simche's standing to bring the suit. Plaintiff's attorney also asserts

that he only discontinued Kretzmer's actions to avoid a protracted litigation regarding Kretzmer's standing. Neither of these responses resolves the matter, and counsel's decision to file a separate action has actually led to more, not less, litigation. Moreover, the Court finds it troubling that Plaintiff fails to address the contradiction created by Kretzmer's assignment and Simche's appointment with regard to these claims. Plaintiff's failure to rectify this confusion is fatal to his law suit.

Given that Plaintiff has failed to establish his standing to bring this case, the matter must be dismissed and the Court need not address the remaining grounds for dismissal.

## V. **Conclusion**

For the reasons stated above, the Defendants' motions are granted, and the Complaint is hereby dismissed. The Clerk of the Court is directed to close the case.

SO ORDERED.

Dated: March 31, 2015 _____/s/_____
     Brooklyn, New York      Hon. Sterling Johnson, Jr., Senior U.S.D.J.