MANDATE

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.   WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 15th day of December, two thousand fifteen.

PRESENT:
> PETER W. HALL,
> DENNY CHIN,
> SUSAN L. CARNEY,
> > *Circuit Judges*.

---

**Simche Steinberger, as Executor of the last Will and Testament of Tibor Steinberger,**

> *Plaintiff-Appellant*,

v.  15-1365

**Jack Lefkowitz, Bluma Lefkowitz, Maskil El-Dal, Inc., Care to Care Management, LLC, Maimonides Medical Services LLC, Medscan Mobile,**

> *Defendants-Appellees,*

"John Does" 1 through 10,

> *Defendants.*

---

MANDATE ISSUED ON 01/06/2016

| FOR PLAINTIFF-APPELLANT: | SOLOMON E. ANTAR, Brooklyn, NY. |
|---|---|
| FOR DEFENDANTS-APPELLEES JACK LEFKOWITZ, BLUMA LEFKOWITZ, MASKIL EL-DAL, INC., MAIMONIDES MEDICAL SERVICES LLC, MEDSCAN MOBILE: | JAMES J. BEHA, II, MICHAEL B. MILLER, Morrison & Foerster, LLP, New York, NY. |
| FOR DEFENDANT-APPELLEE CARE TO CARE MANAGEMENT, LLC: | ROY W. BREITENBACH, MICHAEL J. KEANE, JR., Garfunkel Wild, P.C., Great Neck, NY. |

Appeal from a judgment of the United States District Court for the Eastern District of New York (Johnson, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-Appellant Simche Steinberger ("Simche") appeals the district court's order dismissing all of his claims against defendants-appellees for lack of standing. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal. For the reasons stated below, we affirm.

We review the district court's dismissal for lack of standing *de novo*. *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1091 (2d Cir. 1995). "Because 'standing is challenged on the basis of the pleadings, we accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.'" *W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*, 549 F.3d 100, 106 (2d Cir. 2008) (quoting *United States v. Vazquez*, 145 F.3d 74, 81 (2d Cir. 1998)) (quotation marks omitted).

In order to establish the court's subject matter jurisdiction, "a plaintiff must show the three familiar elements of standing: injury in fact, causation, and redressability." *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). "It is a long-settled principle that standing cannot be inferred argumentatively from averments in the pleadings, but rather must affirmatively appear in the record." *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) (citations and quotation marks omitted). The plaintiff thus bears the burden "clearly to allege facts [in his complaint] demonstrating that he is a proper party to invoke judicial resolution of the dispute." *Warth v. Seldin*, 422 U.S. 490, 518 (1975); *see also Raines v. Byrd*, 521 U.S. 811, 818 (1997) (noting that the Article III standing inquiry "focuses on whether the plaintiff is the proper party to bring [the] suit"). "If [the plaintiff] fails to make the necessary allegations he has no standing." *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 273 (2d Cir. 1994) (quoting *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)).[1]

As executor of his father's estate, Simche has standing to bring only those claims that his father, Tibor Steinberger ("Tibor"), had standing to bring at the time of his death. *See Sprint*, 554 U.S. at 288. Simche therefore must plead facts that show a particularized injury to Tibor, one distinct from any injury to Tibor's solely-owned company, 178 Franklin Holding Corp. ("Frankling Holding"). *See Jones*, 836 F.2d at 736 ("A shareholder—even the sole

---

[1] The district court identified the standing issue in this case as one rooted in prudential concerns, rather than in Article III. *Steinberger v. Lefkowitz*, 1:13-CV-5737, 2015 WL 1514407, at *3 (S.D.N.Y. Mar. 31, 2015); *see Lerner v. Fleet Bank*, 318 F.3d 113, 126 (2d Cir. 2003) (noting one prudential standing tenet is "the general prohibition on a litigant's raising another person's legal rights" (quotation omitted)). While prudential concerns may be at play here, we think the issues in this case—which involve third-party standing and shareholder standing—are more appropriately analyzed under our constitutional standing jurisprudence. *See Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269, 288 (2008) (discussing constitutional limitations on third-party standing); *Jones v. Niagara Frontier Transp. Auth.*, 836 F.2d 731, 736 (2d Cir. 1987) (discussing constitutional limitations on shareholder standing).

shareholder—does not have standing to assert claims alleging wrongs to the corporation."); *accord Serino v. Lipper*, 123 A.D.3d 34, 39 (1st Dep't 2014) ("It is black letter law that a stockholder has no individual cause of action against a person or entity that has injured the corporation.").

Because Simche does not clearly allege facts in his complaint demonstrating that his father had standing at the critical time, Simche fails to establish the court's jurisdiction over this matter. On appeal, Simche highlights two particular allegations in his complaint that he argues clearly show the transfer of the disputed funds from Franklin Holding to Tibor in his individual capacity. The first allegation, Paragraph 30 of Simche's complaint, explains that "Tibor Steinberger, as the sole stockholder and beneficial owner of 178 Franklin Holding Corp, concluded a real estate transaction . . . whereby the proceeds thereof, instead of being paid to him . . . were retained for his use and benefit in the IOLA escrow account of Bernard Schafran, Esq., the attorney for the seller." J.A. at 21. Our reading of this statement is the same as the district court's—that the property was sold by the *corporation*, and the proceeds were retained in escrow by the *corporation's* attorney, and explicitly not paid to Tibor. Simche's characterization of these proceeds as being "retained for [Tibor's] use and benefit" therefore appears accurate only insofar as Tibor had access to those funds as the corporation's sole shareholder. *Id.* While it is conceivable that in actuality Tibor transferred the real estate to himself before selling it, or that some other series of events resulted in Tibor being the owner of the proceeds from that sale, these facts are not alleged and the facts as pleaded do not establish that Tibor had standing. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("Because the plaintiff[] here ha[s] not nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed.").

4

Simche also cites Paragraph 34 of his complaint, which references a letter from defendant Jack Lefkowitz, "as trustee," on Maskil-El Dal, Inc. letterhead, to Tibor, dated around the same time as the above-described real estate transaction. The letter, which is attached as an exhibit to the complaint, reads:

> Please be advised all monies transferred in to our account as per instruction of Mr. Tibor Steinberger shell [sic] be held in trust for your benefit. Upon written request from yourself monies will be released to you promptly as per your instruction and direction. Maskil El-Dal may commingle the Steinberger funds in its account without any further liability to Mr. Steinberger.

J.A. at 74. This letter is insufficient to constitute a plausible basis to find that Tibor acquired ownership of the proceeds from the Franklin Holding real estate transaction at the relevant time. To be sure, a conceivable interpretation of the letter implies that Tibor had somehow acquired ownership of certain unspecified funds and then transferred them to Maskil El-Dal, but the letter was neither written nor signed by Tibor and does not mention any specific transaction. That interpretation therefore would require multiple inferences and is not readily apparent. *See FW/PBS, Inc.*, 493 U.S. at 231 ("[S]tanding cannot be inferred argumentatively from averments in the pleadings, but rather must affirmatively appear in the record." (quotation omitted)). Indeed, Simche's complaint is inconsistent with that reading of the letter. He alleges that Franklin Holding's attorney, against Tibor's wishes, transferred the disputed funds into accounts controlled by Jack and Bluma Lefkowitz. Simche's failure clearly and plausibly to allege that the funds he claimed were fraudulently taken by defendants belonged to Tibor, and not to Franklin Holding, is fatal to his complaint.[2]

---

[2] At oral argument, the parties discussed the fact that Franklin Holding was dissolved by Order of Proclamation of the State of New York at some point after completion of the real estate transaction and before Tibor Steinberger died. Because Simche alleged nothing in his complaint regarding this dissolution, however, we cannot

5

Even if Simche had plausibly alleged that Tibor owned the disputed funds, materials submitted by defendants in support of their motion to dismiss indicate that Tibor may have assigned to a third party, Barry Kretzmer, any claims he had against the defendants. While it is not clear that Tibor's putative assignment to Kretzmer was effective, the assignment is yet another factor that raises questions as to whether Simche has standing to pursue this claim, questions that are left unanswered by the unclear allegations of the complaint. For all of these reasons, we hold that Simche has not met his burden of "demonstrating that he is a proper party to invoke judicial resolution of th[is] dispute." *Warth*, 422 U.S. at 518.

We have considered all of Simche's remaining arguments and find them to be without merit. The judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk



A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

---

determine whether and how the dissolution, or any subsequent distribution of assets to shareholders, may have affected Tibor's ownership of the funds.